Jennifer F. Novak (SBN 183882)
novak@jfnovaklaw.com
Megan Meadows (SBN 245033)
megan@jfnovaklaw.com
Demetria Mantalis (SBN 358279)
demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775
Facsimile: (310) 627-0172
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, a California limited liability company

Plaintiff,

vs.

DALE T. JABOUR, *et al.*

Defendants.

Case No.: 2:25-cv-00078-WBS-CSK
Related Case No.: 2:25-cv-02882-WBS-CSK

Assigned to Hon. William B. Shubb
Courtroom: 5, 14th Floor

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**[filed concurrently with Notice of Motion and Motion to Dismiss; Declaration of Demetria Mantalis; Request for Judicial Notice; and [Proposed] Order Granting Motion]**

Action Filed: January 8, 2025
Trial Date: April 20, 2027

Hearing Date: December 21, 2026
Hearing Time: 1:30 p.m.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is the companion to *Central Valley Eden Environmental Defenders, LLC v. Sweetener Products, Inc.,* No. 2:25-cv-00078-WBS-CSK (the "*Sweetener* case"), a repackaged suit against four officers and employees of Sweetener Products, Inc. ("Sweetener Products") for alleged Clean Water Act violations at its Lodi facility.

Plaintiff Central Valley Eden Environmental Defenders, LLC ("Plaintiff") filed both Clean Water Act citizen suits, claiming to sue on behalf of its "members." Yet after nearly two years of litigation in the *Sweetener* case, Plaintiff produced no competent evidence that it is a genuine membership organization at all. Plaintiff does not contend that it was itself injured. It relies entirely on associational standing — the doctrine that permits a bona fide membership organization to sue to redress injuries to its members. That doctrine carries an antecedent requirement: the organization must have members whose interests it represents in good faith. Plaintiff cannot meet it.

Because Defendants Dale T. Jabour, Kenneth Cochrane, Steven Shanklin, and David Jones ("Defendants") bring a collective factual attack on standing, Plaintiff may no longer rest on the allegations of its Complaint. It bears the burden of coming forward with competent evidence — of the same quality required to survive summary judgment — establishing subject-matter jurisdiction, and this Court may weigh that evidence and resolve any disputed jurisdictional facts. See *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014). The limited record Plaintiff allowed in the *Sweetener* case does not carry that burden — it defeats it. Plaintiff is a dissolved limited liability company whose sole managing member was another LLC based in New Mexico; its former managing member had no knowledge of its activities and delegated "full responsibility" to its lawyers; its litigation is financed by an outside funder rather than by members; it has not identified any member in this matter; and the single individual it identified as a "member" in the *Sweetener* case pays no dues, plays no role in the organization, and

participates only by serving as a standing witness. On this record, Plaintiff is a litigation vehicle, not a membership organization.

Plaintiff's response throughout the *Sweetener* litigation was to argue that it need not prove its standing — that once it labels itself an "environmental membership group," *Students for Fair Admissions* forecloses further inquiry. That misreads the decision. *Students for Fair Admissions* did not abolish the associational-standing inquiry; it applied it, and its safe harbor is expressly conditioned on an organization that "has identified members and represents them in good faith." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023). Here, Plaintiff has done neither.

The result is the same under all frameworks courts use. If Plaintiff is taken at its word that it is a traditional membership organization, it has failed to prove the representation of genuine, identified members that associational standing requires. And if Plaintiff is instead a non-traditional entity, it fails the indicia-of-membership test established by *Hunt*, because its purported members neither select its leadership, nor direct its activities, nor govern it, nor finance it. See *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 344-45 (1977). Either way, Plaintiff cannot establish associational standing, and this Court lacks subject-matter jurisdiction. Moreover, Plaintiff has recently dissolved as an entity and no longer appears to exist, have a way for new members to find it, or have a way to communicate with its current members. See RJN Exhs. A-B.

The Court granted a similar Motion to Dismiss in the *Sweetener* case and entered judgment against Central Valley Eden Environmental Defenders on November 13, 2026. Defendants respectfully believe that the same result should obtain in this action, where the Plaintiff is the same, the allegations are the same, and Plaintiff's choice to abandon the litigation rather than face discovery about its organization is also the same.

/ / /

/ / /

## II. FACTUAL BACKGROUND

Plaintiff filed this suit against Dale Jabour, Steven Shanklin, Kenneth Cochrane, and David Jones ("Defendants") on October 7, 2025. Defendants are all employees of Sweetener Products, a food ingredient manufacturer, warehouse, and distributor specializing in bulk liquid and dry sweeteners and related ingredients for food manufacturers and processors. Sweetener Products operates a facility in Lodi, California, which is enrolled under the National Pollutant Discharge Elimination System permit ("Permit"), governing its stormwater discharges and pollution prevention activities. Plaintiff alleges that Defendants, through their respective employment for Sweetener Products, failed to ensure the Facility's compliance with its Permit and thus contributed to the Facility's Clean Water Act violations.

Plaintiff was a limited liability company ("LLC"), that existed from 2020 to 2026. Mantalis Dec., Exh. 1; RJN Exh. A. At the time of its termination, its sole managing member was another LLC, National WOTUS Defenders, LLC, organized in New Mexico. See Mantalis Dec., Exhs. 4 and 15. During its short lifetime, Plaintiff was one of the most prolific servers of Clean Water Act citizen-suit notices of intent to sue in California. Yet Plaintiff had no discernible leadership or decision-makers outside of its legal team. See Mantalis Dec., Exh. 13-006; 24 at 2:25. Although it claimed to have "members," those individuals did not appear to participate in the organization except by serving as standing witnesses when litigation required it. ECF 1, ¶ 19; See Mantalis Dec., Exhs. 11, 17-18. "Members" paid no dues, made no donations, and provided no funding for its litigation, which was financed by a third party. Mantalis Dec., Exh. 24 at 2:23; 3:5. Plaintiff has said its former managing member, Eric Lucas, had no knowledge of Plaintiff's activities and delegated all authority to Plaintiff's legal team. Mantalis Dec., Exhs. 13-006 and 18-001.

In August 2025, Plaintiff sent Sweetener Products a 60-Day Notice of Intent to Sue letter describing itself as an "environmental citizen's group" and asserting that at least one of its members had standing to sue it for Permit violations. The Complaint

restated the allegations, with Plaintiff describing itself as an "environmental membership group" whose mission is to protect, preserve, and enhance the waters of California. ECF 1 at ¶¶ 19; 22-23. A year later, Plaintiff revised its Notice Letter to include officers and employees of Sweetener Products, including Defendants.

Throughout discovery in the *Sweetener* case, Plaintiff resisted efforts to discover the most basic facts about its membership and structure. Plaintiff obtained a protective order barring discovery into its "organizational structure" and "membership," while the Court permitted discovery into Plaintiff's mission and purpose. Mantalis Dec., Exh. 25. When Sweetener Products sought information on how Plaintiff fulfilled its mission and purpose, Plaintiff refused to answer any questions, claiming that it violated the protective order. See Mantalis Dec., Exs. 5-10. Plaintiff incorrectly further claimed that the Supreme Court has eliminated any inquiry into claimed membership organizations. Mantalis Dec., Exh. 13-002-004.

When the Court confirmed Sweetener Products' ability to seek discovery on Plaintiff's business purpose and mission, and suggested she might reopen the issue of discovery on its organization and membership, Plaintiff abandoned the litigation rather than comply with discovery orders. Mantalis Dec., Exh. 21. The same day of the Court's discovery ruling, Plaintiff dissolved its organization, and its counsel sought to withdraw from both the *Sweetener* case and this one. See RJN Exh. A; ECF 45. Instead of drafting a motion to explain why he was withdrawing, Plaintiff's former counsel chose to deactivate his bar license. ECFs 46-47.

It is not a coincidence that Plaintiff terminated its existence and fired its lawyer immediately after a Court ordered it to provide proof that it is a genuine membership organization. Plaintiff's silence is the strongest evidence that it cannot make that showing. Defense counsel has attempted to contact Plaintiff and its former counsel to discuss these issues but has been unable to do so. Mantalis Dec., ¶¶ 24-25. Defense counsel has also confirmed that other lawyers who appear on behalf of Plaintiff in other cases do not intend to do so again here. Mantalis Dec., Exh. 22.

Following these unusual events, on November 13, 2026, the Court granted Sweetener Product's Motion to Dismiss in the *Sweetener* case based on a factual attack on standing and dismissed the companion case. Mantalis Dec., Exh. 23. Moreover, the Court found that Plaintiff effectively failed to continue prosecuting its case. *Id.* at 2:18-19. The same finding should be made here as Plaintiff's defects have not changed. The LLC remains dissolved, it remains without active counsel capable of appearing for it, and it has not and cannot come forward with competent evidence that it is a genuine membership organization.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)'s Factual Attack Places the Burden on Plaintiff to Prove Standing with Competent Evidence.

This Motion is brought under Federal Rule of Civil Procedure 12(b)(1), which requires a court to dismiss a case where the plaintiff lacks standing. Fed. R. Civ. P. 12(b)(1).

A Rule 12(b)(1) challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendants bring a factual attack on Plaintiff's Article III standing. In a factual attack, the court cannot presume the truthfulness of the plaintiff's allegations and may consider evidence outside the pleadings. *Id.* The plaintiff must support its jurisdictional allegations with competent proof under the same evidentiary standard that governs a motion for summary judgment. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met. *Id.* If necessary, the court may resolve disputed jurisdictional facts. *Id.* at 1121–22; see also *Safe Air, supra,* 373 F.3d at 1039; *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Because the jurisdictional question of whether Plaintiff is a genuine membership organization is wholly distinct from the merits of the alleged Clean Water Act violations, the Court may resolve it now. *Leite*, 749 F.3d at 1121–22.

### B. Courts Must Determine Article III Standing

Federal courts are courts of limited jurisdiction, and jurisdiction is a threshold requirement that must be established before the Court may consider the merits of a claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Hernandez v. AFSCME California,* 386 F.Supp. 3d 1300, 1307 (E.D. Cal. 2019). This includes Article III standing, which addresses a plaintiff's right to bring a matter before the court for adjudication. *Sywula v. Teleport Mobility, Inc.,* 652 F. Supp. 3d 1195, 1208 (S.D. Cal. 2023). Because subject-matter jurisdiction cannot be waived, a jurisdictional challenge may be raised at any time. Fed. R. Civ. P. 12(b)(1), (h)(3). When a court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

### C. An Organization Must Prove It Is a Genuine Membership Organization with Identified Members that It Represents in Good Faith

Before the Court can analyze this case, it must first resolve this preliminary question: is Plaintiff an actual membership organization? When an organization invokes federal jurisdiction, it may sue on its own behalf or on behalf of its members. These are distinct forms of standing with different requirements. An organization asserting *organizational* standing must show that it suffered an injury to its own interests, such as a diversion of resources in response to defendant's conduct. Plaintiff does not claim organizational standing.[1] Plaintiff asserts only *associational* standing. To establish associational standing, an organization must show that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief sought requires the members' individual participation. *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977).

[1] Nor could it, because Plaintiff's asserted purpose was to pursue litigation rather than engage in other organizational activities from which it diverts resources.

Those three prongs, however, presuppose an antecedent fact: that the organization actually has members. Before an entity may invoke associational standing, it must establish that it is *in fact* a genuine membership organization with members whose interests it represents. *Hunt*, 432 U.S. at 343. An entity cannot manufacture standing simply by labeling itself a "membership" organization. See *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109–10 (9th Cir. 2003) (looking past form to whether constituents possess the "indicia of membership").

## IV. LEGAL ARGUMENT

### A. Consistent With Its Prior Ruling, This Court Should Dismiss Because Plaintiff Fails to Establish Membership-Organization Standing.

This Court has already granted a motion to dismiss Plaintiff's citizen suit against Sweetener Products. Mantalis Dec., Exh. 23. At a minimum, that same reasoning and order should apply here: the Court has already reviewed Sweetener Products' standing challenge, which Defendants renew here, and found it meritorious. *Id.* In addition, the Court has already found that Plaintiff has failed to prosecute its case against Sweetener. *Id.* 2:17-19. Therefore, Defendants respectfully request that the same logic apply here, and this case be dismissed.

### B. Independently, Plaintiff Cannot Meet Its Burden of Proving Associational Standing

Setting the companion order aside, Plaintiff cannot carry its burden to prove that it has standing to bring this action, which requires it to establish that it is a genuine membership organization with members whose interests it represents. See *Friends of the Earth v. Laidlaw Environmental Services (TOC) Inc.,* 528 U.S. 167, 169 (2000) (discussing organization's showing of standing); *Lujan, supra,* 504 U.S. at 561. Plaintiff's bare conclusions that it is a "membership organization" are not entitled to a presumption of truth and are not competent proof. See ECF 1 at ¶ 19; Mantalis Dec., Exh. 4.

An organization cannot invoke associational standing by merely asserting that it represents members. It must establish the facts necessary to demonstrate that it has standing to sue on their behalf. *National Association of Consumer Advocates,* 2025 WL 1429172 at 5 (failing to first establish membership risks putting the cart before the horse); *Viasat, Inc. v. Federal Communications Commission,* 47 F.4th 769, 781-82 (D.C. Cir. 2022) (unadorned assertions do not establish standing). Courts apply this requirement in two circumstances. Where an organization does not claim to be a traditional membership group, courts apply the *Hunt* factors to assess whether the entity is the functional equivalent of a traditional organization. The *Hunt* factors assess whether the indicia of membership exist to determine whether the individuals the organization purports to represent are, in fact, members. *Public Employees for Environmental Responsibility v. Zeldin,* 2026 WL 1191153, 5-6 (D.C. Cir. 2026). Where, as here, an organization claims to be a traditional membership group, the inquiry is different but not less demanding; bare-bones assertions do not suffice. Even traditional membership organizations, which have formal arrangements like a professional association, labor union, social club, or the like, still must meet the burden to establish standing. *Id.* at 2.

**C. *Students for Fair Admissions* Did Not Eliminate the Standing Inquiry – and Its Safe Harbor Requires Identified Members Be Represented in Good Faith**

Throughout the companion litigation, Plaintiff argued that it need not prove its standing at all. Plaintiff contended that in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* (“*SFFA*”), 600 U.S. 181 (2023), the Supreme Court eliminated any inquiry into a claimed membership organization. Plaintiff argued that once a plaintiff labels itself an “environmental membership group” with members, no further inquiry may follow. See Mantalis Dec., Exh. 24 at 12:16-13:7. Plaintiff, however, misread the decision.

*SFFA* did not abolish the standing inquiry – it applied it. The University of North Carolina had argued that the plaintiff, Students for Fair Admissions, Inc. (SFFA), was not a "genuine membership organization." The Supreme Court rejected that argument, noting that prior courts had considered – and rejected – the argument after extensive scrutiny. *SFFA*, *supra*, 600 U.S. at 201. Critically, the Court did not hold that a self-titled membership organization is immune from inquiry. It held only that SFFA had already made the necessary showing. Based upon evidence developed in the lower courts, the Court explained that SFFA was indisputably a voluntary membership organization with identifiable members. It was a validly incorporated 501(c)(3) nonprofit with forty-seven members who joined voluntarily to support its mission. They received updates about the status of the case from SFFA's president, and they were allowed to provide input and direction on SFFA's case. *Id.* at 200-201.

Only against this record did the *SFFA* Court state the rule Plaintiff now invokes: "Where, as here, an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates." 600 U.S. at 201. That rule is a conclusion, not a shortcut. Its predicate – an organization that "has identified members" and "represents them in good faith" – is precisely what Plaintiff refuses to establish. The phrase "as here" refers to SFFA's forty-seven named, declaration-filing members; it does not describe a plaintiff that withholds information about its membership.

Nor have courts adopted Plaintiff's interpretation of *SFFA*. Indeed, Courts continue to assess associational standing after *SFFA,* finding that associational standing is available to a traditional voluntary membership organization that has identified members and represents them in good faith, but applying *Hunt's* functional-equivalent analysis to entities that are not. *Public Employees for Environmental Responsibility v. Zeldin,* 174 F.4th 183, 187 (D.C. Cir. 2026) (quoting *SFFA*, 600 U.S. at 201); see also *Healthy Gulf v. United States Department of the Interior,* 152 F.4th 180, 189-90 (D.C. Cir. 2025) (assessing associational standing post-*SFFA*); *Mi Familia Vota v. Fontes,*

129 F.4th 691, 708 (9th Cir. 2025) (same); *National Trust for Historic Preservation in the United States v. National Park Service,* 185 F.4th 1185, 1208-1210 (D.C. Cir. 2026) (confirming associational standing exists to invoke court's jurisdiction); *League of United Latin Am. Citizens v. Exec. Off. of President,* 808 F.Supp.3d 29, 56 (D.D.C. 2025) (same). No law allows courts to treat Plaintiff differently from every other plaintiff-organization that must establish standing under Article III.

**D. Plaintiff Has Failed to Prove That It Is a Genuine Membership Group**

Because Plaintiff has not identified its members or shown that it represents them in good faith, it never reaches *SFFA's* safe harbor and must make the threshold showing that it is a genuine membership organization. However, Plaintiff has no evidence to make that showing.

Unlike SFFA, which identified forty-seven members and supported its standing with membership declarations, *SFFA*, 600 at 201, Plaintiff produced nothing here or in the *Sweetener* case to disclose how many members it has. Instead, it has stated only that it has "more than 1 and less than 1,000." Mantalis Dec., Exh. 7-007. The one individual Plaintiff identified in the *Sweetener* case, and the only person who appears to be associated with Plaintiff outside of its legal team, does not demonstrate a genuine membership relationship.

In the *Sweetener* case, Plaintiff disclosed Jason Aston as its sole standing witness. His deposition established that he learned of the organization from a friend (but was not allowed to say whether the "friend" is affiliated with Plaintiff); he does not participate in Plaintiff's organization other than as a standing witness; and that he neither pays nor believes there are membership dues. Mantalis Dec. Exh. 11 at pgs. 136:5-10; 134:4-17; 141:10-14. Passive or nominal affiliation of this kind does not establish membership, because it does not signify a relationship between representative and represented. See *Viasat, Inc. v. Federal Communications Commission,* 47 F.4th 769, 781 (D.C. Cir. 2022) (unadorned assertions do not establish standing); *Sorenson Commc'ns LLC v.*

*FCC,* 897 F.3d 214, 223-25; 232 (D.C. Cir. 2018) (denying standing where purported members were passive subscribers to an email list or social-media followers).

Plaintiff's structure confirms that it is a litigation vehicle, not a membership organization. Plaintiff was a limited liability company whose sole managing member is another LLC, National WOTUS Defenders, LLC, organized in New Mexico. Mantalis Dec., Exs, 4, 15. An LLC's "members," as a matter of law, are its equity owners – not the kind of environmental members on whose behalf Plaintiff claims to sue. A business entity cannot bootstrap associational standing where its purported "members" are not a genuine constituency that has come together to form an organization for their mutual aid and benefit. *Fleck and Associates, Inc. v. Phoenix, City of, an Arizona Mun. Corp.,* 471 F.3d 1100, 1106 (9th Cir. 2006) (holding that a business does not have "members" in the sense required by the doctrine because associational standing is reserved for organizations that express and protect the collective views and interests of their members). Plaintiff has provided no information regarding its definition of "member," its dues, its governance role for members, and the mechanism by which members guide or finance its activities. Mantalis Dec., Exs. 5-10.[2]

Moreover, Plaintiff was directed by its former counsel, not its members. Plaintiff represented that its former managing member, Eric Lucas, exercised no meaningful control over the organization, had no understanding of the facts underlying its lawsuits, and delegated "full responsibility" to Plaintiff's now defunct legal team. Mantalis Dec., Exh. 13-006; ECF 47; see *Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 225 (9th Cir. 1988) (admissions in pleadings bind the party who made them). Consistent with that concession, Plaintiff produced its attorney's paralegal – not a member or leader of

---

[2] Because Plaintiff was an LLC, it is not required, like a corporation, to maintain bylaws or to disclose its board members. See Cal. Corp. Code § 213; Cal. Corp. Code § 1502; see also Mantalis Dec., Exh. 20-006-007 (reviewing SFFA's bylaws when assessing standing). Because Plaintiff is not a non-profit, it is also not required to submit annual financial reports. Cal. Gov. Code § 12586. Instead, Plaintiff's bare public record raises basic questions about Plaintiff's structure, identity, members, and relationship with the individuals whose interests it claims to represent.

the organization – as its Rule 30(b)(6) witness in the *Sweetener* case. Mantalis Dec., Exh. 12-004-005. Treating an organization's lawyers and staff as "members" would collapse the distinction between representative and represented. See, e.g., *Zeldin, supra,* 174 F.4th 183, 188; 193 (D.C. Cir. 2026).

In short, the few facts in the companion record show that Plaintiff's "members" are names on paper rather than genuine participants whose interests Plaintiff represents. That is not enough to establish associational standing. Plaintiff has not shown that it is a genuine membership organization, has failed to carry its burden, and the Court lacks subject-matter jurisdiction.

**C. In the Alternative, Plaintiff Fails *Hunt's* Indicia-of-Membership Test**

Even if Plaintiff attempts to establish standing as the functional equivalent of a traditional membership organization, the result is no different. To qualify, the individuals an entity purports to represent must possess the "indicia of membership" that justified associational standing in *Hunt*, "[t]hey alone elect the members of the Commission; they alone may serve on the Commission; they alone finance its activities, including the costs of th[e] lawsuit, through assessments levied upon them." *Hunt*, *supra,* 432 U.S. at 344–45; *accord Oregon Advoc. Ctr.*, *supra,* 322 F.3d at 1109–10 (applying the functional-equivalent test); *Viasat*, *supra,* 47 F.4th at 781; *Zeldin*, *supra,* 174 F.4th at 187. Plaintiff's purported members satisfy none of these indicia.

First, Plaintiff's members do not elect or select its leadership. Plaintiff's sole managing member is another LLC, and its former managing member, Eric Lucas, delegated "full responsibility" to Plaintiff's legal team rather than to any representative chosen by the membership. Mantalis Dec., Exs. 4, 13-006, 15. Second, Plaintiff's members play no governance role. Mantalis Dec., Exh. 24 at 3:1-4. No member apparently directs, votes on, or participates in the organization's decisions, and Plaintiff's Rule 30(b)(6) designee was a member of its legal team, not an associational member. Mantalis Decl., Ex. 12; *cf. Zeldin*, *supra,* 174 F.4th at 193 (an organization's staff are not its members). Third, Plaintiff's members do not finance its activities. They

pay no dues and make no contributions; Plaintiff's litigation is funded entirely by an outside third party. Mantalis Dec., Exh. 24 at 3:5; *see Sorenson*, *supra,* 897 F.3d at 225. Because Plaintiff's members neither choose its leadership, nor govern it, nor fund it, Plaintiff lacks the indicia of membership that *Hunt* requires and cannot establish associational standing as the functional equivalent of a membership organization. *Hunt*, *supra,* 432 U.S. at 344–45; *Oregon Advoc. Ctr.*, *supra,* 322 F.3d at 1110.

Whether analyzed as a traditional membership organization or under *Hunt*'s functional-equivalent test, Plaintiff cannot establish that it has members capable of conferring associational standing. Under either framework, this Court lacks subject-matter jurisdiction.

## V. CONCLUSION

This Court must again decide for itself whether Plaintiff has Article III standing. Because Plaintiff sues only on behalf of its alleged members, this requires assessing whether Plaintiff is a genuine membership organization. Nothing exempts Plaintiff from this inquiry in this case, or in any others. This Court has already granted this same standing challenge against Plaintiff in the *Sweetener* case. There, Plaintiff did not oppose the motion or appear at oral argument to offer any defense. Given that, the Court found that Plaintiff has failed to prosecute its case, and the standing motion has merit. Defendants respectfully request that the Court again reach this conclusion and grant this Motion to Dismiss for lack of subject-matter jurisdiction.

Date: November 16, 2026 LAW OFFICE OF JENNIFER F. NOVAK

/s/ Demetria Mantalis
Demetria Mantalis
Attorney for Defendants

PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My e-mail address is (alyson@jfnovaklaw.com) and my business address is 500 Silver Spur Road, Suite 206, Rancho Palos Verdes, CA 90275.

On November 16, 2026, I served the following documents described as:

1. **NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
2. **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**
3. **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS**
4. **DECLARATION OF DEMETRIA MANTALIS IN SUPPORT OF MOTION TO DISMISS**
5. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

on all interested parties in this action by placing the [] original [xx] a true copy thereof enclosed in a sealed envelope, addressed as follows, or [] by electronic service sent to the following e-mail addresses:

**Central Valley Eden Environmental Defenders, LLC**
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616

[xx] **BY GLS OVERNIGHT DELIVERY:** I am "readily familiar" with the firm's practice for collection and processing of documents for overnight delivery with GLS. In accordance with that practice, I caused the envelope containing the above-described documents, with all applicable shipping fees fully prepaid, to be sealed and placed for collection and overnight delivery with GLS at Rancho Palos Verdes, California, for delivery to the addressee in the ordinary course of business.

Executed on November 16, 2026, at Rancho Palos Verdes, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Alyson Ress

Alyson Ress