Jennifer F. Novak (SBN 183882)
novak@jfnovaklaw.com
Megan Meadows (SBN 245033)
megan@jfnovaklaw.com
Demetria Mantalis (SBN 358279)
demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775
Facsimile: (310) 627-0172
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, a California limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>DALE T. JABOUR, *et al.*<br><br>Defendants. | Case No.: 2:25-cv-02882-WBS-CSK<br><br>Assigned to Hon. William B. Shubb<br>Courtroom: 5, 14th Floor<br><br>**DECLARATION OF DEMETRIA MANTALIS IN SUPPORT OF MOTION TO DISMISS**<br><br>**[filed concurrently with Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities In Support of Motion to Dismiss; Request for Judicial Notice; and [Proposed] Order Granting Motion]**<br><br>Action Filed: October 7, 2025<br>Trial Date: February 15, 2028<br><br>Hearing Date: December 21, 2026<br>Hearing Time: 1:30 p.m. |

I, Demetria Mantalis, declare as follows:

1. I am an attorney licensed to practice in the State of California and to practice before the United States District Court for the Eastern District of California. I am counsel for Defendants Dale T. Jabour, Steven Shanklin, David Jones, and Kenneth Cochrane (collectively "Defendants") in this action. In that capacity, I have personal knowledge regarding the underlying actions, communications, and files in this matter. Unless otherwise stated, I make this declaration based upon my personal knowledge and am competent to testify to the facts discussed below regarding Defendants' Motion to Dismiss.

2. Attached as Exhibit 1 is a true and correct copy of Plaintiff Central Valley Eden Environmental Defenders, LLC's ("Plaintiff") LLC Registration and Articles of Organization filed on November 24, 2020. This document was obtained from the California Secretary of State's public website's business search feature located at this website: https://bizfileonline.sos.ca.gov/search/business. Once on that website, I searched for Central Valley Eden Environmental Defenders to pull up Plaintiff's filings. This document was then downloaded directly from the Secretary of State's results for Plaintiff's filing history.

3. Attached as Exhibit 2 are true and correct screenshots of Eden Environmental Defender's website found at: https://edendefenders.org/. The screenshots were taken by our office on April 13, 2026.

4. I have conducted multiple online searches for a website associated with "Central Valley Eden Environmental Defenders, LLC." I was unable to locate any website bearing that name. Instead, searches for "Central Valley Eden Environmental Defenders, LLC" consistently direct to the website for an entity called "Eden Environmental Defenders."

5. Attached as Exhibit 3 is a true and correct copy of Plaintiff's Third Supplemental Disclosures served on August 4, 2025.

6. Attached as Exhibit 4 is a true and correct copy of Plaintiff's Statement of Information dated August 15, 2025. This document was obtained using the California Secretary of State's public website's business search feature located at this website: https://bizfileonline.sos.ca.gov/search/business. Once on that website, I searched for Central Valley Eden Environmental Defenders to pull up Plaintiff's filings. This document was then downloaded directly from the Secretary of State's results for Plaintiff's filing history.

7. Attached as Exhibit 5 is a true and correct copy of Plaintiff's Amended Responses to Defendant's Requests for Admission, Set Two served on June 15, 2026.

8. Attached as Exhibit 6 is a true and correct copy of Plaintiff's Responses [to] Defendant's Requests for Admission, Set Three served on August 25, 2026.

9. Attached as Exhibit 7 is a true and correct copy of Plaintiff's Second Supplemental Response to Defendant Sweetener Product's Interrogatories, Set One served on August 27, 2025.

10. Attached as Exhibit 8 is a true and correct copy of Plaintiff's Response to Defendant Sweetener Product's Interrogatories, Set Two served on August 25, 2026.

11. Attached as Exhibit 9 is a true and correct copy of Plaintiff's Amended Response to Defendant's Request for Production of Documents, Set Two served on June 15, 2026.

12. Attached as Exhibit 10 is a true and correct copy of Plaintiff's Response to Defendant's Requests for Production of Documents, Set Three served on August 25, 2026.

13. Attached as Exhibit 11 is a true and correct copy of excerpts from the deposition transcript of Jason Aston held on July 7, 2026.

14. Attached as Exhibit 12 is a true and correct copy of excerpts from the deposition transcript of Plaintiff's Rule 30(b)(6) witness Pam Lewis held on September 11, 2026.

15. Attached as Exhibit 13 is a true and correct copy of Plaintiff's Second Amended Response and Objection to Defendant's Notice of Deposition to Central Valley Eden Environmental Defenders' Person Most Knowledgeable Pursuant to Fed. R. Civ. P. 30(b)(6) served on May 19, 2025.

16. Attached as Exhibit 14 is a true and correct copy of Plaintiff's Objection to Defendant's Interrogatories Set Two, Requests for Admission Set Three, and Requests for Production of Documents Set Three and Intent to Seek Rule 37 Sanctions for Violation of a Discovery Order served on August 5, 2026.

17. Attached as Exhibit 15 is a true and correct screenshot of National WOTUS Defenders, LLC's information as listed on the New Mexico Secretary of State website. This information was obtained using New Mexico's Secretary of State's public business search feature located at this website: https://enterprise.sos.nm.gov/search/business. Once on that website, I searched for "national wotus defenders" to pull up the organization's information. Once the organization was located, I took a screenshot of what the public website displayed.

18. Attached as Exhibit 16 is a true and correct copy of Plaintiff's Supplemental Disclosures served on May 19, 2025.

19. Attached as Exhibit 17 is a true and correct copy of Plaintiff's Fourth Supplemental Disclosures Amending Prior Disclosure, served on September 29, 2025.

20. Attached as Exhibit 18 is a true and correct copy of the declaration of Eric Lucas, dated January 31, 2025, filed in the United States District Court for the Eastern District of California case *Central Valley Eden Environmental Defenders, LLC v. Airgas,* No. 2:24-cv-03547-DJC-ADC (E.D. Cal.) in support of Plaintiff's Opposition to Motion to Dismiss. This document was filed and entered on the docket in that matter and downloaded from PACER.

21. Attached as Exhibit 19 is a true and correct copy of the declaration of Jason Aston dated January 31, 2025, filed in the United States District Court for the Eastern District of California case *Central Valley Eden Environmental Defenders, LLC*

*v. Airgas,* No. 2:24-cv-03547-DJC-ADC (E.D. Cal.) in support of Plaintiff's Opposition to Motion to Dismiss. This document was filed and entered on the docket in that matter and downloaded from PACER.

22. Attached as Exhibit 20 is a true and correct copy of Order and Opinion of the United States District Court for the District of Massachusetts in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, No. 1:14-cv-14176-ADB (D. Mass.), reported at 397 F.Supp.3d 126 (D. Mass. 2019). This document was filed and entered on the docket in that matter and downloaded from PACER.

23. On October 7, 2026, Magistrate Judge Chi Soo Kim granted in part Defendant's motions to compel, in the companion case *Central Valley Eden Environmental Defenders, LLC v. Sweetener Products,* No. 2:25-cv-00078-WBS-CSK (E.D. Cal.). That discovery went directly to Plaintiff's business purpose and mission. Instead of responding to it, Plaintiff's counsel withdrew from the case, and Plaintiff dissolved. A true and correct copy of this order is attached as Exhibit 21.

24. Our office has attempted to contact Plaintiff's former counsel, Adam Brumm, by email and telephone, but has been unable to reach him since before October 7, 2026.

25. Our office has also attempted to contact Plaintiff directly, but emails sent to Plaintiff have returned error messages and its phone number appears to be disconnected.

26. On October 8, 2026, our office determined that Plaintiff Central Valley Eden Environmental Defenders, LLC's ("Plaintiff") filed a "Certification of Cancellation – LLC Termination" on October 7, 2026, with the California Secretary of State. We downloaded a copy from the Secretary of State's public website's business search feature: https://bizfileonline.sos.ca.gov/search/business. A true and correct copy of Plaintiff's Certificate of Cancellation is attached to the Request for Judicial Notice as Exhibit A.

27. I have previously conducted multiple online searches for "Central Valley Eden Environmental Defenders, LLC." No website bearing that name appeared in any

search, however, searches for "Central Valley Eden Environmental Defenders, LLC" consistently directed to the website for "Eden Environmental Defenders" accessible at https://edendefenders.org/.

28. After seeing Plaintiff's Certificate of Cancellation, I visited the domain at https://edendefenders.org/ on October 8, 2026, and found that the website appeared to have been shut down. At approximately 1:30 p.m., I took a screenshot of what the website displayed. A true and correct copy of that screenshot is attached to the Request for Judicial Notice as Exhibit B.

29. On October 27, 2026, I emailed Julio Gutierrez-Morales and Natalie Marcin, Plaintiff's former counsel in this case who still represent Plaintiff in other matters, to ask whether they intended to reappear in this case. Both responded that they did not.

30. I also copied Craig Brandt on that email. Mr. Brandt previously appeared informally on Plaintiff's behalf to facilitate settlement discussions. He did not respond.

31. A true and correct copy of those email exchanges is attached as Exhibit 22.

32. On November 13, 2026, this Court issued an order on Defendant's Motion to Dismiss, in the companion case *Central Valley Eden Environmental Defenders, LLC v. Sweetener Products,* No. 2:25-cv-00078-WBS-CSK (E.D. Cal.) A true and correct copy of this order is attached as Exhibit 23.

33. A true and correct copy of the Joint Statement regarding Plaintiff's Rule 30(b)(6) deposition, filed in the companion case *Central Valley Eden Environmental Defenders, LLC v. Sweetener Products,* No. 2:25-cv-00078-WBS-CSK (E.D. Cal.), is attached as Exhibit 24.

///

///

///

///

///

34. On May 15, 2026, Magistrate Judge Chi Soo Kim granted in part Defendant's motions to compel and Plaintiff's Motion for Protective Order, in the companion case *Central Valley Eden Environmental Defenders, LLC v. Sweetener Products,* No. 2:25-cv-00078-WBS-CSK (E.D. Cal.). A true and correct copy of this order is attached as Exhibit 25.

I declare under penalty of perjury that the foregoing is true and correct.

Date: November 16, 2026

/s/ Demetria Mantalis
Demetria Mantalis
Declarant
Attorney for Defendants

# PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My e-mail address is (alyson@jfnovaklaw.com) and my business address is 500 Silver Spur Road, Suite 206, Rancho Palos Verdes, CA 90275.

On November 16, 2026, I served the following documents described as:

1. **NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**
2. **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**
3. **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS**
4. **DECLARATION OF DEMETRIA MANTALIS IN SUPPORT OF MOTION TO DISMISS**
5. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

on all interested parties in this action by placing the [] original [xx] a true copy thereof enclosed in a sealed envelope, addressed as follows, or [] by electronic service sent to the following e-mail addresses:

**Central Valley Eden Environmental Defenders, LLC**
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616

[xx] **BY GLS OVERNIGHT DELIVERY:** I am "readily familiar" with the firm's practice for collection and processing of documents for overnight delivery with GLS. In accordance with that practice, I caused the envelope containing the above-described documents, with all applicable shipping fees fully prepaid, to be sealed and placed for collection and overnight delivery with GLS at Rancho Palos Verdes, California, for delivery to the addressee in the ordinary course of business.

Executed on November 16, 2026, at Rancho Palos Verdes, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Alyson Ress
Alyson Ress

# Exhibit 1

# California Secretary of State
Electronic Filing

FILED
Secretary of State
State of California

## LLC Registration – Articles of Organization

| | |
|---|---|
| Entity Name: | Central Valley Eden Environmental Defenders LLC |
| Entity (File) Number: | 202033510005 |
| File Date: | 11/24/2020 |
| Entity Type: | Domestic LLC |
| Jurisdiction: | California |

Detailed Filing Information

1. Entity Name: Central Valley Eden Environmental Defenders LLC

2. Business Addresses:
   a. Initial Street Address of Designated Office in California: 1520 East Covell Boulevard, Suite B5-611, Davis, California 95616, United States
   b. Initial Mailing Address: 1520 East Covell Boulevard, Suite B5-611, Davis, California 95616, United States

3. Agent for Service of Process: Hans W. Herb, 740 Fourth Street, Santa Rosa California 95404, United States

4. Management Structure: One Manager

5. Purpose Statement: The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

Electronic Signature:

The organizer affirms the information contained herein is true and correct.

Organizer: Susan Johnson

# Exhibit 2

Eden Environmental Defender ✕ +

edendefenders.org

Work | PracticePanther -... | ChatGPT | Access via Synology | Contract Work

Verify it's you

Eden Environmental Defenders

Home | Mission | Membership | Upcoming Events | Pollution Reporting




Citizens Unite

Eden Environmental Defender ×

edendefenders.org

Work PracticePanther -... ChatGPT Access via Synology Contract Work

Verify it's you

Eden Environmental Defenders

Home Mission Membership Upcoming Events Pollution Reporting

## Citizens Unite



### We love our environment!

We are an environmental citizen's group based in the California Central Valley region. We defend local waterways and protect animal habitats and human recreation areas by holding polluters accountable.

## Contact Us

### Drop us a line!

Name

Email*

Message

Eden Environmental Defender ×
edendefenders.org
Work PracticePanther -... ChatGPT Access via Synology Contract Work
Verify it's you

Eden Environmental Defenders

Home Mission Membership Upcoming Events Pollution Reporting

Sign up for our email list for updates, promotions, and more.

Send

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

## Eden Environmental Defenders

admin@edendefenders.org

1-800-545-7215

1520 East Covell Blvd, Suite B5
Davis, CA 95616

Copyright © 2025 Eden Environmental Defenders - All Rights Reserved.

Mission Membership Upcoming Events Pollution Reporting

Powered by
GoDaddy Airo

Membership

edendefenders.org/membership

Work PracticePanther -... ChatGPT Access via Synology Contract Work

Verify it's you

Eden Environmental Defenders

Home Mission Membership Upcoming Events Pollution Reporting

## New Membership

All information provided to Eden is strictly confidential.

Name*

Email*

Phone Number*

Join

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

Copyright © 2025 Eden Environmental Defenders - All Rights Reserved.

Mission Membership Upcoming Events Pollution Reporting

Powered by
GoDaddy Airo

to protect and preserve the waterways in our local community.

- We provide a forum for our members to take action by anonymously reporting any industrial polluters in their community.
- We encourage our members to become environmentally responsible, and we promote environmental awareness and education.
- We provide information and opportunities for our members to volunteer their time and resources to help clean up their communities and their waterways.

## Our Partners

Friends of the River since 1973

SFEI AQUATIC SCIENCE CENTER
SAN FRANCISCO ESTUARY INSTITUTE & THE AQUATIC SCIENCE CENTER

Copyright © 2025 Eden Environmental Defenders - All Rights Reserved.



Powered by
GoDaddy Airo

Mission

edendefenders.org/mission

Work PracticePanther -... ChatGPT Access via Synology Contract Work

Verify it's you

Eden Environmental Defenders

Home Mission Membership Upcoming Events Pollution Reporting



## Our Mission

### California Central Valley Region

Eden Environmental Defenders protects our beautiful California waterways, with a focus on the environmentally disadvantaged Central Valley Region. This includes all waterways in the Sacramento-San Joaquin Delta, such as the Sacramento, San Joaquin River, American, Mokelumne, and Cosumnes Rivers, which are impaired due to historically high amounts of industrial and agricultural pollution.

### And beyond...

Eden invites anyone from any walk of life to join the mission to protect our environment all across our beautiful state as we look to positively impact other regions. Members can make a real difference!

Membership Information

## How we defend the environment

- We hold industrial businesses accountable for polluting the Water of the United States through the authority granted to citizens under the Federal Clean Water Act.
- We offer free and confidential membership to anyone who would like to join our mission to protect and preserve the waterways in our local community.

**Exhibit 3**

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC., et al,<br><br>Defendants. | Case No.: 2:25-cv-00078-WBS-CSK<br><br>**PLAINTIFF'S THIRD SUPPLEMENTAL DISCLOSURES** |

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff Central Valley Eden Environmental Defenders, LLC ("EDEN") submits the following Supplemental Disclosures in this matter:

**A. The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information.**

Plaintiff's Standing Witnesses. Plaintiff hereby discloses the following current member who meets all Article III standing requirements.

Name: Jason Aston
Contact Information: 8551 Sonia Avenue, Orangevale, CA 95662

Cell phone number: (530) 309-4853
Email: jason706706@gmail.com

Plaintiff reserves the right to supplement this list as more documents, data compilations and tangible things relevant to disputed facts in this matter become available to Plaintiff.

Dated: August 4, 2025

Respectfully,

By: ___*/s/ Adam D. Brumm*__________
Adam D. Brumm
Attorney for Plaintiff

# PROOF OF SERVICE

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 4, 2025, I served the following document described as

**PLAINTIFF'S THIRD SUPPLEMENTAL DISCLOSURES**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 4, 2025

By: ___*/s/ Adam D. Brumm*__________
Adam D. Brumm

# Exhibit 4

BA20251661954

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

For Office Use Only
**-FILED-**
File No.: BA20251661954
Date Filed: 8/15/2025

B3939-2687 08/15/2025 1:27 PM Received by California Secretary of State

Entity Details

| | |
|---|---|
| Limited Liability Company Name | CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS LLC |
| Entity No. | 202033510005 |
| Formed In | CALIFORNIA |

Street Address of Principal Office of LLC

| | |
|---|---|
| Principal Address | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |

Mailing Address of LLC

| | |
|---|---|
| Mailing Address | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |
| Attention | |

Street Address of California Office of LLC

| | |
|---|---|
| Street Address of California Office | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |

Manager(s) or Member(s)

| Manager or Member Name | Manager or Member Address |
|---|---|
| + National WOTUS Defenders, LLC | 6300 RIVERSIDE PLAZA LN NW<br>100<br>ALBUQUERQUE, NM 87120 |

Agent for Service of Process

| | |
|---|---|
| Agent Name | HANS W HERB |
| Agent Address | 740 FOURTH STREET<br>SANTA ROSA, CA 95404 |

Type of Business

| | |
|---|---|
| Type of Business | Environmental Membership Group with voluntary associational members in Northern California |

Email Notifications

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

Chief Executive Officer (CEO)

| CEO Name | CEO Address |
|---|---|
| None Entered | |

Labor Judgment

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

Ex. 4 - 001

B3939-2688 08/15/2025 1:27 PM Received by California Secretary of State

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

| | |
|---|---|
| *Diane Adams* | *08/15/2025* |
| Signature | Date |

# Exhibit 5

Adam D. Brumm, Esq. SB# 257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S AMENDED RESPONSE DEFENDANT'S REQUESTS FOR ADMISSION, SET TWO**<br><br>**FED. R. CIV. P. 26 and 36** |

PROPOUNDING PARTY: Defendant SWEETENER PRODUCTS, INC.

RESPONDING PARTY: Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC

SET NO.: TWO

Ex. 5 - 001

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("EDEN"), by and through its attorneys of record, hereby responds pursuant to the Second Set of Requests for Admission of Defendant SWEETENER PRODUCTS, INC. ("Defendant") as follows.

**PRELIMINARY STATEMENT**

EDEN's investigation and development of all facts and circumstances relating to this action is ongoing. The following responses and objections are made without prejudice to, and are not a waiver of, EDEN s right to rely on other facts or documents at trial.

By making the accompanying responses and objections to Defendant's Requests for Admission, EDEN does not waive, and hereby expressly reserves its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds, including but not limited to competency, relevancy, materiality, and privilege.

Further, EDEN makes the responses and objections herein without in any way implying that it considers the Requests, and responses to the Requests, to be relevant or material to the subject matter of this action.

EDEN expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

**GENERAL OBJECTIONS**

EDEN objects to Defendant's "Definitions" to the extent that the instructions seek to enlarge, modify or ignore the law regarding such matters. Discovery in Federal lawsuits is subject to the express provisions of the Federal Rules of Civil Procedure and not Defendant's proposed Definitions.

Specifically, EDEN objects to Defendant's definition No. 1 ("YOU" and "YOUR") to the extent that it purports to include EDEN's employees, agents, attorneys and consultants.

EDEN does not have sufficient control over its agents, attorneys and consultants such that those individuals or entities could properly and lawfully be considered synonymous with EDEN; and EDEN has no employees.

Further, EDEN objects to the inclusion of "anyone acting or purporting to act on its behalf" as impermissibly overbroad as to scope and time frame.

Based on the foregoing, EDEN will not respond to Defendant's Requests for Admission which request information about EDEN's employees, affiliates, attorneys or consultants.

**REQUEST FOR ADMISSION NO. 10**

Admit that YOU have no DOCUMENTS evidencing unauthorized discharges from the FACILITY as alleged in Paragraph 151 of the COMPLAINT.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10**

DENIED.

**REQUEST FOR ADMISSION NO. 11**

Admit that YOU have not conducted any stormwater sampling at the FACILITY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11**

ADMIT.

**REQUEST FOR ADMISSION NO. 12**

Admit that YOU have not been on-site at the FACILITY.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12**

Plaintiff objects to this Request on the basis that it is vague and unintelligible with respect to the term "on-site".

Plaintiff is unable to either affirmatively admit or deny this Request and on that basis DENIES Request No. 12 as currently drafted.

**REQUEST FOR ADMISSION NO. 13**

Admit that YOU have fewer than 10 members.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this

matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 14**

Admit that YOU have fewer than 25 members.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this

case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

Ex. 5 - 005

**REQUEST FOR ADMISSION NO. 15**

Admit that YOU did not host any EVENTS for YOUR members between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure or its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the

fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that YOU did not sponsor any EVENTS for YOUR members between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Association v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 17:**

Admit that YOU do not conduct any independent environmental monitoring or enforcement activities aside from litigation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

EDEN objects to this Request on the ground that it is impermissibly compound by requesting EDEN to admit or deny two separate facts: (a) whether EDEN conducts any independent environmental monitoring; and (b) whether EDEN conducts enforcement activities aside from litigation.

EDEN further objects to this Request on the grounds that the terms "independent environmental monitoring", "enforcement activities" and "aside from litigation" have not been defined and are thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs

of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOU did not provide any community education programs unrelated to litigation between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

EDEN objects to this Request on the ground that the terms "community education programs" and "unrelated to litigation" have not been defined and are thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs

of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOU did not host any environmental advocacy EVENTS unrelated to litigation between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

EDEN objects to this Request on the grounds that the terms "environmental advocacy event" and "unrelated to litigation" have not been defined and are vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs

of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU did not host any environmental improvement programs unrelated to litigation between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

EDEN objects to this Request on the grounds that the terms "environmental improvement program" and "unrelated to litigation" have not been defined and are thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs

of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOUR only organizational purpose is enforcing the Clean Water Act through the citizen suit provision.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

DENIED.

**REQUEST FOR ADMISSION NO. 22:**

Admit that YOU have no criteria for membership.

Ex. 5 - 012

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 23:**

Admit that YOUR members include people who have only signed a general interest form through YOUR website.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

EDEN objects to this Request on the grounds that the phrase "signed a general interest form through YOUR website" is vague and unintelligible and inapplicable.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 24:**

Admit that signing a general interest form through YOUR website, without more, does not confer membership in YOUR organization.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

EDEN objects to this Request on the grounds that the phrase "signing a general interest form through YOUR website" is vague, unintelligible and inapplicable.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry

into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 25:**

Admit that YOU did not provide an annual report to YOUR members between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this

case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 26:**

Admit that YOU did not provide regular updates to YOUR members between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 27:**

Admit that YOU did not provide a newsletter to YOUR members between January 1, 2021, and January 1, 2026.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

Based on the foregoing, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

Date: June 15, 2026

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm
Attorney for Plaintiff

## PROOF OF SERVICE

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On June 15, 2026, I served the following document described as

**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S REQUESTS FOR ADMISSION, SET TWO**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 15, 2026

By: *__/s/_Adam D. Brumm__________*
Adam D. Brumm

Ex. 5 - 021

**Exhibit 6**

Adam D. Brumm, Esq. SB# 257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S RESPONSE DEFENDANT'S REQUESTS FOR ADMISSION, SET THREE**<br><br>**FED. R. CIV. P. 26 and 36** |

PROPOUNDING PARTY: Defendant SWEETENER PRODUCTS, INC.

RESPONDING PARTY: Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC

SET NO.: THREE

Ex. 6 - 001

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("EDEN"), by and through its attorneys of record, hereby responds pursuant to the Third Set of Requests for Admission of Defendant SWEETENER PRODUCTS, INC. ("Defendant") as follows.

**PRELIMINARY STATEMENT**

EDEN's investigation and development of all facts and circumstances relating to this action is ongoing. The following responses and objections are made without prejudice to, and are not a waiver of, EDEN s right to rely on other facts or documents at trial.

By making the accompanying responses and objections to Defendant's Requests for Admission, EDEN does not waive, and hereby expressly reserves its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds, including but not limited to competency, relevancy, materiality, and privilege.

Further, EDEN makes the responses and objections herein without in any way implying that it considers the Requests, and responses to the Requests, to be relevant or material to the subject matter of this action.

EDEN expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

**GENERAL OBJECTIONS**

EDEN objects to Defendant's "Definitions" to the extent that the instructions seek to enlarge, modify or ignore the law regarding such matters. Discovery in Federal lawsuits is subject to the express provisions of the Federal Rules of Civil Procedure and not Defendant's proposed Definitions.

Specifically, EDEN objects to Defendant's definition No. 1 ("YOU" and "YOUR") to the extent that it purports to include EDEN's employees, agents, attorneys and consultants.

EDEN does not have sufficient control over its agents, attorneys and consultants such that those individuals or entities could properly and lawfully be considered synonymous with EDEN; and EDEN has no employees.

Further, EDEN objects to the inclusion of "anyone acting or purporting to act on its behalf" as impermissibly overbroad as to scope and time frame.

Ex. 6 - 002

Based on the foregoing, EDEN will not respond to Defendant's Requests for Admission which request information about EDEN's employees, affiliates, attorneys or consultants.

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU have not conducted any NON-LITIGATION ACTIVITY gatherings, assemblies, town halls, or public forums in furtherance of YOUR BUSINESS PURPOSE AND MISSION from January 1, 2021, to present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 29:**

Admit that YOU did not utilize surveys, questionnaires, polling, or similar information gathering methods when determining YOUR BUSINESS PURPOSE AND MISSION.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 30:**

Admit that YOU do not utilize surveys, questionnaires, polling, or similar information gathering methods to determine how to achieve YOUR BUSINESS PURPOSE AND MISSION..

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 31:**

Admit that YOU did not host, sponsor, or organize, any NON-LITIGATION ACTIVITY educational programs, workshops, conferences, or public EVENTS in furtherance of YOUR BUSINESS PURPOSE AND MISSION, from January 1, 2026, to the present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**<u>REQUEST FOR ADMISSION NO. 32</u>:**

Admit that YOU have not adopted or published any strategic plan, policy agenda, or written priorities, describing how YOU intend to advance YOUR BUSINESS PURPOSE AND MISSION.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 32</u>:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**<u>REQUEST FOR ADMISSION NO. 33</u>:**

Admit that YOU have not maintained any NON-LITIGATION ACTIVITY program or initiative dedicated to carrying out YOUR BUSINESS PURPOSE AND MISSION from January 1, 2021, to the present.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 33:</u>**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 34:**

Admit that YOU did not publish or disseminate newsletters, reports, annual reports, policy updates, or other similar materials describing activities undertaken in furtherance of YOUR BUSINESS PURPOSE AND MISSION, from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 35:**

Admit that YOU do not have established written procedures or publicly available policies governing how YOU achieve the goals of YOUR BUSINESS PURPOSE AND MISSION.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

**REQUEST FOR ADMISSION NO. 36:**

Admit that YOU have not engaged in any NON-LITIGATION ACTIVITY lobbying, legislative advocacy, public education, community outreach, or other public activities in furtherance of YOUR BUSINESS PURPOSE AND MISSION, from January 1, 2026, to the present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Based on the foregoing objections, EDEN cannot admit or deny this Request, and on that basis DENIES the Request.

Date: August 25, 2026

By: *__/s/ Adam D. Brumm__________*
Adam D. Brumm
Attorney for Plaintiff

# PROOF OF SERVICE

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 25, 2026, I served the following document described as

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUESTS FOR ADMISSION, SET THREE**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 25, 2026

By: *__/s/ Adam D. Brumm__________*
Adam D. Brumm

Ex. 6 - 008

**Exhibit 7**

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT SWEETENER PRODUCT'S INTERROGATORIES, SET ONE**<br><br>Trial Date: None Set<br>Complaint Filed: January 8, 2025 |

PROPOUNDING PARTY: Defendant SWEETENER PRODUCTS, INC.

RESPONDING PARTY: Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC

SET NO.: ONE

Ex. 7 - 001

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("Plaintiff"), by and through its attorneys of record, hereby submits its supplemental response to the First Set of Interrogatories of Defendant SWEETENER PRODUCTS, INC. ("Defendant") as follows.

**PRELIMINARY STATEMENT**

Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. The following responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

By making the accompanying responses and objections to Defendant's Interrogatories, Plaintiff does not waive, and hereby expressly reserves its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds, including but not limited to competency, relevancy, materiality, and privilege.

Further, Plaintiff makes the responses and objections herein without in any way implying that it considers the interrogatories, and responses to the interrogatories, to be relevant or material to the subject matter of this action.

Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

**PLAINTIFF's SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES**

**INTERROGATORY NO. 1**

State all facts upon which you claim that SWEETNER has violated its PERMIT.

**RESPONSE TO INTERROGATORY NO. 1**:

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad.

Specifically, Plaintiff's 74-page complaint is based solely on allegations that Defendant violated standard conditions of California's Industrial General Permit.

Courts in the Ninth Circuit have held that discovery which requests the responding party to provide "all facts" that provide the basis for allegations in a complaint is impermissibly broad on its face. *See, Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024).

Plaintiff further objects to this Interrogatory to the extent that it seeks information that requires an expert opinion. Expert disclosures and reports are not yet due in this matter.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks information which has not yet been discovered by Plaintiff, as discovery is ongoing.

Plaintiff further objects to this Interrogatory to the extent that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Plaintiff further objects to this Interrogatory to the extent that the information sought is known by Defendant and otherwise equally available to Defendant.

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving the foregoing objections, Plaintiff responds as follows:

In responding to this Interrogatory, Plaintiff incorporates the entirety of the following documents:

1. Plaintiff's Notice Letter issued to Defendant on August 13, 2024;
2. Plaintiff's Notice Letter issued to Defendant on August 5, 2025;
3. Plaintiff's Initial Disclosures served on Defendant on April 21, 2025;
4. Plaintiff's Supplemental Disclosures served on Defendant on May 19, 2025;

5. Plaintiff's Second Supplemental Disclosures served on Defendant on July 28, 2025; and
6. Plaintiff's Third Supplemental Disclosures served on Defendant on August 4, 2025.

Plaintiff does not have in its possession, custody and/or control any additional information in response to this Interrogatory.

Plaintiff does not have any additional information reasonably available to Plaintiff in response to this Interrogatory.

Plaintiff's Notice Letters and Disclosures contain specific and detailed factual information that, when interpreted by appropriate experts within the framework of the standard conditions of the General Permit, form the entire bases for all allegations in Plaintiff's Complaint.

Plaintiff does not intend to rely on additional facts to prove the allegations in its Complaint against Defendant, unless and until it becomes aware of additional facts. In that case, Plaintiff will either prepare a Second Amended Notice Letter or will supplement its Response to this Interrogatory.

In responding to Interrogatory No. 1, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 1.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 2**

Identify all PERSONS with knowledge of the alleged PERMIT violations by SWEETENER.

**RESPONSE TO INTERROGATORY NO. 2**:

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad as drafted and further requests information outside the knowledge of Plaintiff.

Specifically, any environmental consultant or Qualified Industrial Stormwater Practitioner (QISP) could become aware by reviewing documents certified and submitted by Defendant to publicly available databases such as Cal EPA's SMARTS system, that Defendant is in violation of standard conditions of the General Permit.

Furthermore, Plaintiff's Complaint against Defendant is a public record and could potentially have been viewed by any number of persons.

Plaintiff is unaware of and has no ability to obtain the identity of any of these individuals.

Plaintiff was statutorily required to submit the subject Notice Letters to multiple regulatory authorities, including the State Water Board and EPA. The names and email addresses of the individuals served with the Notice Letters are included on the last page of the Notice Letters. Plaintiff is unaware of and has no ability to obtain the identity of any other individuals employed by the named regulatory agencies who may have reviewed Plaintiff's Notice Letters to Defendant in this matter and thus became aware of the violations alleged in Plaintiff's Complaint against Defendant.

Individuals who are aware of Defendant's violations of the General Permit either from a review of public records or Plaintiff's Complaint or Notice Letters are not percipient witnesses to the allegations alleged in the Complaint and are not required to be disclosed by Plaintiff unless Plaintiff intends to use any of those individuals as witnesses at trial.

Plaintiff's Initial and Supplemental Disclosures identify all non-expert witnesses that Plaintiff intends to rely upon for summary judgment or trial of this matter.

Based on the foregoing, Interrogatory No. 2 is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving the foregoing objections, Plaintiff responds as follows:

In addition to the potential witnesses disclosed within the parties' Initial and Supplemental Disclosures, Plaintiff responds that members of the legal team for both Plaintiff and Defendant are aware of the alleged Permit violations. None of the individuals on Plaintiff's legal team possess any first-hand knowledge of the violations alleged in Plaintiff's Complaint or are percipient witnesses thereto.

In addition to the potential witnesses disclosed within the parties' Initial and Supplemental Disclosures, Plaintiff responds that a number of its associational members are aware of the alleged Permit violations. None of Plaintiff's associational members possess any first-hand knowledge of the violations alleged in Plaintiff's Complaint or are percipient witnesses thereto.

In addition to the potential witnesses disclosed within the parties' Initial and Supplemental Disclosures, Plaintiff responds that its experts are aware of the alleged Permit violations. None of Plaintiff's former or current experts possess any first-hand knowledge of the violations alleged in Plaintiff's Complaint or are percipient witnesses thereto.

Plaintiff will disclose the identity of its FRCP 26(b)(4)(A) and (B) retained and non-retained experts at the appropriate time. Plaintiff is not required to disclose the identity of FRCP 26(b)(4)(D) expert witnesses.

Plaintiff is not required to disclose the identity of its associational members who have become aware of the violations alleged in Plaintiff's Complaint from a review of the Complaint or Notice Letters because the identity of these individuals is protected from disclosure. See, *Students for Fair Admissions, Inc. v. President of Harvard College*, 600 U.S. 181, 199, 143 S.Ct. 2141, 216 L.Ed.2d 857 (2023); *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010); *NRDC, Inc. v. Ill. Power Res., LLC*, No. 13-cv-1181, 2015 U.S. Dist. LEXIS 201334, at *10-12 (C.D. Ill. May 12, 2015); *Waste Action Project v. Girard Resources*, No. 2:21-cv-00443-RAJ (W.D. WA, Feb 12, 2024).

Further, none of Plaintiff's associational members possess any information about the alleged violations other than the information stated on the face of Plaintiff's Complaint and Notice Letters.

Plaintiff believes the following individuals possess first-hand knowledge of the Permit violations alleged in Plaintiff's Complaint:

1. <u>Defendant's Corporate Officers and Current and Former Employees</u>, including Dale Jabour, Steve Shanklin, Hector Morfin, Kenny Cochrane, David Jones, Andres Collazo, Ava Thao, Brian Kelley, Felipe Hurtado, Gene Curry, Gerald Vandergoltz, Jason Smario, Joshua Epperly, Julian Oropreza, Marcus Castillo, Michael Kendall, Nadeem Alsartawi, Paul Dorsey, Raymond Abing, Robeno Ath, Robert Castillo, Shawn Lamkin, Wendell Cororo, Leng Thao, Lauben Camba and Adrian Rubalcaba.
2. <u>Defendant's Environmental Consultants</u>, including Jessica Stacy and John Balobeck of NES and Jason Wunschel, formerly employed by NES.
3. <u>Employees of the Central Valley Regional Water Quality Control Board</u>, including Robert Ditto and others unknown to Plaintiff.

In responding to Interrogatory No. 2, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 2.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

Ex. 7 - 006

**<u>INTERROGATORY NO. 3</u>**

Describe the number of members YOU had as of August 17, 2024.

**<u>RESPONSE TO INTERROGATORY NO. 3</u>**

The number of members of Plaintiff as of August 17, 2024, is a wholly privileged matter not relevant to any of Defendant's defenses. *See*, *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010)

Plaintiff is an environmental member group with identifiable members; and Plaintiff has disclosed to Defendant the identity of its associational member with standing. Pursuant to the holding in *Students for Fair Admissions, Inc. v. President of Harvard College*, 600 U.S. 181, 199, 143 S.Ct. 2141, 216 L.Ed.2d 857 (2023), discovery requests related to Plaintiff's undisclosed associational members or Plaintiff's organization are no longer permitted.

Based on the foregoing, Interrogatory No. 3 is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving the foregoing objections, Plaintiff responds as follows: **More than 1 and less than 1000**.

In responding to Interrogatory No. 3, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 3.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**<u>INTERROGATORY NO. 4</u>**

Describe all monitoring activities performed by YOU at or near the FACILITY, including the dates, purpose, and methods used.

**<u>RESPONSE TO INTERROGATORY NO. 4</u>**:

Plaintiff objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information outside the scope of FRCP 26(b)(1).

Without waiving any of the foregoing objections, Plaintiff responds as follows: **Plaintiff has not performed any monitoring activities at or near Defendant's facility.**

In responding to Interrogatory No. 4, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 4.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 5**

State all facts on which you base for YOUR allegation that DEFENDANT failed to implement Best Management Practices ("BMPs") as required under the PERMIT.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad with respect to "all facts".

Courts in the Ninth Circuit have held that discovery which requests the responding party to provide "all facts" that provide the basis for allegations in a complaint is impermissibly broad on its face. *See, Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024).

Plaintiff further objects to this Interrogatory to the extent that it seeks information that requires an expert opinion. Expert disclosures and reports are not yet due in this matter.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks information which has not yet been discovered by Plaintiff, as discovery is ongoing.

Plaintiff further objects to this Interrogatory to the extent that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Plaintiff further objects to this Interrogatory to the extent that the information sought is known by Defendant and otherwise equally available to Defendant.

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving the foregoing objections, Plaintiff responds as follows:

Based on information publicly available to Plaintiff, including documents available on SMARTS and other regulatory websites, review of documents the parties have produced in discovery and disclosures, and historical Google satellite images, Defendant for many years has consistently failed to maintain proper BMPs. Specifically, tire tracking from onsite operation of industrial equipment and trucks/tankers have left heavy staining on the ground which has never been adequately cleaned up by Defendant. Furthermore, Defendant has consistently tracked industrial materials throughout the facility near storm drains, and out of the facility onto East Thurman Street. Defendant has also consistently stored outdoors excess scrap and junk materials without cover, directly on the ground; and has failed to clean up or pick up spills and debris/trash throughout the facility on a regular basis. In addition, Defendant conducts without proper BMPs industrial operations such as welding, fabrication, washing of tankers and equipment and truck maintenance in places that are exposed to the elements (such as behind open roll-up doors). Finally, Defendant has failed to install proper BMPs for its onsite drain inlets.

In addition to the foregoing, Plaintiff's Notice Letter issued to Defendant on August 13, 2024; and Plaintiff's amended Notice Letter issued to Defendant on August 5, 2025, contain further facts related to Defendant's failure to implement proper BMPs.

Ex. 7 - 009

Plaintiff does not have in its possession, custody and/or control any additional information in response to this Interrogatory.

Plaintiff does not have any additional information reasonably available to Plaintiff in response to this Interrogatory.

Plaintiff's Notice Letters and Disclosures contain specific and detailed factual information that, when interpreted by appropriate experts within the framework of the standard conditions of the General Permit with respect to Best Management Practices, form the entire bases for all allegations in Plaintiff's Complaint that Defendant has failed to implement proper BMPs.

Plaintiff does not intend to rely on additional facts to prove the allegations in its Complaint relating to Defendant's failure to implement sufficient BMPs, unless and until it becomes aware of additional facts.

Plaintiff intends to serve Defendant with a Site Inspection Demand of Defendant's facility pursuant to FRCP 34. Furthermore, Plaintiff intends to propound on Defendant additional Requests for Admission and Requests for Production of Documents.

Plaintiff believes that additional BMP deficiencies may be discovered as discovery continues and will either supplement this Response or serve Defendant with a Second Amended Notice Letter if further information becomes available to Plaintiff.

In responding to Interrogatory No. 5, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 5.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 6**

State all facts supporting YOUR contention that violations were continuing at [the] time YOU filed YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 6**:

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad with respect to "all facts".

Courts in the Ninth Circuit have held that discovery which requests the responding party to provide "all facts" that provide the basis for allegations in a complaint is impermissibly broad on its

face. *See, Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024).

Plaintiff further objects to this Interrogatory to the extent that it seeks information that requires an expert opinion. Expert disclosures and reports are not yet due in this matter.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks information which has not yet been discovered by Plaintiff, as discovery is ongoing.

Plaintiff further objects to this Interrogatory to the extent that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Plaintiff further objects to this Interrogatory to the extent that the information sought is known by Defendant and otherwise equally available to Defendant.

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving all applicable objections to Interrogatory No. 6, Plaintiff responds that one of the reasons it alleges that General Permit violations at Defendant's facility are continuing is that the General Permit requires all dischargers such as Defendant to continuously maintain a SWPPP and Site Map which complies with Section X of the General Permit. Defendant has not yet revised its SWPPP and Site Map to comport with all provisions of Section X of the General Permit.

Ex. 7 - 011

The specific SWPPP and Site Map deficiencies alleged by Plaintiff are articulated in detail in Plaintiff's Notice Letters. Every day that Defendant fails to maintain a SWPPP and Site Map that fails to comport with all provisions of the General Permit is a separate, distinct and ongoing violation of the General Permit.

Plaintiff further responds that the General Permit requires that all dischargers continuously maintain appropriate BMPs which comport with the General Permit. Based on information publicly available to Plaintiff, including documents available on SMARTS and other regulatory websites, review of documents the parties have produced in discovery and disclosures, and historical Google satellite images, Defendant for many years has consistently failed to maintain proper BMPs. Specifically, tire tracking from onsite operation of industrial equipment and trucks/tankers have left heavy staining on the ground which has never been adequately cleaned up by Defendant. Furthermore, Defendant has consistently tracked industrial materials throughout the facility near storm drains, and out of the facility onto East Thurman Street. Defendant has also consistently stored outdoors excess scrap and junk materials without cover, directly on the ground; and has failed to clean up or pick up spills and debris/trash throughout the facility on a regular basis. In addition, Defendant conducts without proper BMPs industrial operations such as welding, fabrication, washing of tankers and equipment and truck maintenance in places that are exposed to the elements (such as behind open roll-up doors). Finally, Defendant has failed to install proper BMPs for its onsite drain inlets. Every day that Defendant fails to maintain sufficient BMPs at its facility is a separate, distinct and ongoing violation of the General Permit.

Plaintiff further responds that the General Permit requires all dischargers to include only accurate and complete information in the Annual Reports that are required to be certified and submitted to SMARTS by July 15th of each reporting year. As articulated in detail in Plaintiff's Notice Letters, every Annual Report certified and submitted to SMARTS by Defendant's legal representatives since June 29, 2017, contains objectively false information with respect to one or more of the following: (a) the number of discharge locations at Defendant's facility; (b) whether pollutants such as zinc, pesticides and dissolved oxygen (BOD/COD) are present at Defendant's facility; (c) the reason that Defendant failed to collect the required number of stormwater samples each year, or false statements that Defendant did collect the required number of stormwater samples when Defendant in fact did not do so; (d) whether

Defendant conducted compliant monthly visual inspections during the reporting year and maintained a written record of same; and (e) that Defendant was eligible for and had in fact obtained a Sampling Frequency Reduction. This includes the Annual Report most recently certified and submitted to SMARTS by Defendant on June 19, 2025. Every time that Defendant has submitted false information in its Annual Reports is a separate, distinct and ongoing violation of the General Permit.

Plaintiff further responds that the General Permit requires all dischargers to conduct monthly visual observations in accordance with Section XI.A of the General Permit. As articulated in detail in Plaintiff's Notice Letters, Defendant has failed to consistently conduct monthly visual observations that comply with Section XI.A of the General Permit since at least July 1, 2019, continuing to the present.

Every month that Defendant fails to conduct compliant monthly visual inspections at its facility is a separate, distinct and ongoing violation of the General Permit.

Plaintiff further responds that the General Permit requires all dischargers to maintain a compliant Monitoring and Reporting Program that complies with all standard provisions of the General Permit. As articulated in detail in Plaintiff's Notice Letters, since at least July 1, 2019, and continuing to the present, Defendant has maintained a deficient monitoring and reporting program at its facility. Specifically, Defendant has failed to: (a) collect the requisite number of stormwater samples; (b) collect stormwater samples from all discharge locations at its facility; (c) test its stormwater for all pollutants at its facility likely to come into contact with stormwater; (d) collect stormwater samples during qualified storm events; and (e) drop off samples to its laboratory within 48 hours of collection of the stormwater sample. The exact dates that Plaintiff alleges that Defendant failed to maintain a compliant Monitoring and Reporting Program at Defendant's facility are listed in Plaintiff's Notice Letters.

Every day that Defendant fails to comply with all standard conditions of the General Permit regarding monitoring and reporting at its facility is a separate, distinct and ongoing violation of the General Permit.

In responding to Interrogatory No. 6, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 6.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

Ex. 7 - 013

**INTERROGATORY NO. 7**

State all facts supporting YOUR allegation that the violations YOU allege are likely to continue or recur after the Complaint was filed.

**RESPONSE TO INTERROGATORY NO. 7**:

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad with respect to "all facts".

Courts in the Ninth Circuit have held that discovery which requests the responding party to provide "all facts" that provide the basis for allegations in a complaint is impermissibly broad on its face. *See, Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024).

Plaintiff further objects to this Interrogatory to the extent that it seeks information that requires an expert opinion. Expert disclosures and reports are not yet due in this matter.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks information which has not yet been discovered by Plaintiff, as discovery is ongoing.

Plaintiff further objects to this Interrogatory to the extent that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Plaintiff further objects to this Interrogatory to the extent that the information sought is known by Defendant and otherwise equally available to Defendant.

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving all applicable objections to Interrogatory No. 7, Plaintiff responds that one of the reasons it alleges that General Permit violations at Defendant's facility are likely to continue after the Complaint was filed on January 8, 2025, is that the General Permit requires all dischargers such as Defendant to continuously maintain a SWPPP and Site Map which complies with Section X of the General Permit. Defendant has not yet revised its SWPPP and Site Map to comport with all provisions of Section X of the General Permit.

The specific SWPPP and Site Map deficiencies alleged by Plaintiff are articulated in detail in Plaintiff's Notice Letters.

Plaintiff further responds that the General Permit requires all dischargers to include only accurate and complete information in the Annual Reports that are required to be certified and submitted to SMARTS by July 15th of each reporting year.

As articulated in detail in Plaintiff's Notice Letters, every Annual Report certified and submitted to SMARTS by Defendant's legal representatives since June 29, 2017, contains objectively false information with respect to one or more of the following: (a) the number of discharge locations at Defendant's facility; (b) whether pollutants such as zinc, pesticides and dissolved oxygen (BOD/COD) are present at Defendant's facility; (c) the reason that Defendant failed to collect the required number of stormwater samples each year, or false statements that Defendant did collect the required number of stormwater samples when Defendant in fact did not do so; (d) whether Defendant conducted compliant monthly visual inspections during the reporting year and maintained a written record of same; and (e) that Defendant was eligible for and had in fact obtained a Sampling Frequency Reduction.

The Annual Report most recently certified and submitted to SMARTS by Defendant on June 19, 2025, after the filing of Plaintiff's Complaint, also contains false information.

Plaintiff further responds that the General Permit requires all dischargers to conduct monthly visual observations in accordance with Section XI.A of the General Permit. As articulated in detail in

Ex. 7 - 015

Plaintiff's Notice Letters, Defendant has failed to consistently conduct monthly visual observations that comply with Section XI.A of the General Permit since at least July 1, 2019.

Information provided to Plaintiff by Defendant in Defendant's written discovery responses confirms that after Plaintiff's Complaint was filed, Defendant continued to either fail to conduct monthly visual observations or conducted monthly visual observations in violation of Section XI.A of the General Permit.

Plaintiff further responds that the General Permit requires all dischargers to maintain a compliant Monitoring and Reporting Program that complies with all standard provisions of the General Permit. As articulated in detail in Plaintiff's Notice Letters, since at least July 1, 2019, and continuing to the present, Defendant has maintained a deficient monitoring and reporting program at its facility. Specifically, Defendant has failed to: (a) collect the requisite number of stormwater samples; (b) collect stormwater samples from all discharge locations at its facility; (c) test its stormwater for all pollutants at its facility likely to come into contact with stormwater; (d) collect stormwater samples during qualified storm events; and (e) drop off samples to its laboratory within 48 hours of collection of the stormwater sample. The exact dates that Plaintiff alleges that Defendant failed to maintain a compliant Monitoring and Reporting Program at Defendant's facility are listed in Plaintiff's Notice Letter.

Plaintiff's Amended Notice Letter confirms that Defendant has violated standard conditions of the General Permit with respect to monitoring and reporting after the filing of Plaintiff's Complaint.

In responding to Interrogatory No. 7, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 7.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**<u>INTERROGATORY NO. 8</u>**

Describe in detail any injury any of YOUR members claim to have suffered as a result of SWEETENER'S alleged violations of the PERMIT.

**<u>RESPONSE TO INTERROGATORY NO. 8</u>**

Plaintiff objects to this Interrogatory to the extent that it seeks wholly privileged information about Plaintiff's non-disclosed associational members. *See*, *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147,

Ex. 7 - 016

1160-61 (9th Cir. 2010); *NRDC, Inc. v. Ill. Power Res., LLC*, No. 13-cv-1181, 2015 U.S. Dist. LEXIS 201334, at *10-12 (C.D. Ill. May 12, 2015); *Waste Action Project v. Girard Resources*, No. 2:21-cv-00443-RAJ (W.D. WA, Feb 12, 2024).

Plaintiff is an environmental member group with identifiable members; and Plaintiff has disclosed to Defendant the identity of its associational member with standing. Pursuant to the holding in *Students for Fair Admissions, Inc. v. President of Harvard College*, 600 U.S. 181, 199, 143 S.Ct. 2141, 216 L.Ed.2d 857 (2023), discovery requests related to Plaintiff's undisclosed associational members is no longer permitted.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Without waiving any of its objections to Interrogatory No. 8, Plaintiff responds as follows:

Neither Plaintiff as an entity, nor its managing member, nor its associational members who do not have standing in this matter have any personal knowledge relating to the injuries sustained by Plaintiff's associational members with standing, other than the information included in Plaintiff's Complaint, Notice Letters and Disclosures.

Plaintiff's associational members with standing who have not agreed to be identified and deposed by Defendant's counsel are not required to participate in this matter. Information relating to Plaintiff's associational members who have not agreed to be publicly identified is not subject to being discovered.

Plaintiff has disclosed to Defendant the identity of its associational member with standing who has agreed to be deposed. Defendant has indicated that it will depose this individual to obtain specific information about his or her injuries. Defendant must obtain the information requested in Interrogatory No. 8 from the associational standing member identified by Plaintiff.

In responding to Interrogatory No. 8, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 8.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 9**

Describe all efforts YOU made to inspect or visit the Site.

**RESPONSE TO INTERROGATORY NO. 9**

Plaintiff objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege, specifically in requesting Plaintiff to "describe all efforts".

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial, specifically in requesting Plaintiff to "describe all efforts".

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving any applicable objections, Plaintiff responds that it has not inspected Defendant's facility but intends to serve Defendant with a Rule 34 Demand for Site Inspection.

In responding to Interrogatory No. 9, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 9.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 10**

State all facts supporting YOUR allegation that the FACILITY discharges to a Water of the United States.

**RESPONSE TO INTERROGATORY NO. 10**:

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad as to "all facts".

Courts in the Ninth Circuit have held that discovery which requests the responding party to provide "all facts" that provide the basis for allegations in a complaint is impermissibly broad on its

Ex. 7 - 018

face. *See, Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024).

Plaintiff further objects to this Interrogatory to the extent that it seeks information that requires an expert opinion. Expert disclosures and reports are not yet due in this matter.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks information which has not yet been discovered by Plaintiff, as discovery is ongoing.

Plaintiff further objects to this Interrogatory to the extent that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Plaintiff further objects to this Interrogatory to the extent that the information sought is known by Defendant and otherwise equally available to Defendant.

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving the foregoing objections, Plaintiff responds that it is unable to respond to Interrogatory No. 10 on the basis of lack of information and belief. Specifically, any facts related to whether stormwater discharges from Defendant's facility are hydrologically connected to Waters of the United States would require the expert opinion of a hydrogeologist, geologist or engineer.

Expert disclosures are not yet due in this matter. Further, Plaintiff has provided in its Supplemental Disclosures served on Defendant on May 19, 2025, all information available from the City of Lodi with respect to the hydrological connection of stormwater discharging from Defendant's facility and the Mokelumne River, as well as the identity of the Senior Engineer for the City of Lodi who can confirm this information.

In responding to Interrogatory No. 10, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 10.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 11**

State all facts supporting YOUR allegation that any stormwater discharge from the FACILITY contained pollutants in violation of the PERMIT.

**RESPONSE TO INTERROGATORY NO. 11**:

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad as to "all facts".

Courts in the Ninth Circuit have held that discovery which requests the responding party to provide "all facts" that provide the basis for allegations in a complaint is impermissibly broad on its face. *See, Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024).

Plaintiff further objects to this Interrogatory to the extent that it seeks information that requires an expert opinion. Expert disclosures and reports are not yet due in this matter.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks information which has not yet been discovered by Plaintiff, as discovery is ongoing.

Plaintiff further objects to this Interrogatory to the extent that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Plaintiff further objects to this Interrogatory to the extent that the information sought is known by Defendant and otherwise equally available to Defendant.

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving any applicable objections, Plaintiff responds that Defendant has collected stormwater from its facility which was analyzed by a laboratory and confirmed to contain pollutants in excess of EPA's numeric action limits. Defendant certified and submitted to SMARTS Ad Hoc Monitoring Reports which confirmed the exceedances. This information is contained in Plaintiff's Notice Letters to Defendant.

Plaintiff also believes that numerous other unmonitored pollutants are being discharged from Defendant's facility during every rain event. All facts relative to this issue which are within the current knowledge of Plaintiff (or reasonably available to Plaintiff) are contained within Plaintiff's Notice Letters and Disclosures. Further confirmation of the exact pollutants continuing to be discharged in stormwater from Defendant's facility during rain events would require an expert opinion and independent monitoring and testing by such experts.

In responding to Interrogatory No. 11, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 11.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 12**

State all facts supporting the basis for YOUR allegation that SWEETENER's M&RP is "deficient" as stated in Paragraph 118 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 12**:

Plaintiff objects to this Interrogatory on the basis that it is impermissibly overbroad with respect to "all facts".

Courts in the Ninth Circuit have held that discovery which requests the responding party to provide "all facts" that provide the basis for allegations in a complaint is impermissibly broad on its face. *See, Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024).

Plaintiff further objects to this Interrogatory to the extent that it seeks information that requires an expert opinion. Expert disclosures and reports are not yet due in this matter.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory to the extent that it seeks information which has not yet been discovered by Plaintiff, as discovery is ongoing.

Plaintiff further objects to this Interrogatory to the extent that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory to the extent that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory to the extent that it seeks information not known by or reasonably available to Plaintiff.

Plaintiff further objects to this Interrogatory to the extent that the information sought is known by Defendant and otherwise equally available to Defendant.

Based on the foregoing, this Interrogatory is outside the scope of FRCP 26(b)(1) as currently framed.

Without waiving all applicable objections to Interrogatory No. 12, Plaintiff responds that as articulated in Plaintiff's Notice Letters, Defendant has failed to consistently conduct monthly visual observations that comply with Section XI.A of the General Permit since at least July 1, 2019, continuing to the present.

Plaintiff further responds that as articulated in detail in Plaintiff's Notice Letters, since at least July 1, 2019, and continuing to the present, Defendant has failed to: (a) collect the requisite number of stormwater samples; (b) collect stormwater samples from all discharge locations at its facility; (c) test its stormwater for all pollutants at its facility likely to come into contact with stormwater; (d) collect stormwater samples during qualified storm events; and (e) drop off samples to its laboratory within 48 hours of collection of the stormwater sample. The exact dates that Plaintiff alleges that Defendant failed to maintain a compliant Monitoring and Reporting Program at Defendant's facility are listed in Plaintiff's amended Notice Letter.

In responding to Interrogatory No. 12, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 12.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

**INTERROGATORY NO. 13**

Identify all persons who have taken photographs or videos at the Site on your behalf.

**RESPONSE TO INTERROGATORY NO. 13**

Plaintiff objects to this Interrogatory on the basis that it seeks disclosure of information produced by Plaintiff's experts retained solely for the purpose of litigation, which disclosure is prohibited by FRCP 26(b)(4)(C) and 26(b)(4)(D).

Plaintiff further objects to this Interrogatory on the basis that it seeks information known to or information in the possession, custody and control of third parties (i.e., Defendant's agents, consultants and regulatory agencies), which remains unknown to Plaintiff at this time.

Ex. 7 - 023

Plaintiff further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Plaintiff further objects to this Interrogatory on the basis that it seeks disclosure of attorney work product or the mental impressions of Plaintiff's counsel prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Interrogatory on the basis that it seeks information not within Plaintiff's possession, custody, or control.

Plaintiff further objects to this Interrogatory on the basis that it seeks information not known by or reasonably available to Plaintiff.

Without waiving its objections, Plaintiff responds as follows:

Plaintiff is unable to provide any response to Interrogatory No. 13 because it is not in possession of the identity of the individual(s) who obtained the photographs of Defendant's facility, which were provided to Defendant in Plaintiff's Initial Disclosures. Furthermore, Plaintiff has no ability to ascertain that information.

Plaintiff's former FRCP 26(b)(4)(D) experts obtained the photographs and provided them directly to Plaintiff's counsel without disclosing the identity of the individual(s) who took the photographs.

The names of Plaintiff's former FRCP 26(b)(4)(D) experts who obtained the photographs have been provided to Defendant in Plaintiff's Supplemental Disclosures served on Defendant on May 19, 2025.

In responding to Interrogatory No. 13, Plaintiff did not withhold any information reasonably available to it.

**Thus, Plaintiff is not obligated to provide a further response to Interrogatory No. 13.** See *Wilhelm v. Aung*, No. 2:22-cv-02323 DJC-SCR (E.D. Cal. Aug 19, 2024)

Date: August 27, 2025

By: *__/s/ Adam D. Brumm__________*
Adam D. Brumm
Attorney for Plaintiff

Ex. 7 - 024

# PROOF OF SERVICE

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 27, 2025, I served the following document described as

**PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT'S SPECIAL INTERROGATORIES, SET ONE**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 27, 2025

By: *__/s/ Adam D. Brumm__________*
Adam D. Brumm

Ex. 7 - 025

# Exhibit 8

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT SWEETENER PRODUCT'S INTERROGATORIES, SET TWO**<br><br>Trial Date: None Set<br>Complaint Filed: January 8, 2025 |

PROPOUNDING PARTY: Defendant SWEETENER PRODUCTS, INC.

RESPONDING PARTY: Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC

SET NO.: TWO

Ex. 8 - 001

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("EDEN"), by and through its attorneys of record, hereby submits its response to the Second Set of Interrogatories of Defendant SWEETENER PRODUCTS, INC. ("Defendant") as follows.

**PRELIMINARY STATEMENT**

EDEN's investigation and development of all facts and circumstances relating to this action is ongoing. The following responses and objections are made without prejudice to, and are not a waiver of, EDEN's right to rely on other facts or documents at trial.

By making the accompanying responses and objections to Defendant's Interrogatories, EDEN does not waive, and hereby expressly reserves its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds, including but not limited to competency, relevancy, materiality, and privilege.

Further, EDEN makes the responses and objections herein without in any way implying that it considers the interrogatories, and responses to the interrogatories, to be relevant or material to the subject matter of this action.

EDEN expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

**GENERAL OBJECTIONS**

EDEN objects to Defendant's "Definitions" to the extent that the instructions seek to enlarge, modify or ignore the law regarding such matters. Discovery in Federal lawsuits is subject to the express provisions of the Federal Rules of Civil Procedure and not Defendant's proposed Definitions.

Specifically, EDEN objects to Defendant's definition No. 1 ("YOU" and "YOUR") to the extent that it purports to include EDEN's employees, agents, attorneys and consultants.

EDEN does not have sufficient control over its agents, attorneys and consultants such that those individuals or entities could properly and lawfully be considered synonymous with EDEN; and EDEN has no employees.

Further, EDEN objects to the inclusion of "anyone acting or purporting to act on its behalf" as impermissibly overbroad as to scope and time frame.

**RESPONSES TO DEFENDANT'S INTERROGATORIES**

**INTERROGATORY NO. 14**

Describe YOUR core NON-LITIGATION ACTIVITY business activities from January 1, 2021, to the present.

**RESPONSE TO INTERROGATORY NO. 14**:

EDEN objects to this Interrogatory on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Interrogatory is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing, EDEN will not respond to this Interrogatory and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

**INTERROGATORY NO. 15:**

Describe all NON-LITIGATION ACTIVITY, projects, or EVENTS, undertaken by YOU to further YOUR BUSINESS PURPOSE AND MISSION within the past five years, including:

(a) The nature, date, and location of each EVENT;

(b) The extent to which people participated in each EVENT; and

(c) The method by which people were notified of the EVENT

**RESPONSE TO INTERROGATORY NO. 15**:

EDEN objects to this Interrogatory on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Interrogatory is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing, EDEN will not respond to this Interrogatory and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

**INTERROGATORY NO. 16:**

Describe how YOUR BUSINESS PURPOSE AND MISSION has been funded from January 1, 2021, to the present.

**RESPONSE TO INTERROGATORY NO. 16:**

EDEN objects to this Interrogatory on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Interrogatory is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing, EDEN will not respond to this Interrogatory and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

**INTERROGATORY NO. 17**

Describe what resources have supported YOUR NON-LITIGATION ACTIVITIES from January 1, 2021, to the present.

**RESPONSE TO INTERROGATORY NO. 17:**

EDEN objects to this Interrogatory on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Interrogatory is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing, EDEN will not respond to this Interrogatory and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Date: August 25, 2026

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm
Attorney for Plaintiff

Ex. 8 - 004

**PROOF OF SERVICE**

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 25, 2026, I served the following document described as

**PLAINTIFF'S RESPONSE TO DEFENDANT'S INTERROGATORIES, SET TWO**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 25, 2026

By: *__/s/_Adam D. Brumm*__________
Adam D. Brumm

Ex. 8 - 005

# Exhibit 9

Adam D. Brumm, Esq. SB# 257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET TWO** |

PROPOUNDING PARTY: Defendant SWEETENER PRODUCTS, INC.

RESPONDING PARTY: Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC

SET NO.: ONE

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("EDEN"), by and through its attorneys of record, hereby responds pursuant to the Second Set of Requests for Production of Documents of Defendant SWEETENER PRODUCTS, INC. ("Defendant") as follows.

## PRELIMINARY STATEMENT

EDEN's investigation and development of all facts and circumstances relating to this action is ongoing. The following responses and objections are made without prejudice to, and are not a waiver of, EDEN's right to rely on other facts or documents at trial.

By making the accompanying responses and objections to Defendant's Request for Production of Documents, EDEN does not waive, and hereby expressly reserves its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds, including but not limited to competency, relevancy, materiality, and privilege.

Further, EDEN makes the responses and objections herein without in any way implying that it considers Defendant's document Request, and EDEN's responses to the Requests for Production of Documents, to be relevant or material to the subject matter of this action.

EDEN expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

## GENERAL OBJECTIONS TO ALL REQUESTS

EDEN objects to Defendant's "Definitions" to the extent that the instructions seek to enlarge, modify or ignore the law regarding such matters. Discovery in Federal lawsuits is subject to the express provisions of the Federal Rules of Civil Procedure and not Defendant's proposed Definitions.

Specifically, EDEN objects to Defendant's definition No. 1 ("YOU" and "YOUR") to the extent that it purports to include EDEN's employees, agents, attorneys and consultants.

EDEN does not have sufficient control over its agents, attorneys and consultants such that those individuals or entities could properly and lawfully be considered synonymous with EDEN.

Further, EDEN objects to the inclusion of "anyone acting or purporting to act on its behalf" as impermissibly overbroad as to scope and time frame.

In addition, EDEN does not have employees.

Based on the foregoing, EDEN will not respond to Defendant's Requests for Production of Documents which request information about EDEN's employees, affiliates, attorneys, consultants or individuals associated with EDEN.

Ex. 9 - 002

**REQUEST FOR PRODUCTION NO. 57:**

All laboratory reports for any stormwater sampling that YOU conducted at the FACILITY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

EDEN does not have any documents responsive to this Request, as it has never conducted any stormwater sampling at the FACILITY.

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS that support YOUR allegation that the FACILITY discharges industrial stormwater into Thurman Street as alleged in Paragraph 151 of the COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

EDEN objects to this Request on the ground that Paragraph 151 of the COMPLAINT does not allege that the FACILITY discharges industrial stormwater into Thurman Street, nor does the allegation that Sweetener discharges stormwater into Thurman Street contained anywhere in EDEN's COMPLAINT.

Even if EDEN's COMPLAINT did allege that Sweetener discharges industrial stormwater into Thurman Street, EDEN objects that this subject is wholly within the purview of expert analysis and opinion. Disclosure of expert opinions cannot be compelled prematurely through this Request.

Based on the foregoing, no documents will be produced in response to this Request as drafted.

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS identifying community education programs YOU have conducted between January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

EDEN objects that the term "communication education program" has not been defined and is thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

Ex. 9 - 003

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS identifying environmental remediation programs YOU have conducted between January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

EDEN objects to this Request on the ground that the term "environmental remediation program" has not been defined and is thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**<u>REQUEST FOR PRODUCTION NO. 61:</u>**

All DOCUMENTS identifying legislative analysis YOU have conducted between January 1, 2021, to the present.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 61</u>**:

EDEN objects to this Request on the ground that the term "legislative analysis" has not been defined and is thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs

of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS identifying any upcoming EVENTS for YOUR MEMBERS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Association v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS identifying any testimony YOU have given to legislative bodies between January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63**:

EDEN objects to this Request on the ground that the phrase "testimony to legislative bodies" has not been defined and is thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS identifying partnerships YOU have with government agencies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64**:

EDEN objects to this Request on the ground that the phrase "partnership with government agencies" has not been defined and is thus vague and unintelligible.

EDEN further objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Ex. 9 - 009

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS identifying partnerships YOU have with school districts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS identifying any events YOU planned for YOUR MEMBERS from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and

Ex. 9 - 011

the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 67:**

All non-privileged COMMUNICATIONS between YOU and YOUR MEMBERS concerning the COMPLAINT from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP

26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structures and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any non-privileged documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 68:**

All non-privileged COMMUNICATIONS between YOU and YOUR MEMBERS concerning the FACILITY from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this

case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

EDEN further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

Ex. 9 - 014

EDEN does not have any non-privileged documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 69:**

All newsletters YOU distributed from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Ex. 9 - 015

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 70:**

All annual reports YOU distributed from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any non-privileged documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

**REQUEST FOR PRODUCTION NO. 71:**

All periodic or monthly reports YOU distributed from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71**:

EDEN objects to this Request on the ground that it seeks information outside the scope of FRCP 26(b)(1), relates to matters not relevant to any of Defendant's defenses proportional to the needs of this case, considering the parties' respective access to relevant information, EDEN's limited resources, and the importance of the requested discovery in resolving disputed issues.

Specifically, this Request seeks information about EDEN's organizational structure and its members.

EDEN is a voluntary membership organization with identifiable members who support its mission and whom EDEN represents in good faith. More than one of EDEN's members has been identified in public filings. EDEN has also identified by name at least one member for standing in this matter. Thus, the "indicia of membership" prongs articulated in *Hunt* are inapplicable; further inquiry

into EDEN's organization, policies and procedures and its members is unwarranted; and such information is protected from disclosure as falling squarely outside the permissible scope of FRCP 26(b)(1). *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Waste Action Project v. Girard Resources & Recycling, LLC* ("*WAP*"), 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024).

On May 15, 2026, Judge Kim entered a Protective Order in this matter barring Defendant from seeking discovery about EDEN's organizational structure and its members on the basis that such discovery exceeds the scope of FRCP 26(1)(1), citing *Harvard* and *WAP*.

Inquiry into EDEN's members and EDEN's membership policies is also outside the scope of FRCP 26(b)(1) because EDEN's members do not need to participate in this action. EDEN's claims and the relief requested do not require individualized proof, as EDEN seeks only prospective injunctive relief. *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001)

Information about EDEN's members and membership policies is also protected from disclosure by the First Amendment and the right of EDEN's members to freely associate in anonymity without the fear of their identity being disclosed without their consent. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606 (2021); *Sullivan v. University of Washington*, 60 F.4th 574 (9th Cir. 2023), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

Without waiving any of the foregoing general or specific objections, EDEN responds as follows:

EDEN does not have any documents responsive to this Request in its possession, custody and/or control which are within the permissible scope of FRCP 26(b)(1). No documents will be produced at this time in response to this Request.

Date: June 15, 2026

By: /s/ Adam D. Brumm
Adam D. Brumm
Attorney for Plaintiff

Ex. 9 - 018

**PROOF OF SERVICE**

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On June 15, 2026, I served the following document described as

**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET TWO**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 15, 2026

By: *__/s/_Adam D. Brumm__________*
Adam D. Brumm

Ex. 9 - 019

# Exhibit 10

Adam D. Brumm, Esq. SB# 257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET THREE** |

PROPOUNDING PARTY: Defendant SWEETENER PRODUCTS, INC.

RESPONDING PARTY: Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC

SET NO.: THREE

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("EDEN"), by and through its attorneys of record, hereby responds pursuant to the Third Set of Requests for Production of Documents of Defendant SWEETENER PRODUCTS, INC. ("Defendant") as follows.

Ec. 10 - 001

## PRELIMINARY STATEMENT

EDEN's investigation and development of all facts and circumstances relating to this action is ongoing. The following responses and objections are made without prejudice to, and are not a waiver of, EDEN's right to rely on other facts or documents at trial.

By making the accompanying responses and objections to Defendant's Request for Production of Documents, EDEN does not waive, and hereby expressly reserves its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds, including but not limited to competency, relevancy, materiality, and privilege.

Further, EDEN makes the responses and objections herein without in any way implying that it considers Defendant's document Request, and EDEN's responses to the Requests for Production of Documents, to be relevant or material to the subject matter of this action.

EDEN expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

## GENERAL OBJECTIONS TO ALL REQUESTS

EDEN objects to Defendant's "Definitions" to the extent that the instructions seek to enlarge, modify or ignore the law regarding such matters. Discovery in Federal lawsuits is subject to the express provisions of the Federal Rules of Civil Procedure and not Defendant's proposed Definitions.

Specifically, EDEN objects to Defendant's definition No. 1 ("YOU" and "YOUR") to the extent that it purports to include EDEN's employees, agents, attorneys and consultants.

EDEN does not have sufficient control over its agents, attorneys and consultants such that those individuals or entities could properly and lawfully be considered synonymous with EDEN.

Further, EDEN objects to the inclusion of "anyone acting or purporting to act on its behalf" as impermissibly overbroad as to scope and time frame.

In addition, EDEN does not have employees.

Ec. 10 - 002

**RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 72:**

All DOCUMENTS that show any public meetings, assemblies, town halls, public forums, or similar EVENTS conducted by YOU from January 1, 2021, to the present, in furtherance of YOUR BUSINESS PURPOSE AND MISSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN will not produce any documents responsive to this Request and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

**REQUEST FOR PRODUCTION NO. 73:**

All DOCUMENTS that show any surveys, questionnaires, polling, or similar information-gathering methods utilized by YOU from January 1, 2021, to the present, in determining how to carry out YOUR BUSINESS PURPOSE AND MISSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN will not produce any documents responsive to this Request and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Ec. 10 - 003

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS establishing any NON-LITIGATION ACTIVITY educational programs, workshops, conferences, seminars, public EVENTS, or similar activities organized, sponsored, or hosted by YOU from January 1, 2021, to the present, in furtherance of YOUR BUSINESS PURPOSE AND MISSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN will not produce any documents responsive to this Request and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS, including, policy agendas, annual plans, work plans, mission statements, by-laws, or similar DOCUMENTS, describing how YOU advance YOUR BUSINESS PURPOSE AND MISSION with NON-LITIGATION ACTIVITIES from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN will not produce any documents responsive to this Request and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Ec. 10 - 004

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS, including, policy agendas, annual plans, work plans, mission statements, by-laws, or similar DOCUMENTS, describing YOUR BUSINESS PURPOSE AND MISSION from January 1, 2021, to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76**:

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN will not produce any documents responsive to this Request and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

**REQUEST FOR PRODUCTION NO. 77:**

All DOCUMENTS identifying any NON-LITIGATION ACTIVITY programs, initiatives, campaigns, or projects undertaken by YOU, from January 1, 2021, to the present in furtherance of your BUSINESS PURPOSE AND MISSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77**:

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN will not produce any documents responsive to this Request and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

**REQUEST FOR PRODUCTION NO. 78:**

All newsletters, annual reports, activity reports, policy papers, educational materials, press releases, website content, or similar publications created or disseminated by YOU from January 1, 2021, to the

present, concerning activities undertaken in furtherance of YOUR BUSINESS PURPOSE AND MISSION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78**:

EDEN objects to this Request on the basis that it violates this Court's May 15, 2026, Protective Order.

EDEN further objects that this Request is outside the scope of FRCP 26(b)(1).

EDEN further objects to this Request to the extent that it seeks discovery of information protected by the attorney-client privilege.

Based on the foregoing objections, EDEN will not produce any documents responsive to this Request and places Defendant on notice that EDEN intends to seek Rule 37 sanctions against Defendant and its counsel for willfully violating a discovery order.

Date: August 25, 2026

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm
Attorney for Plaintiff

**PROOF OF SERVICE**

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 25, 2026, I served the following document described as

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET THREE**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August25, 2026

By: *__/s/_Adam D. Brumm_*__________
Adam D. Brumm

Ec. 10 - 007

# Exhibit 11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

________________________________

CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, a California Limited Liability Company,

Plaintiff,

v. Case No.

SWEETENER PRODUCTS, INC., 2:25-cv-00078-WBS-CSK

Defendant.

________________________________

VIDEOTAPED DEPOSITION OF

JASON KEITH ASTON

DATE: Tuesday, July 7, 2026

TIME: 1:00 p.m.

LOCATION: Veritext Legal Solutions - Sacramento
1 Capitol Mall, Suite 240
Sacramento, CA 95814

OFFICIATED BY: Samantha Owens

JOB NO.: 8297571

A P P E A R A N C E S

ON BEHALF OF JASON ASTON:

NATALIE MARCIN, ESQUIRE
EarthLaw Attorney PC
10556 Combie Road, Unit 31
Auburn, CA 95602

ON BEHALF OF PLAINTIFF CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS:

ADAM D. BRUMM, ESQUIRE
Eden Environmental Defenders
1520 East Covell Boulevard, Suite B5-611
Davis, CA 95616
adam@edendefenders.org
(800) 545-7215

ON BEHALF OF DEFENDANT SWEETENER PRODUCTS, INC.:

JENNIFER F. NOVAK, ESQUIRE
Law Office of Jennifer F. Novak
500 Silver Spur Road
Rolling Hills Estates, CA 90275
novak@jfnovaklaw.com
(310) 693-0775

A No, I didn't draft the notice. I just offered my -- I answered questions, and then I signed it.

Q Got it. Okay. Can I have you turn to paragraph 2 on page 1?

A Paragraph 2 on page 1. Okay.

Q All right. Can I have you read the first sentence, please?

A "I am a current voluntary associational member of Plaintiff Central Valley Eden Environmental Defenders. In this matter, I have been active -- an active voluntary member of Eden continuously since July 1, 2024."

Q I'm just going to ask you, what is your understanding -- why did you call yourself a voluntary associational member?

A Like I said, I didn't write this. I signed it.

MR. BRUMM: Wait, hold on.

Objection. Relevance. There is a protective order that prohibits discovery as to organizational structure and membership. I'm asking you not to answer that.

MS. NOVAK: Counsel, you do understand he's here as a standing witness as a member of the organization?

MR. BRUMM: You could rephrase the question and ask him if he's a member of Eden. It's really not that hard.

MS. NOVAK: I'm asking him what voluntary associational member means to your understanding.

THE WITNESS: It just means I'm a member of it like I was a member of the Surfrider Foundation. And I pick up trash wherever I go fishing and stuff like that. I try to keep it cleaner than I left it.

BY MS. NOVAK:

Q So you've thrown a couple of different things in there. So when you said you were a member of the Surfrider Foundation and you're analogizing it to being a member here --

A It's very similar.

Q What does that mean to you?

A It means that I try to go out of my way to leave it cleaner than I found it.

Q And that's part of being the Surfrider Foundation?

A It's part of being in both foundations.

Q Okay. Are you familiar with what the mission and purpose of Central Valley Eden Environmental Defenders is?

A Yeah, it's to clean up the water.

Q And what waters specifically, to your knowledge?
A Waters in -- in and around the Central Valley.
Q And what is your role in helping with that purpose and mission?
A Well, like I said, I pick up trash. I pick up trash. I carry a trash bag with me when I go fishing, and I pick up trash. And that's -- besides this, that's pretty much all I've ever done, you know. I just try to keep it cleaner than I found it.
Q Is that something you do because you're a member of Central Valley Eden?
A No, it's something I do because -- well, it's something I do anyway, but it's also like -- I -- I -- yeah, I don't -- I -- I mean, it's not because I am a member. I -- I would probably do it anyway, but I'm more adept to do it now.
I make sure I have a trash bag when I go fishing as opposed to before, if I had something to put it in, I would, you know, pick it up if I could. But now, I actually make sure I have a trash bag when I go fishing.
Q You're trying to walk the walk, basically?
A Yeah. Why not? You know, I mean, like, let's -- water's for everybody, you know?

Q Got it. So part of what you wrote was the date -- sorry, let me strike that.

Part of what you just read was a date of July 1, 2024. What does that date represent?

A That's when I first found out about the organization and offered to be a part of it.

Q How did you find out about it?

A Through a friend.

Q Did the friend work for Central Valley Eden?

A The friend is a -- I -- I don't --

MR. BRUMM: Objection. We have an -- objection. Relevance to the protective order.

MS. NOVAK: Are you instructing him not to answer if his friend --

MR. BRUMM: I'm going to ask him -- pardon me. I'm going to instruct him not to answer whether the friend was a member of Eden. That is the objection about what -- the nature of the friend being a member. That's what's being protected.

BY MS. NOVAK:

Q I asked if your friend worked for Central Valley Eden.

MR. BRUMM: Again, the objection, it's -- this is -- the structure of the organization is the objection now because that's what the protective order

is covering is structure. So you're -- that line of questioning is about structure.

That's why I'm issuing the objection, and that's why I'm telling him not to answer that question. If you want to rephrase the question and give it a try.

MS. NOVAK: So -- because we're going to have a long series here. Part of him being a standing witness is establishing that he is a member. Throwing the word "member" around is not going to what his relationship with the organization is --

MR. BRUMM: You're talking about other people. You're asking about other people and what their relationship is to Eden. That is what is being protected by this order, organizational structure and membership.

For that reason, I've instructed him not to answer your question, but you're welcome to rephrase that question. Welcome to, you know, withdraw and restate.

MS. NOVAK: All right.

BY MS. NOVAK:

Q You've been instructed not to answer that question, so you'll follow your attorney's advice?

A Yeah.

Q Okay. I'm sorry. You'll follow Mr. Brumm's

advice?

A Yeah.

Q Is he here as your lawyer today?

A No, he's --

MR. BRUMM: Objection. Attorney -- listen, I've stated on the record right when we started who my client is, that that client, Central Valley Eden Environmental Defenders, is the holder of this protective order.

BY MS. NOVAK:

Q And you believe that you can instruct the witness who is not part of Central Valley Eden not to answer?

MS. MARCIN: He is a member of Central Valley.

MR. BRUMM: He is a member.

MS. MARCIN: So in his membership capacity, but I am not instructing him not to answer.

BY MS. NOVAK:

Q What's your choice?

A To answer -- I'm sorry. Can you rephrase the question? I don't really understand what -- this whole legal jargon is kind of over my head.

Q Yeah. Not your department; right?

A No, no. I'm not --

MS. MARCIN: Do we want to restate our appearances real quick?

Adam, who are you here on behalf of?

MR. BRUMM: I represent -- I'm the lead counsel on this case. Central Valley Eden Environmental Defenders is my client. They are the plaintiff. That plaintiff is the holder of a protective order. That protective order limits discovery. It prohibits the taking of discovery about the organizational structure and membership.

I have a question posed to the standing member that is asking about other people who might be members, other people who are -- sit within the structure of Eden. Those are the -- that's the type of material that is covered by this protective order.

So under that -- under the authority of that protective order alone, I am asking -- instructing this standing witness not to answer questions about Eden's structure and membership. But you could just rephrase the question, I'm sure.

MS. MARCIN: I think what I meant was that Adam is here on behalf of Central Valley Eden, and Jason is a member and therefore a form of client. And then, I am here on his personal capacity. I'm not representing anything with Central Valley Eden.

That's --

BY MS. NOVAK:

Q So the question would be if the attorney for Central Valley Eden tells you not to answer a question, are you following that advice?

A Well, yes.

Q Okay. So how did you become a member on July 1, 2024?

A A friend.

Q Did you take any sort of affirmative steps to fill out forms or to join?

MR. BRUMM: Again, this -- once again, I'm going to object based on relevance. We have a protective order that protects the structure and the membership of Eden. On that basis, I am instructing the witness not to answer that question. But you may rephrase, of course.

BY MS. NOVAK:

Q Do you have any ownership in Central Valley Eden Environmental Defenders?

A No, I don't own a whole lot. I own the suit though.

Q It's a nice suit.

A Thank you.

Q It goes well with the tie. Do you derive any

financial benefit from Central Valley Eden Environmental Defenders?

A I do not, not.

Q Has --

A I just pick up trash.

Q Has Central Valley Eden ever provided you any financial remuneration?

A No. Central Valley Eden hasn't given me anything.

Q Did you have to pay any money to join Central Valley Eden?

A There are no membership dues.

Q And how do you know that?

A I've never paid any.

MR. BRUMM: Oh, hold on.

Objection. I'm sorry. Objection. Relevance. We have a protective order that protects the structure of the organization and the membership of the organization. On that basis, I'm instructing this witness not to answer that question, but you may rephrase.

MS. NOVAK: Are you moving to strike his answer from the record?

MR. BRUMM: You have to read it back.

THE OFFICER: Just a moment.

(The officer repeated the record as requested.)

MR. BRUMM: Let me just -- I'm not going to ask to strike that.

BY MS. NOVAK:

Q Have you ever donated to Central Valley Eden Environmental Defenders?

A Only my time.

Q How do you donate your time to Central Valley Eaton Environmental Defenders?

A Well, I pick up trash.

Q And obviously, you're here today.

A I'm here today, but you're paying me for my mileage.

Q And $40.

A Oh, sweet.

Q Have you served as a standing witness on behalf of Central Valley Eden Environmental Defenders in any other cases, to your knowledge?

A No.

Q What about for any other environmental organization? Do you believe you have served as a standing witness for anyone else?

A I've never served as a standing witness before.

Q Other than donating your time, picking up trash, do you have any other interactions with Central Valley Eden Environmental Defenders in a non-legal capacity? Does that make sense?

Other than part of this lawsuit and communications about this lawsuit, do you have any other communications with Central Valley Eden?

MS. MARCIN: Objection. Relevance --

MR. BRUMM: Objection. Relevance of a protective order that is protecting the organizational structure and the membership of the group. On that basis, I'm going to instruct the witness not to answer, but you may of course rephrase.

THE WITNESS: Because I just remembered that I offered to be the standing witness in a previous case that was settled. I want to offer that, but I -- 'cause I don't want to perjure myself.

BY MS. NOVAK:

Q Obviously. And at any point in time --

A Yeah. The previous question, so that's -- that's what I wanted to answer, but I never had to go through with the deposition or anything like that.

MR. BRUMM: I think the -- the objection is actually that the question is vague, is that he doesn't understand what the -- he doesn't necessarily

know.

In other words, he didn't have to -- what he's saying, he didn't have to come sit for a deposition in the prior case. So he wasn't -- he doesn't know -- he hasn't, you know, given his testimony.

MS. NOVAK: I understand.

MR. BRUMM: Okay. Thank you.

MS. NOVAK: Got it.

MS. MARCIN: Can I just clarify when I say "objection, relevance," I'm not referring to the protective order.

BY MS. NOVAK:

Q Okay. My question was simply communications with Central Valley Eden. Mr. Brumm has objected saying that talks about the structure in the organization of the entity. I'm asking you, other than as part of this lawsuit, do you ever hear from them?

MR. BRUMM: Again --

MS. MARCIN: Objection. Relevance.

MR. BRUMM: Objection. It is a relevance objection of the protective order, prohibits the taking of this discovery that is about the organizational structure and the membership.

Because you're asking in the opposite of what's outside it, because you're asking like -- you're

asking about what goes on by asking what's outside, but that's going to be protected. So you're welcome to just rephrase it.

MS. NOVAK: But you've instructed him not to answer.

MR. BRUMM: That question, you can rephrase --

BY MS. NOVAK:

Q And are you following that advice?

A Yeah, I'm going to listen to them 'cause they're here on my behalf, and I'm here at -- representing Eden. So -- yeah.

Q Do you have any say in whether Eden brings lawsuits?

MR. BRUMM: Objection. Relevance. This is covered by the protective order, the organizational structure and membership.

MS. NOVAK: This goes to the witness's relationship and whether or not he's an appropriate standing witness.

MR. BRUMM: In other words, structure. So for that reason, I'm instructing this witness not to answer that question because the question is about structure. You may rephrase.

MS. NOVAK: I'm not asking about the

organization. I'm asking whether or not the witness has any ability to direct the litigation here.

MR. BRUMM: But that is -- you're asking about how the organization makes decisions. That is protected by this order. I'm instructing the witness not to answer that question on the basis of the protective order covering membership, organizational structure, and of course, the members. Because you're asking about how this -- how they work, how they operate. So please, rephrase --

MS. NOVAK: No, I'm asking whether this is the right witness for you. So --

MR. BRUMM: Structure. That is the structure.

MS. NOVAK: No.

MR. BRUMM: That's how the organization decides.

So I have instructed you not to answer that question.

If you don't want to rephrase the question, I don't -- I can't help you. Given you plenty of opportunities to rephrase.

MS. NOVAK: You're disagreeing with my ability to ask him certain questions. That's not a rephrase issue.

MR. BRUMM: I have -- well I'm trying -- I have a protective order. It is already written. So if you would like to --

MS. NOVAK: Is the protective order for this witness or is the protective order for your 30(b)(6)?

MR. BRUMM: The protective order is for the discovery in this case.

MS. NOVAK: Okay. We can talk about the order at another time.

MR. BRUMM: The protective order is for the discovery in this case. Okay, thank you.

MS. NOVAK: Well, we'll take a look at that order later.

MR. BRUMM: Your witness.

BY MS. NOVAK:

Q So, Mr. Aston, you've talked about how you volunteer your time for Central Valley Eden by being here today; correct?

A Yes, ma'am.

Q And you try to be a good citizen picking up trash, keeping waterways clean, things of that nature; right?

A Yes.

Q Other than that, how -- what, if anything, do

you understand yourself to be doing in pursuit of Central Valley Eden's mission and purpose?

A My understanding is that I -- during my personal recreational time, when I'm out on the waters, if I -- which I am quite a bit. I kayak, I fish, I swim, I go adventure, I hike, and it's usually all around water. If I see something out of place, I like to clean it up. And because I'm a member of Eden, I guess it's on behalf of Eden, I guess, it makes it. But I'm going to do that anyway. I think the -- yeah.

Q Have you ever attended any events that you understood to be organized by Central Valley Eden?

MS. MARCIN: Objection. Relevance.

MR. BRUMM: Objection. Also relevance. The protective order prohibits the taking of discovery with respect to organizational structure and membership. The events go to organizational structure, sponsorship of events. That's structure. That's membership. That's operational.

BY MS. NOVAK:

Q Have you ever attended an event that you understood -- let me strike that. Other than today's deposition, have you ever attended an event that you believed to be in furtherance of Central Valley Eden's mission and purpose?

A I have been out --

MR. BRUMM: Wait, hold on.

Objection. I need to object first.

THE WITNESS: Yeah, okay.

MR. BRUMM: I need to object to the relevance of that question because it's about events. Okay. The taking of discovery about organizational structure and membership encompasses these questions about events. So on that basis, I'm instructing the witness not to answer the question about any kind of Eden sponsored events.

BY MS. NOVAK:

Q And you'll follow that advice and not answer?

A Yeah.

MR. BRUMM: But you may rephrase. Thank you.

BY MS. NOVAK:

Q How did you understand -- come by an understanding of Central Valley Eden's mission and purpose?

A I was told.

Q And you were told in July 2024.

A July of 2024, yeah. Give or take. It -- it was either late June or early July but right about that time.

Q Was it -- were you told as part of a potential legal action?

A No, not at all.

Q So who told you?

MR. BRUMM: Objection. Relevance. We have a protective order protecting organizational structure and membership. So the who -- because you're talking about in the context of Eden. So you're asking what other Eden member is talking with him. That part is going to be protected through structure and membership. So --

MS. NOVAK: I didn't ask him which other member told him. I told -- asked him how he found out about Central Valley Eden.

MR. BRUMM: Right. So we're -- but surely that's what you're implying. Someone from Eden is talking to him. That's the question --

MS. NOVAK: I didn't say somebody from Eden. He hasn't said it was somebody from Eden. So you're putting words in his mouth.

MR. BRUMM: No --

MS. NOVAK: You're trying to testify for him. Mr. Brumm, why don't we limit you just to appropriate objections rather than have you go on through with speaking objections.

MR. BRUMM: Read back the question, please.

THE OFFICER: In just a moment.

(The officer repeated the record as requested.)

THE WITNESS: A friend.

BY MS. NOVAK:

Q What friend?

MR. BRUMM: Objection. Relevance. Covered by the protective order. He's a member of Eden. This is a question about the structure and the membership of Eden. On that basis, I am instructing this witness not to answer the question.

BY MS. NOVAK:

Q And you will follow that advice and not answer?

A Yeah.

Q Were there any other ways that you had learned about Central Valley Eden and what it stood for other than talking to this friend?

A No, this friend turned me onto it. Yeah. Yeah.

Q Did you volunteer in any way between July 1, 2024, through the end of that year?

A Well, I -- did I volunteer with what?

Q With Central Valley Eden Environmental Defenders?
A Well, every time I go out, I volunteer my -- I mean, because I'm -- as is, I'm picking up trash, not only for my own benefit, but on behalf of the organization. And I pick up a lot of trash. Yeah.
Q Can I have you turn to paragraph 9 of this exhibit?
A Paragraph 9.
Q It's on the second page.
A Okay.
Q Can you read that out loud, please?
A Paragraph 9. "I did not feel comfortable providing my cell phone number or residential address information to Eden to be forwarded to Defendant's attorney at the law office of Jennifer Novak because several individuals from Ms. Novak's law firm had repeatedly accessed my LinkedIn account, which made me feel uneasy."
Q So other than -- well, first of all, is this a true statement? You believed we had accessed your LinkedIn account?
A I mean --
MS. MARCIN: Objection. Vague and ambiguous. Can you describe -- define access.

Q So we've -- is this one of your -- are one of these your truck in the first --

A The white truck, yeah.

Q The white truck to the right of the kayak picture?

A Yes, ma'am.

Q Okay. You made a comment earlier. I don't know if I heard you correctly. Did you say you had a truck blow up?

A My engine blew up in that white truck.

Q Okay. And when was that?

A Like, about a month and a half ago.

Q Do you recall why you were talking about your engine blowing up?

A No, but I bet she could tell us.

Q Okay. Are you -- do you have a vehicle right now that you can take out fishing and kayaking in the lake?

A Currently? No. I have a truck that I can use for work and running errands, but I don't -- I'm not going to take it on a journey. That's like a day thing, you know.

Q Who took this picture?

A A friend of mine.

Q Which friend?

A Well, I think it's a -- it's a friend of -- from -- from Eden.

Q Okay. Is it a member of the Eden legal team?

MS. MARCIN: Objection. Relevance.

MR. BRUMM: Objection. Relevance. We have a protective order that is covering organizational structure and membership. You're asking who a third person is, whether that person is a member of Eden. That is what the protective order is.

MS. MARCIN: My relevance is not related.

MR. BRUMM: I'm instructing this witness not to answer that question.

MS. NOVAK: So I'm trying to obtain foundation for this picture because whoever took the picture may have to testify about the picture and taking it. So if it is a member of the Eden legal team, then I don't need to know who that person is. I just need to know that that's the case.

BY MS. NOVAK:

Q It's not a work friend. It's not a -- you specifically said Eden; correct?

A Yeah.

MR. BRUMM: That's why I am entering the objection that this protective order says that that question is not relevant. The witness is instructed not

to answer that question, but you may rephrase.

BY MS. NOVAK:

Q So the second page of this exhibit --

A Yeah.

Q Does the same hold true that the friend -- did a friend take this photo of you?

A A friend did take a -- yeah, I didn't take that picture of myself.

Q And is that friend affiliated with Central Valley Eden?

MR. BRUMM: Objection. Relevance. The protective order covers organizational structure and membership. For that reason, I am ask -- or I am instructing this witness not to answer that question.

BY MS. NOVAK:

Q And are you going to follow the advice and not answer the question?

A Yeah, I'm just going to go with -- based on what he says. I don't -- I don't know all the mumbo jumbo.

Q Yeah. Can you turn to the third page you were just looking at?

A Yes, sure.

Q You know where I'm going with this.

A Sure.

Q And did you have a fishing license before this one as well?
A I did.
Q Do you have one every year?
A I get one -- I might have -- so I found another one going back to 2021. I might have missed a year in there somewhere. But you -- typically, yes.
Q Is this fishing license good throughout the state?
A This is good throughout the state. And then, depending on certain types of fish, it requires additional licensing.
Q Are there any additional licenses needed for the fish in the Mokelumne?
A No, no.
Q So this general statewide permit lets you fish in the Mokelumne as well as other places?
A Yes, yes.
Q Okay. I know that your attorney would like to ask you some questions too, but I do have to ask you just for the record, just to be certain. Outside of this lawsuit, had you heard of Pamela Lewis before joining Central Valley Eden?
MS. MARCIN: Objection. Relevance.
//

BY MS. NOVAK:
Q Did you know her before you became a member of Central Valley Eden?
A I did.
Q And do you have a romantic relationship with her?
A No.
MS. MARCIN: Objection. Relevance.
MR. BRUMM: Objection relevance.
THE WITNESS: No.
BY MS. NOVAK:
Q Is there --
A I'll quickly answer that one -- no.
Q Thank you. Would you consider yourself friends?
A Yes.
MS. MARCIN: Objection. Relevance.
MR. BRUMM: This is -- objection. Harassment also. You have no reason for this at all --
MS. NOVAK: So thank you for that.
BY MS. NOVAK:
Q And certainly, Ms. Lewis has not offered to pay any of your expenses as a result of this lawsuit?
A No, she's --
MS. MARCIN: Objection. Relevant --

CERTIFICATE OF DEPOSITION OFFICER

I, SAMANTHA OWENS, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

SAMANTHA OWENS
Notary Public in and for the
State of California

CERTIFICATE OF TRANSCRIBER

I, MEGAN MAZZA, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

MEGAN MAZZA

# Exhibit 12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company | |
| Plaintiff, | Case No.: 2:25-cv-00078-WBS-CSK |
| Vs. | |
| SWEETENER PRODUCTS, INC. | |
| Defendant. | |

Zoom deposition of PAM LEWIS, designated rule 30(b)(6) deponent for Central Valley Eden Environmental Defenders, Volume I, taken on behalf of Yolo County, beginning at 10:15 a.m., and ending at 12:23 p.m. on Friday, September 11, 2026, before LORI M. BARKLEY, Certified Shorthand Reporter No. 6426.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

_________________________
CENTRAL VALLEY EDEN )
ENVIRONMENTAL DEFENDERS, )
LLC, a California )
limited liability )
company, )
) Case No.:
Plaintiff, ) 2:25-cv-00078-WBS-
) CSK
Vs. )
)
SWEETENER PRODUCTS, INC. )
)
Defendant. )
________________________ )

ZOOM DEPOSITION OF
PAM LEWIS
Designated Rule 30(b)(6) Deponent
For Central Valley Eden Environmental Defenders
Yolo County
Friday, September 11, 2026
Volume I

Reported by:
LORI M. BARKLEY
CSR No. 6426
Job No. CA 8416675
PAGES 1 - 92

APPEARANCES:

CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS
BY: Adam D. Brumm
Attorney at Law
1520 East Covell Boulevard, Suite B5-611
Davis, CA 95616
800-545-7215
Adam@edendefenders.org

LAW OFFICES OF JENNIFER F. NOVAK
BY: Jennifer F. Novak
-- and --
Demetria Mantalis
Attorneys at Law
500 Silver Spur Road, Suite 206
Rolling Hills Estates, CA 90275
(310) 693-0775
Demetria@jfnovaklaw.com

on.
BY MS. NOVAK:
Q. Ms. Lewis, have you ever used any other name professionally?
MR. BRUMM: Objection, that's privileged. She's not going to be answering that.
BY MS. NOVAK:
Q. What is your current occupation?
A. I am a paralegal.
Q. And where do you work? Who is your current employer?
MR. BRUMM: Objection, privileged. It's also violates topic 8, operation and membership. So there's two objections. There's privilege and there's violation of the Protective Order that you're doing right now.
MS. NOVAK: I didn't ask about operations for Central Valley Eden Environmental Defenders LLC. I asked who her current employer is.
MR. BRUMM: I'm going to object in the same way. It is the same objection. Operations, membership, employment, etc. It is the same objection.
It violates the Protective Order. For that reason and also for the reason of privilege but

primarily for the reason of the Protective Order, the witness is not going to answer that.

MS. NOVAK: That's an instruction to the witness?

MR. BRUMM: Correct.

THE WITNESS: Okay. I am taking my counsel's advice. And for the record, which you, Ms. Novak, are fully aware of, I work under the direction of Adam Brumm. He is my supervising attorney.

And Mr. Brumm is contracted and retained by the plaintiff as it's counsel in this matter. And that is the only thing that I will say about that.

BY MS. NOVAK:

Q. So the question was about your employer. To the extent your statement does not answer the question, I believe Mr. Brumm has asked you to not answer; is that correct?

MR. BRUMM: Yeah. My objection is that's a violation of the Protective Order. So if she wanted to tell you something. But it still violates what you're doing.

MS. NOVAK: That's fine. We're going to end up back in front of the judge one way or the another as to whether or not questions about a witness' background and foundation may be asked even in this

STATE OF CALIFORNIA ) ss.
COUNTY OF LOS ANGELES )

I, Lori M. Barkley, CSR No. 6426, do hereby certify:

That the foregoing deposition proceedings were taken before me at the time and place therein set forth and were recorded stenographically by me, and were thereafter transcribed under my direction and supervision, and that the foregoing pages contain a full, true and accurate record of all proceedings and testimony to the best of my skill and ability.

I further certify that I am neither counsel for any party to said action, nor am I related to any party to said action, nor am I in any way interested in the outcome thereof.

IN WITNESS WHEREOF, I have subscribed my name this 14th day of September 2026.

LORI M. BARKLEY, CSR No. 6426

# Exhibit 13

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S SECOND AMENDED RESPONSE AND OBJECTION TO DEFENDANT'S NOTICE OF DEPOSITION TO CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS' PERSON MOST KNOWLEDGABLE PURSUANT TO FED. R. CIV. P. 30(b)(6)**<br><br>Date: None set |

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("Plaintiff"), by and through its attorneys of record, hereby responds to the Notice of Deposition of Defendant SWEETENER PRODUCTS, INC. ("Defendant") of Plaintiff's Person Most Knowledgeable pursuant to FRCP 30(b)(6), served on Plaintiff's counsel by Defendant's counsel on June 26, 2025 ("Deposition Notice").

This Response and Objection amends Plaintiff's prior Responses and Objections served on Defendant's counsel by Plaintiff's counsel on July 3, 2025, and July 29, 2025.

Ex. 13 - 001

## PRELIMINARY STATEMENT

Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. The following responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

By making the accompanying responses and objections to Defendant's Notice of Deposition of Plaintiff's Person Most Knowledgeable, Plaintiff does not waive, and hereby expressly reserves its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds, including but not limited to competency, relevancy, materiality, and privilege.

Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

## GENERAL RESPONSE AND OBJECTIONS TO ALL PMK TOPIC REQUESTS

**General Objection 1 (Deposition Notice Topic Nos. 4 and 8)**

Plaintiff objects to Defendant's Deposition Notice Topical Request Nos. 4 and 8 on the basis that these requests improperly seek to elicit information regarding Plaintiff's organization and its members to satisfy the "indicia of membership" analysis articulated in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

The Supreme Court recently clarified in *Students for Fair Admissions, Inc. v. President of Harvard College*, 600 U.S. 181, 199, 143 S.Ct. 2141, 216 L.Ed.2d 857 (2023) that *Hunt's* "indicia of membership" analysis was utilized in that matter because the organization at issue (Washington State Apple Advertising Commission) was a government agency, not a membership organization.

The Commission did not even claim to be a membership organization and in fact conceded it was not. However, because the Commission was established to represent apple growers and dealers who elected the members of the Commission, served on the Commission and financed the activities of the Commission (the *Hunt* "indicia of membership" prongs), the *Hunt* court held that the growers and dealers were *effectively* members of the Commission.

The Supreme Court held in *Harvard* that the "indicia of membership" analysis has no applicability in cases where an organization has identifiable members and represents them in good faith;

after which further scrutiny into how the organization operates is not permitted, **and the plaintiff's obligations under Article III are fully satisfied.**

Recently, courts in the Ninth Circuit have extended the Supreme Court's ruling in *Harvard* to limit discovery on facts related to a CWA Plaintiff's organization and its members. (See *Waste Action Project v. Girard Resources*, Dist. Court, WD Washington {Order on Defendant's Motion to Compel, Feb 12, 2024}, Case No. 2:21-cv-00443-RAJ).

The *Waste Action Project* Court denied the defendant's Motion to Compel responses from plaintiff to interrogatories and requests for production of documents related to plaintiff's representational standing as overly broad and not relevant to the standing inquiry in light of *Harvard.*

Plaintiff has submitted documents with the California Secretary of State confirming that it is an environmental citizen's group. At least one member (the managing member) is listed by name on the Secretary of State documents. (See **Exhibit A**).

Furthermore, Plaintiff has filed affidavits in other citizen's suits in the Eastern District of California which identify its standing members by name and provide further information supporting Plaintiff's claim that it has members. (See **Exhibit B**)

Plaintiff has also specifically identified in its Third Supplemental Disclosures a current member who meets the requirements for associational standing, along with the personal contact information for this member. (See **Exhibit C, redacted**).

Pursuant to recent Ninth Circuit case law, it is now impermissible for Defendant to continue to seek discovery of information about Plaintiff's organization or its other members. [See *Coalition On Homelessness v. City and County of San Francisco*, Dist. Court, ND California (June 12, 2025), Case No. 22-cv-05502-DMR; *The Humane Society of the United States v. Perdue*, Dist. Court, ND California (Feb 22, 2024) Case No. 20-cv-01395-LB; *Foundation Against Intolerance and Racism, Inc. v. Walker*, Dist. Court, WD Washington (June 24, 2025), Case No. 24-cv-01770-JHC; *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025); *California Restaurant Association v. City of Berkeley*, Dist. Court, ND California (July 6, 2021), Case No. Case No. 4:19-cv-07668-YGR; *Oregon Natural Desert Ass'n v. US Department of the Air Force*, Dist. Court, D. Oregon (Aug 7, 2024), Case No. 2:24-cv-00145-HL.]

Furthermore, Defendant's counsel's meet and confer letter dated July 10, 2025 (attached hereto as **Exhibit D**) is in direct contravention of the holding in *Harvard* and confirms Defendant's counsel's

impermissible motives. The highlighted section on page 5 clearly indicates that Defendant is seeking to depose a representative of Plaintiff to determine whether Plaintiff's members "*possess sufficient indicia of membership in the organization.*"

Such inquiries are no longer permitted in situations, such as here, where the Plaintiff asserting representational standing is clearly an environmental membership group with identifiable members.

Defendant's counsel's July 10, 2025, letter also indicates that Defendant is entitled to discovery on multiple related issues. Plaintiff responds and objects that Defendant is not legally entitled to depose a representative of Plaintiff under Rule 30(b)(6) on any of these topics, for the reasons set forth below.

| **Topic** | **Plaintiff's Response** |
|---|---|
| Whether Eden has members | See Exhibits A, B & C which affirmatively confirm that Plaintiff has members and which identify the member with standing. (Thus, further inquiry is prohibited by *Harvard*). |
| Whether Eden expresses the collective view and protects the collective interests of its members | This is an element of *Hunt*'s "indicia of membership" and as such is not a permitted topic, pursuant to the ruling in *Harvard.* |
| Whether Eden's members would otherwise have standing to sue in their own right | This inquiry is settled by examining the articulated injuries in fact of Eden's standing member.<br><br>Furthermore, this inquiry cannot be resolved through a Rule 30(b)(6) deposition, as only individual associational standing members themselves can testify to the injuries that are personal to them.<br><br>Testimony by a corporate representative who is not a standing member of Plaintiff would elicit only per se hearsay that would never be admissible, and is thus outside the scope of FRCP 30(b)(6) |
| Whether the interests at stake are germane to Eden's purpose | This inquiry is not permissible after *Harvard*, as the record clearly shows that Eden's purpose is to legally pursue dischargers in the Central Valley who fail to follow standard conditions of the General Permit.<br><br>Eden's prior lawsuits which have resolved successfully confirm its purpose, as does its |

Ex. 13 - 004

| | |
|---|---|
| | website, the complaint in this matter and the documents on file with the Secretary of State. |
| Whether the claim or relief requested by Eden requires individual members to participate in the lawsuit | An environmental citizen's suit for injunctive relief by its nature does not require the participation of any individual members. (See cases cited above). |
| Whether Eden has standing for each form of relief sought. | The only form of relief sought for which any individual member could have standing is injunctive relief. Civil penalties are the purview of the Federal government. Thus, this inquiry is outside the scope of FRCP 26(b)(1). (See Exhibit C and cases cited above) |
| Whether Eden suffers from "continuing, present, adverse effects". | While not properly articulated, Plaintiff believes that Defendant's counsel intends to seek information regarding whether the injuries-in-fact alleged to be suffered by the individual members are actual or imminent, and continuing.<br><br>Again, this subject is not appropriate for a Rule 30(b)(6) deposition. |

Plaintiff further objects to Topic 8 of Defendant's Deposition Notice to the extent that it seeks to elicit information about Plaintiff's members, which information is protected from disclosure by privacy laws. *Perry v. Schwarzenegger* (9th Cir. 2009) 591 F.3d 1126-1140; *NAACP v. Alabama*, 357 U.S. 449 (1958); *Britt v. Sup.Ct. (San Diego Unified Port Dist.)* (1978) 20 Cal.3d 844, 852, 143 Cal.Rptr. 695, 699; *Pacific-Union Club v. Sup.Ct. (State Franchise Tax Board)* (1991) 2323 Cal.App.3d 60, 71, 283 Cal.Rptr. 287, 292.

**General Objection 2 (Deposition Topics 3, 5, 6, 7 and 9)**

Plaintiff objects to Defendant's Deposition Notice on the basis that Topic Nos. 3, 5, 6, 7 and 9 call for an expert opinion; and no individual associated with Plaintiff has been designated as an expert in this matter. FRE 701; FRCP 26(a)(2); *State v. Brown,* 836 SW2d 530, 549 (1992)

Ex. 13 - 005

**FURTHER GENERAL OBJECTIONS to All Topics**

Even if any of the requested topics were within the scope of FRCP 26(b)(1), Plaintiff is not a corporation and does not have corporate officers, directors, employees or any official representative that could be designated to be deposed on any of the matters listed in Defendant's Deposition Notice.

Plaintiff was formed as a limited liability company with one managing member, a volunteer who is designated on a rotating basis. Plaintiff fulfills its mission of pursuing CWA and General Permit violators primarily through its legal team and its associational members who agree to serve as standing members.

Plaintiff's current managing member, Eric Lucas, has delegated full responsibility to Plaintiff's legal team to obtain the necessary facts and expert opinions to pursue Defendant in this matter. He has not participated in this action to date and does not possess any personal knowledge about the violations alleged by Plaintiff in the Notice Letter and Complaint, nor about the injuries sustained by Plaintiff's associational standing members.

Plaintiff further objects to Defendant's Deposition Notice in its entirety on the basis that the topical requests included in the Notice are either improper contention topics, require a legal conclusion or relate to the mental impressions of members of Plaintiff's legal team. Such matters are excluded from Rule 30(b)(6) depositions as a matter of law. (*See Snapp v. United Transportation Union*, 889 F.3d 1088, 1104 (9th Cir. 2018); *Zeleny v. Newsom*, 2020 WL 3057467, *2 (N.D. Cal. June 9, 2020); see also *Key v. US Greenfiber,* LLC, Case No. 4:21-cv-00233-DCN (D. Idaho 2023).

Plaintiff further objects to Defendant's Deposition Notice in its entirety on the basis that the topical requests relate to information protected by the attorney-client privilege. *United States v. Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009).

Plaintiff further objects to Defendant's Deposition Notice in its entirety on the basis that that the topical requests relate to information protected by the attorney work product privilege. *United States v. Nobles,* 422 U.S. 225, 238 (1975).

Based on the foregoing, all persons who may possess the requisite personal knowledge of the specific topics requested by Defendant are either current or potential experts, non-parties to this action who are not currently within Plaintiff's control, legal representatives of Plaintiff, or associational

Ex. 13 - 006

members of Plaintiff who are not required to participate in this action and are protected from disclosure by privacy laws.

The members of Plaintiff legal team are protected from being deposed under the attorney-client and attorney-work product doctrines and under the *Shelton* doctrine, which is generally followed by the Ninth Circuit and the Eastern District of California. [See *Shelton v. Am. Motors Corp*., 805 F.2d 1323, 1327 (8th Cir. 1986); *Heitkoetter v. Domm*, No. 1:22-cv-0368 KES-BAM (E.D.Cal Nov 13, 2024); *Wagner v. Shasta County*, No. 2:20-cv-0403-JAM-DMC (E.D.Cal. Aug 22, 2022].

Further, Defendant has not made a showing that no other means exist to obtain the information than to depose a member of Plaintiff's legal team; (2) the information sought is both relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. (*Stevens v. Corelogic, Inc*., No. 14-cv-1158-BAS-JLB, 2015 WL 8492501, at *1 (S.D. Cal. Dec. 10, 2015) (citing *Shelton*, 805 F.2d at 1327))

In addition, any information Defendant purports to seek via the deposition of members of Plaintiff's legal team or its non-participating associational members clearly exceeds the scope of Rule 26(b)(1).

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 1**

Any documentation, photographic, or videographic evidence in YOUR possession relating to conditions at the FACILITY alleged in the COMPLAINT.

**RESPONSE TO PMK TOPIC NO. 1**

Plaintiff objects to this Request on the basis that it is vague and unintelligible and does not meet the specificity requirements for FRCP 30(b)(6) depositions. Specifically, Defendant has failed to articulate what information it is seeking with respect to "documentation, photographic, or videographic evidence in Plaintiff's possession relating to conditions at Defendant's facility".

Plaintiff further objects to this Request on the basis that it is overbroad as to "any documentation".

To the extent that Defendant is seeking production of all documents, photographs and videos in Plaintiff's possession relating to conditions at Defendant's facility, Plaintiff has already provided same to Defendant via Plaintiff's Initial and Supplementary Disclosures, rendering this Request duplicative.

To the extent that Defendant is seeking Plaintiff's opinions, mental impressions and legal conclusions with regard to "documentation, photographic, or videographic evidence in Plaintiff's possession relating to conditions at the Defendant's facility", Plaintiff responds that the documents speak for themselves. Further, Plaintiff is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions. (See General Objections)

Plaintiff further objects to this Request to the extent that it seeks information outside the scope of FRCP 26(b)(1).

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request to the extent that it seeks information protected by the First Amendment and the California Consumer Privacy Act of 2018.

Plaintiff further objects to this Request to the extent that it seeks an expert opinion.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request.

Prior to filing this lawsuit, Plaintiff's legal team received photographs from one of the members of Plaintiff's former technical experts. These photographs depicted Defendant's facility. All photographs in Plaintiff's possession have been disclosed to Defendant.

Plaintiff has no information about the manner in which environmental professional(s) who previously contracted to provide expert opinions in preparation for litigation obtained the photographs.

Plaintiff believes that some of the photographs in its possession were taken by the Water Board and others were obtained from Google satellite images. Some photographs appear to have been taken by an individual. Plaintiff does not know the name of that individual and has no ability to discover the information.

Plaintiff has disclosed to Defendant the identities of the former technical professionals who obtained the photographs, but has no information as to their whereabouts. Furthermore, none of these individuals were ever employees or contractors of Plaintiff. Plaintiff has no other information about any of the photographs or images it has disclosed to Defendant other than what is stated herein.

Plaintiff does not intend to use the photographs obtained by its former technical experts. Instead, it intends to serve Defendant with an FRCP 34 site inspection demand and will obtain any photographs it requires at that time.

Plaintiff does intend to use all photographs obtained by the Water Board or other public agency, which can be authenticated by either party by a representative of the agencies; as well as the Google Earth satellite images. Plaintiff is currently in the process of reviewing the images and identifying which are Google Earth satellite images and which are Water Board photographs.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 1 at this time.

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 2**

Any sampling, monitoring, inspection, or other investigative activities by YOU relating to the allegations in the COMPLAINT.

Ex. 13 - 009

**RESPONSE TO PMK TOPIC NO. 2**

Plaintiff objects to this Request on the grounds that it is overbroad as to “any sampling, monitoring, inspection, or other investigative activities by Defendant relating to the allegations in the Complaint.”

To the extent that Defendant is seeking production of documents representing all sampling, monitoring, inspection, or other investigative activities conducted by Plaintiff related to the allegations in the complaint, Plaintiff has already provided same to Defendant via Plaintiff’s Initial and Supplementary Disclosures; and Plaintiff has also responded to requests in its responses to Defendant’s written discovery, rendering this Request duplicative.

To the extent that Defendant is seeking the identity of the individual(s) who obtained the evidence, in its Supplemental Disclosures, Plaintiff has already provided this information to Defendant.

The remaining individuals are members of Plaintiff’s legal team or current or potential experts and are protected from disclosure.

To the extent that Defendant is seeking Plaintiff’s opinions, mental impressions and legal conclusions with regard to “all sampling, monitoring, inspection, or other investigative activities conducted by Plaintiff related to the allegations in the complaint”, Plaintiff responds that the documents speak for themselves. Further, Plaintiff is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions. (See General Objections)

Plaintiff further objects to this Request to the extent that it seeks information outside the scope of FRCP 26(b)(1).

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request to the extent that it seeks an expert opinion.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request on the basis that **no representative of Plaintiff has to date conducted any monitoring or sampling at**

**Defendant's facility.** All monitoring and sampling conducted to date of Defendant's facility has been conducted by Defendant or its representatives.

To date, all other investigative activities were conducted by former experts of Plaintiff who are not available to Plaintiff, who were employed for trial preparation only, none of which is discoverable through a Rule 30(b)(6) deposition.

Plaintiff will be serving Defendant with a FRCP 34 demand for inspection of the facility; however, to date no formal inspection of Defendant's facility has occurred.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 2 at this time.

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 3**

The basis of the allegations in the COMPLAINT that SWEETENER has violated conditions of the PERMIT.

**RESPONSE TO PMK TOPIC NO. 3**

Plaintiff objects to this Request on the basis that it is overbroad, vague and ambiguous as to "the basis of the allegations in the Complaint."

To the extent that Defendant is seeking production of documents representing "the basis of the allegations in Plaintiff's complaint that Defendant has violated conditions of the PERMIT," Plaintiff has already provided to Defendant via Plaintiff's Initial and Supplementary Disclosures all documents in Plaintiff's possession which are not equally available to Defendant.

To the extent that Defendant is seeking Plaintiff's opinions, mental impressions and legal conclusions with regard to "the basis of the allegations in Plaintiff's complaint that Defendant has violated conditions of the PERMIT", Plaintiff responds that the documents it has already provided, as well as documents which are in Defendant's possession or are publicly available, speak for themselves. Further, Plaintiff is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions, which are protected from disclosure by the attorney work product doctrine and further by FRCP 26(b)(3). (See General Objections)

Plaintiff further objects to this Request on the basis that this Request is improperly phrased to elicit deposition testimony regarding Plaintiff's contentions.

Plaintiff further objects to this Request on the basis that discovery is continuing. All additional documents and information sought by this Request are either yet to be discovered or have not yet been produced by Defendant, who retains custody of such documents.

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request on the basis that it seeks an expert opinion.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request. The individuals most knowledgeable about the allegations in Plaintiff's complaint are Defendant, Defendant's consultants and representatives, the Water Board, members of Plaintiff's legal team, and Plaintiff's former and current technical consultants who have provided expert opinions in anticipation of litigation.

Plaintiff's Notice Letter and Complaint provide Defendant with sufficient detail with respect to the specific General Permit violations Plaintiff is alleging were committed by Defendant. The allegations are based on facts elicited from documents that **Defendant has submitted** (or failed to submit) to the Water Board and the General Public via the SMARTS system, which is a publicly available database.

The General Permit requires its permit holders (which it calls "Dischargers") to designate and implement a Pollution Prevention Team comprised of employees of the Discharger. All members of the Pollution Prevention Team are required to be trained on all standard conditions of the General Permit. Thus, because at least two of Defendant's employees were required to understand the basic standard conditions of the General Permit, Defendant's designated legally responsible person either personally prepared or certified the accuracy of all documents submitted to SMARTS, and Plaintiff utilized those documents, along with other publicly available information to form the basis for the violations it has alleged in its complaint, Defendant and its environmental consultants are the individuals with the most knowledge about the allegations in the complaint, not any representative of Plaintiff.

Plaintiff will be noticing the depositions of the members of Defendant's pollution prevention team to ascertain further facts that it may use to support the allegations in its current Complaint and the amended complaint it will be filing with the Court after the expiration of the 60-day notice period on ints amended Notice Letter.

Defendant is the original author and custodian of these documents and is in the best position to interpret them. If neither Defendant, nor its current retained environmental consultant is able to understand the facts related to the violations alleged in Plaintiff's Notice Letter and Complaint (which facts were taken directly from Defendant's own records and documents Defendant itself submitted to the Water Board and the public via SMARTS), Defendant has the option of hiring an additional environmental professional or expert to provide a technical opinion.

Plaintiff is not currently alleging any additional violations of the General Permit other than the exact violations articulated in detail in its Notice Letter provided to Defendant and attached to the Complaint in this matter.

However, Plaintiff is in the process of finalizing an amended notice letter to include additional violations and to add as additional defendants Defendant's responsible corporate officers and its legally responsible persons for purposes of General Permit compliance.

Plaintiff intends to file a Motion to Stay the case for the requisite 60-day notice period, after which a Motion to Amend will be submitted to the Court.

Further interpretation of the facts surrounding the alleged violations as articulated in Plaintiff's Notice Letter and Complaint, and the application of those facts to the General Permit, falls squarely within the purview of an expert opinion. Expert Disclosures are not yet due and are protected from disclosure at this juncture by FRCP 26(b)(4).

Plaintiff is not required to produce a deponent under Rule 30(b)(6) to discuss the opinions of either its legal team or its experts to assist Defendant in understanding the violations alleged in plain language on the face of its Notice Letter and Complaint.

Plaintiff's current managing member, Eric Lucas, has delegated full responsibility to Plaintiff's legal team to obtain the necessary facts and the supporting technical and expert opinions to pursue Defendant in this matter. He has not participated in this action to date and does not possess any personal

knowledge about the violations alleged by Plaintiff in the Notice Letter and Complaint. Furthermore, he is not qualified to provide an expert opinion.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 3 at this time.

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 4**

The basis of the claim YOUR members have been injured as alleged in the COMPLAINT.

**RESPONSE TO PMK TOPIC NO. 4**

Plaintiff objects to this Request in its entirety on the basis that is seeks to elicit information about Plaintiff's members, who are not required to participate in this action and who are protected from disclosure. (See General Objections)

To the extent that Defendant is seeking Plaintiff's opinions, mental impressions and legal conclusions with regard to "the basis of the claim" that its members have been injured as alleged in the COMPLAINT, Plaintiff responds that it is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions. (See General Objections)

Plaintiff further objects to this Request to the extent that it seeks information outside the scope of FRCP 26(b)(1).

Plaintiff further objects to this Request on the basis that this Request is improperly phrased to elicit deposition testimony regarding Plaintiff's contentions.

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request on the basis that it seeks information related to the emotional state and/or personal opinions of Plaintiff's associational members.

Plaintiff further objects to this Request to the extent that it seeks information protected by the First Amendment and the California Consumer Privacy Act of 2018.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff's associational members with Article III standing are not parties to this action and are not required to participate. This is especially true for a Rule 30(b)(6) deposition notice, which by its nature is a request to a corporate entity to produce for deposition a corporate officer, director, employee or other responsible person of the noticed entity who is most knowledgeable about the topics requested.

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request. Even if Plaintiff did have a corporate officer, director, employee or other responsible person to designate with respect to Topic No. 4, none of these individuals could possibly give admissible testimony as to the nature of the injuries of Plaintiff's associational members with Article III standing, as their testimony would be admissible hearsay, without exception.

Plaintiff has already disclosed to Defendant the identity of its standing member. Defendant must serve a Rule 45 deposition subpoena on that individual to obtain admissible evidence as to that member's injuries. Defendant cannot seek to elicit this information from Plaintiff directly.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 4 at this time.

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 5**

The basis of the allegations in the COMPLAINT that SWEETENER DISCHARGES contaminated storm water.

**RESPONSE TO PMK TOPIC NO. 5**

Plaintiff objects to this Request on the basis that it is vague and ambiguous as to "the basis of the allegations".

To the extent that Defendant is seeking production of documents representing "the basis of the allegations in the COMPLAINT that SWEETENER discharges contaminated storm water," Plaintiff has already provided to Defendant via Plaintiff's Initial and Supplementary Disclosures all documents and information in Plaintiff's possession not equally available to Defendant on this topic, rendering this Request duplicative.

To the extent that Defendant is seeking Plaintiff's opinions, mental impressions and legal conclusions with regard to "the basis of the allegations in the COMPLAINT that SWEETENER discharges contaminated storm water," Plaintiff responds that the documents and information it has already provided, as well as documents which are in Defendant's possession or are publicly available,

speak for themselves. Further, Plaintiff is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions. (See General Objections)

Plaintiff further objects to this Request to the extent that it clearly seeks information outside the scope of FRCP 26(b)(1).

Plaintiff further objects to this Request on the basis that this Request is improperly phrased to elicit deposition testimony regarding Plaintiff's contentions.

Plaintiff further objects to this Request on the basis that discovery is continuing. All additional documents and information sought by this Request are yet to be discovered.

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request on the basis that it clearly seeks an expert opinion.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request.

The persons most knowledgeable on this topic are employees of the Water Board, employees of Defendant's retained environmental consultant NES, Inc, employees of the laboratory which analyzed Defendant's stormwater samples (BSK Associates) and Defendant's employees.

Plaintiff will be deposing these individuals and will also seek records from the Water Board via public records requests, but has not yet done so, as discovery is continuing. Plaintiff's experts are also in the process of analyzing Defendant's discovery responses for further information with regard to pollutants discharged by Defendant from its facility.

Further, Defendant has self-reported to the Water Board and the General Public through SMARTS exceedances of EPA numeric action limits, which speak for themselves.

To date, no representative of Plaintiff has conducted any sampling and monitoring of Defendant's facility. Full analysis of the pollutants discharged by Defendant's facility will be conducted by environmental professional retained by Plaintiff to prepare expert reports, who will examine the documents authored and certified to SMARTS by Defendant as well as information related to

Defendant's industrial operations and industry, to determine all likely pollutants discharged by Defendant in its stormwater.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 5 at this time.

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 6**

The impacts you allege in the COMPLAINT that SWEETENER has on the Mokelumne River.

**RESPONSE TO PMK TOPIC NO. 6**

Plaintiff objects to this Request on the grounds that it is vague, ambiguous and unintelligible as to "the impacts that Defendant has on the Mokelumne River."

To the extent that Defendant is seeking production of documents representing "the impacts Plaintiff alleges that Defendant has on the Mokelumne River," Plaintiff has already provided to Defendant via Plaintiff's Initial and Supplementary Disclosures all documents in Plaintiff's possession which are not equally available to Defendant, rendering this Request duplicative.

To the extent that Defendant is seeking Plaintiff's opinions, mental impressions and legal conclusions with regard to "the impacts that Defendant has on the Mokelumne River", Plaintiff responds that the documents it has already provided, as well as documents which are in Defendant's possession or are publicly available, speak for themselves. Further, Plaintiff is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions. (See General Objections)

Plaintiff further objects to this Request on the basis that this Request is improperly phrased to elicit deposition testimony regarding Plaintiff's contentions.

Plaintiff further objects to this Request to the extent that it seeks information outside the scope of FRCP 26(b)(1).

Plaintiff further objects to this Request on the basis that discovery is continuing. All additional documents and information sought by this Request are either yet to be discovered or have not yet been produced by Defendant, who retains custody of such documents.

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request on the basis that it seeks an expert opinion.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request.

The impact that Sweetener's industrial operations have on the Mokelumne River can only be confirmed by an expert opinion. No representative of Plaintiff subject (or potentially subject) to a Rule 30(b)(6) deposition has any knowledge about this highly technical issue.

Plaintiff will be retaining an expert to opine on this topic and will provide the expert report to Defendant when expert disclosures are due. Until then, any technical information that Plaintiff may have on this topic is protected from disclosure by FRCP 26(b)(4) and the attorney work product doctrine.

Plaintiff's associational members with standing have formed opinions and beliefs on this topic, based on their general knowledge of Defendant's operations and violations of the General Permit. However, these beliefs are not necessarily shared by Plaintiff.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 6 at this time.

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 7**

The basis of the allegation in the COMPLAINT that DISCHARGES of stormwater from the FACILITY reach a Water of the United States.

**RESPONSE TO PMK TOPIC NO. 7**

Plaintiff objects to this Request on the basis that it is vague, ambiguous and unintelligible as to "the basis of the allegation."

To the extent that Defendant is seeking production of documents representing "the basis of the allegation in Plaintiff's complaint that discharges of storm water from Defendant's facility reach a Water of the United States," Plaintiff has already provided to Defendant via Plaintiff's Initial and Supplementary Disclosures all documents in Plaintiff's possession which are not equally available to Defendant, rendering this Request duplicative.

To the extent that Defendant is seeking Plaintiff's opinions, mental impressions and legal conclusions with regard to "the basis of the allegation in Plaintiff's complaint that discharges of storm water from Defendant's facility reach a Water of the United States", Plaintiff responds that the documents it has already provided, as well as documents which are in Defendant's possession or are publicly available, speak for themselves. Further, Plaintiff is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions. (See General Objections)

Plaintiff further objects to this Request on the basis that this Request is improperly phrased to elicit deposition testimony regarding Plaintiff's contentions.

Plaintiff further objects to this Request on the basis that discovery is continuing. All additional documents and information sought by this Request are either yet to be discovered or have not yet been produced by Defendant, who retains custody of such documents.

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request on the basis that it seeks an expert opinion.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request.

Whether discharges from Defendant's facility reach a Water of the United States (WOTUS) can only be confirmed by an expert opinion. No representative of Plaintiff subject to (or potentially subject to) a Rule 30(b)(6) deposition has any information or opinion as about this highly technical issue which must be confirmed by a licensed engineer, geologist or hydrogeologist. Even if a representative of Plaintiff had an opinion or belief about whether discharges from Defendant's facility did in fact reach Waters of the United States, such testimony could not be used to confirm whether discharges from Defendant's facility in fact reached WOTUS. This topic clearly exceeds the scope of FRCP 26(b)(1).

Ex. 13 - 019

Plaintiff will be retaining an expert to opine on this topic and will provide the expert report to Defendant when expert disclosures are due. Until then, any information that Plaintiff may have on this topic is protected from disclosure by FRCP 26(b)(4) and the attorney work product doctrine.

Plaintiff has also disclosed to Defendant in its Supplemental Disclosures that Sean Nathan, an engineer employed by the City of Lodi, has personal information and expertise regarding the City of Lodi's MS4 system and can confirm that stormwater discharges from Defendant's facility enter the City of Lodi's MS4 system, before traveling through the City's underground piping system, eventually discharging to Outfall 1 at the Mokelumne River, a Water of the United States. (**See Exhibit E**).

Defendant has had possession of Mr. Nathan's identity and contact information since May 19, 2025, but has declined to depose him. Instead, Defendant's counsel insists that Plaintiff must produce a representative who is knowledgeable to speak about the hydrological connection between Defendant's facility and the Mokelumne River. This is highly inappropriate.

Plaintiff's associational members with standing have formed lay opinions and beliefs on this topic, based on information they were able to obtain from the internet. These opinions and beliefs have are not necessarily shared by Plaintiff, as the beliefs are personal to the associational standing members who are not required to participate in this action, or to be produced for a Rule 30(b)(6) deposition. Even if Plaintiff's standing members were to provide testimony about whether stormwater discharges from Defendant's facility reached WOTUS, such testimony could not be used to either confirm or deny whether in fact the discharges reached WOTUS, which is a jurisdictional issue that, again, must be confirmed by a licensed professional.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 7 at this time.

**REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 8**

The business purpose, mission, and organizational structure of YOUR organization, including membership of YOUR organization.

**RESPONSE TO PMK TOPIC NO. 8**

Plaintiff objects to this Request in its entirety on the basis that information about Plaintiff's organizational structure and its membership policies is protected from disclosure by the First

Amendment and the California Consumer Privacy Act of 2018, as well as other privacy laws. (See case citations in General Objections)

Plaintiff further objects to this Request on the basis that information about Plaintiff's organizational structure is outside the scope of FRCP 26(b)(1). (See General Objections)

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request who are within the permissible scope of FRCP 26(b)(1).

Plaintiff's mission is articulated on the face of the complaint, is discussed on its website and is further evidenced by other lawsuits it has filed against Dischargers who are alleged to have violated the CWA.

Plaintiff's business purpose and organizational structure are evidenced by the attached Exhibits, its website and pleadings on file in this matter. Any further inquiry is not permissible, under *Harvard.*

Information about Plaintiff's members who are not designated in this matter as standing witnesses is also outside the scope of FRCP 26(b)(1).

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 8 at this time.

**<u>REQUEST FOR PERSON MOST KNOWLEDGEABLE DEPONENT TOPIC NO. 9</u>**

Violations of the Water Quality Control Plan for the California Regional Water Quality Control Board, Central Valley Region, and Receiving Water Limitations as alleged in the COMPLAINT.

**<u>RESPONSE TO PMK TOPIC NO. 9</u>**

Plaintiff objects to this Request on the basis that it is vague, ambiguous and unintelligible.

To the extent that Defendant is seeking production of relating to "Violations of the Water Quality Control Plan for the California Regional Water Quality Control Board, Central Valley Region, and Receiving Water Limitations as alleged in the COMPLAINT," Plaintiff has already provided to Defendant via Plaintiff's Initial and Supplementary Disclosures all documents in Plaintiff's possession which are not equally available to Defendant, rendering this Request duplicative.

Ex. 13 - 021

To the extent that Defendant is seeking Plaintiff's opinions, mental impressions and legal conclusions, Plaintiff responds that the documents it has already provided, as well as documents which are in Defendant's possession or are publicly available, speak for themselves. Further, Plaintiff is not required to produce documents or provide deposition testimony relating to its opinions, mental impressions and legal conclusions. (See General Objections)

Plaintiff further objects to this Request on the basis that discovery is continuing. All additional documents and information sought by this Request are either yet to be discovered or have not yet been produced by Defendant, who retains custody of such documents.

Plaintiff further objects to this Request on the basis that it seeks discovery of information protected by the attorney-client privilege and/or attorney work-product doctrine.

Plaintiff further objects to this Request on the basis that it seeks disclosure of attorney work product prepared in anticipation of litigation or for trial.

Plaintiff further objects to this Request on the basis that it seeks an expert opinion.

Without waiving any of the foregoing general or specific objections, Plaintiff responds as follows:

Plaintiff does not have any persons most knowledgeable to designate responsive to this Request.

Again, this is a highly technical matter and will need to be confirmed by experts. There is no individual associated with Plaintiff who has any knowledge about this matter.

The persons most knowledgeable on this topic are employees of the Water Board who drafted the Central Valley Regional Water Quality Control Plan, employees of Defendant's retained environmental consultant NES, Inc, employees of the laboratory which analyzed Defendant's stormwater samples (BSK Associates), Defendant's employees and the parties' experts.

Based on the foregoing, no deponent will be designated or will appear at a deposition to be questioned regarding Topic No. 9 at this time.

Date: August 4, 2025

By: ___*/s/ Adam D. Brumm*___________
Adam D. Brumm
Attorney for Plaintiff

Ex. 13 - 022

## PROOF OF SERVICE

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 4, 2025, I served the following document described as

**PLAINTIFF'S SECOND AMENDED RESPONSE AND OBJECTION TO DEFENDANT'S NOTICE OF DEPOSITION TO CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS' PERSON MOST KNOWLEDGABLE PURSUANT TO FED. R. CIV. P. 30(b)(6)**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 4, 2025

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm

Ex. 13 - 023

# EXHIBIT A

BA20230264430

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only
**-FILED-**
File No.: BA20230264430
Date Filed: 2/14/2023

B1503-6794 02/14/2023 4:20 PM Received by California Secretary of State

Entity Details

| | |
|---|---|
| Limited Liability Company Name | CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS LLC |
| Entity No. | 202033510005 |
| Formed In | CALIFORNIA |

Street Address of Principal Office of LLC

| | |
|---|---|
| Principal Address | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |

Mailing Address of LLC

| | |
|---|---|
| Mailing Address | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |
| Attention | |

Street Address of California Office of LLC

| | |
|---|---|
| Street Address of California Office | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |

Manager(s) or Member(s)

| Manager or Member Name | Manager or Member Address |
|---|---|
| + Eric Lucas | 1520 E. COVELL BLVD SUITE B5<br>DAVIS, CA 95616 |

Agent for Service of Process

| | |
|---|---|
| Agent Name | HANS W HERB |
| Agent Address | 740 FOURTH STREET<br>SANTA ROSA, CA 95404 |

Type of Business

| | |
|---|---|
| Type of Business | ENVIRONMENTAL CITIZEN'S GROUP |

Email Notifications

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

Chief Executive Officer (CEO)

| CEO Name | CEO Address |
|---|---|
| None Entered | |

Labor Judgment

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

Ex. 13 - 025

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

| | |
|---|---|
| *Eric Lucas* | *02/14/2023* |
| Signature | Date |

B1503-6795 02/14/2023 4:20 PM Received by California Secretary of State

BA20250198981

B3398-0655 01/28/2025 8:54 PM Received by California Secretary of State

**STATE OF CALIFORNIA**
*Office of the Secretary of State*

**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

For Office Use Only

**-FILED-**

File No.: BA20250198981
Date Filed: 1/28/2025

**Entity Details**

| | |
|---|---|
| Limited Liability Company Name | CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS LLC |
| Entity No. | 202033510005 |
| Formed In | CALIFORNIA |

**Street Address of Principal Office of LLC**

| | |
|---|---|
| Principal Address | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |

**Mailing Address of LLC**

| | |
|---|---|
| Mailing Address | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |
| Attention | |

**Street Address of California Office of LLC**

| | |
|---|---|
| Street Address of California Office | 1520 E. COVELL BLVD, SUITE B5<br>DAVIS, CA 95616 |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
|---|---|
| Eric Lucas | 1520 E. COVELL BLVD SUITE B5<br>DAVIS, CA 95616 |

**Agent for Service of Process**

| | |
|---|---|
| Agent Name | HANS W HERB |
| Agent Address | 740 FOURTH STREET<br>SANTA ROSA, CA 95404 |

**Type of Business**

| | |
|---|---|
| Type of Business | ENVIRONMENTAL CITIZEN'S GROUP |

**Email Notifications**

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
|---|---|
| None Entered | |

**Labor Judgment**

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

Ex. 13 - 027

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

| | |
|---|---|
| *Eric Lucas* | *01/28/2025* |
| Signature | Date |

B3398-0656 01/28/2025 8:54 PM Received by California Secretary of State

# EXHIBIT B

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>AIRGAS USA, LLC,<br><br>Defendants. | Case No.: 2:24-cv-03547-AC-DJC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: March 6, 2025<br>Time: 1:30 pm<br>Dept: 10<br>Honorable Daniel J. Calabretta |

Ex. 13 - 030

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THE MTD IS NOT A FACTUAL CHALLENGE TO THE COMPLAINT .......... 2

II. STANDING IS DEMONSTRATED BY PRIMA FACIA ALLEGATIONS .......... 2

III. PLAINTIFF HAS ASSOCIATIONAL STANDING TO BRING THIS SUIT .......... 3

A. Plaintiff's Complaint Alleges Facts Sufficient to Support Standing .......... 3

B. Defendant Confuses Managing Members with Associational Membership .......... 4

C. Any Type of Organization Can Bring a Citizen Suit Under the CWA .......... 5

D. Complaints Are Not Required to Include the Identity of the Associational .......... 6

Member With Article III Standing .......... 6

E. Defendant's MTD Contains False, Erroneous and Unsupported Contentions .......... 7

IV. PLAINTIFF's NOTICE LETTER IS LEGALLY SUFFICIENT .......... 8

A. Plaintiff is Clearly Identified as the Person Giving Notice .......... 8

B. Notice Letters are Not Required to Address All SWPPP Revisions .......... 8

C. Plaintiff's Notice Letter Provides Adequate Specificity .......... 9

CONCLUSION .......... 9

DECLARATION OF ADAM D. BRUMM .......... 11

DECLARATION OF ERIC LUCAS .......... 12

DECLARATION OF JASON ASTON .......... 13

# TABLE OF AUTHORITIES

## CASES


*Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011) ............................................................2

*Borden v. Bare*, No. 1: 20-cv-01103-AWI-EPG (E.D. Cal. May 12, 2022) ...........................................1

*California Sportfishing v. All Star Auto Wrecking*, 860 F. Supp. 2d 1144, 1152 (E.D. Cal. 2012).........2

*Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir. 1999)..................................................................................7

*Ecological Rights Found. v. Pac. Lumber Co.* 230 F.3d 1141, 1147 (9th Cir. 2000).............................4

*Eden Environmental Citizen's Group LLC v. Laptalo Enterprises, Inc.*, No. 18-cv-05544-YGR (N.D. Cal. June 10, 2019) ..........................................................................................................................5

*Eden Environmental Citizen's Group, LLC v. American Custom Marble, Inc.*, No. 19-cv-03424-EMC (N.D. Cal. Feb. 13, 2020) ..........................................................................................................5

*Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827 (5th Cir. 1997)........................5

*Jessen v. County of Fresno*, No. 1: 17-cv-00524-DAD-EPG (E.D. Cal. Jan. 5, 2019)...........................1

*Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005) ............................................................................3

*Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) .........................................................................2

*Martinez v. Flagstar Bank, FSB*, No. 2: 15-cv-01934-KJM-CKD (E.D. Cal. July 18, 2016) ................2

*Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir.2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) ...........................................................................................................................................3

*National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015)...................................6

*Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000)...............8

*New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC*, 734 F. Supp. 2d 1326 (N.D. Ga. 2010).................................................................................................................................................6

*North Carolina Growers Ass'n v. Holly Ridge Assoc.*, 278 F. Supp. 2d 654 (D.N.C. 2003)..................5

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006)..........................................................2

*Sherman v. Stryker Corp.*, 2009 WL 2241664 at *2 (C.D.Cal. Mar. 30, 2009).......................................3

*Sierra Association for Environment v. Federal Energy Regulatory Commission*, 744 F.2d 661 (9th Cir. 1984).................................................................................................................................................5

*Smith v. Henry's Holdings, LLC,* No. 2: 21-cv-01030-KJM-DB (E.D. Cal. Jan. 25, 2022)....................1

*Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)..............................................................................4

*Summers v. Earth Island Institute*, 555 U.S. 488, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)....................6

## STATUTES

40 Code of Federal Regulation §135.3(a).........................................................................................8

California Code of Civil Procedure § 369.5 ...................................................................................5

California Corporations Code §17701.05(b) ...................................................................................5

Federal Rule of Civil Procedure 11...............................................................................................1

Federal Rule of Civil Procedure 12(b)(1) .......................................................................................2

Federal Rule of Civil Procedure 17(b)(3)(A)...................................................................................5

**INTRODUCTION**

Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS ("Plaintiff") hereby opposes the Motion to Dismiss ("MTD") filed on January 17, 2025, by Defendant AIRGAS USA, LLC ("Defendant") in its entirety. Plaintiff also opposes Defendant's improper request for an Order staying the proceedings.

Plaintiff requests that Defendant's MTD be stricken from the record for failure of Defendant to comply with an Order of this Court, for the reasons discussed in the Objection filed by Plaintiff on January 24, 2025, as ECF Docket No. 20.

The district court may reject a motion which does not comply with Local Rules. *Freeman v. Allstate Life Ins. Co*., 253 F.3d 533, 537 (9th Cir. 2001); *Harris v. Dillman*, 2010 U.S. Dist. LEXIS 91791, *6-7. Further, the court can act on violations of procedural rules where prejudice to a party is shown. *County of Orange v. Air California*, 799 F.2d 535, 537 (1986); *Borden v. Bare*, No. 1: 20-cv-01103-AWI-EPG (E.D. Cal. May 12, 2022); *Jessen v. County of Fresno*, No. 1: 17-cv-00524-DAD-EPG (E.D. Cal. Jan. 5, 2019)

Alternatively, Plaintiff requests that Defendant's Motion to Dismiss be summarily denied for Defendant's failure to comply with this Court's Standing Order, pursuant to Plaintiff's Objection filed on January 24, 2025, at ECF 8.

Plaintiff further generally opposes Defendant's MTD on the basis that it contains numerous objectively false statements and is wholly unsupported by any factual evidence, such that it was filed in contravention of Rule 11.[1]

Defendant's MTD also fails to cite any relevant legal authority for its frivolous legal contentions and was filed for the sole purpose of causing Plaintiff to incur additional expenses and to delay litigating the case on the merits.

The improper use of the Court's resources is particularly salient for cases filed in this District, as recently articulated by Chief District Judge Kimberly J. Mueller in *Smith v. Henry's Holdings, LLC,* No. 2: 21-cv-01030-KJM-DB (E.D. Cal. Jan. 25, 2022), which

---

[1] Plaintiff is in the process of finalizing and serving on Defendant's counsel a Rule 11 Motion for Sanctions.

Ex. 13 - 034

admonishes counsel not to present early filings "for any improper purpose," including to increase the costs of litigation needlessly.

**ARGUMENT**

**I. THE MTD IS NOT A FACTUAL CHALLENGE TO THE COMPLAINT**

Defendant's MTD purports to assert both a facial and a factual challenge to the facts as asserted in Plaintiff's complaint.

To launch a successful factual challenge to Plaintiff's standing under Rule 12(b)(1), Defendant would need to demonstrate by admissible evidence that the allegations in Plaintiff's Complaint which give rise to standing are untrue. *California Sportfishing v. All Star Auto Wrecking*, 860 F. Supp. 2d 1144, 1152 (E.D. Cal. 2012). Defendant has failed to do so.

Because Defendant has produced absolutely no evidence, the factual assertions in the MTD which controvert the factual averments in Plaintiff's complaint are without merit and fail to raise a factual challenge under Rule 12(b)(1). Thus, Defendant's MTD merely attacks the sufficiency of the allegations in the Complaint to establish standing on its face, and Defendant's motion to dismiss under 12(b)(1) must be viewed as a wholly facial attack. *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014).

**II. STANDING IS DEMONSTRATED BY PRIMA FACIA ALLEGATIONS**

At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011). At the initial stage of litigation, it is enough for a plaintiff to allege and not prove the elements of Article III standing. *Martinez v. Flagstar Bank, FSB*, No. 2: 15-cv-01934-KJM-CKD (E.D. Cal. July 18, 2016)

In the absence of an evidentiary hearing, the plaintiff need only make prima facie showing of jurisdictional facts to withstand a motion to dismiss. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006) In deciding whether a plaintiff has made this showing,

Ex. 13 - 035

we "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." *Maya v. Centex Corp*., 658 F.3d 1060, 1068 (9th Cir.2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)

Generally, the court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. There are two exceptions: when material is attached to the complaint or relied on by the complaint, or when the court takes judicial notice of matters of public record, provided the facts are not subject to reasonable dispute. *Sherman v. Stryker Corp.,* 2009 WL 2241664 at *2 (C.D.Cal. Mar. 30, 2009)

Neither of these two exceptions apply to Defendant's MTD, which does not include a Request for Judicial Notice and does not cite to admissible evidence to support its contentions.

Courts may consider extrinsic evidence only when plaintiff's claim depends on the contents of a document; the defendant attaches the document to its motion to dismiss; and the parties do not dispute the authenticity of the document. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005)

The Declaration filed in support of Defendant's MTD contains nothing more than Secretary of State filings and a copy of Plaintiff's Notice Letter issued to Defendant, none of which supports any of Defendant's factual contentions or legal arguments. (See Declaration of Anna McClean filed in support of Defendant's MTD, ECF No. 18-1, hereafter "McClean Dec")

## III. PLAINTIFF HAS ASSOCIATIONAL STANDING TO BRING THIS SUIT

### A. <u>Plaintiff's Complaint Alleges Facts Sufficient to Support Standing</u>

Defendant incorrectly asserts that Plaintiff's complaint fails to allege sufficient facts to support standing. Defendant also erroneously insists that Plaintiff's complaint must allege that it has members in "*Eastern California*"; and that Plaintiff lacks standing because "*nothing in the Complaint supports a finding that there are any Central Valley, LLC members in Eastern California*".

Ex. 13 - 036

Case 2:24-cv-02835-WBS-CSK Document 42-1 Filed 01/31/25 Page 8 of 18

To satisfy the Constitution's standing requirement, a plaintiff must show (1) it has suffered an `injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016) The "injury in fact" requirement in environmental cases is satisfied if an individual adequately shows that he or she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct. *Ecological Rights Found. v. Pac. Lumber Co*. 230 F.3d 1141, 1147 (9th Cir. 2000)

Plaintiff's complaint contains sufficient averments when taken as true comply with Article III standing requirements. (See Complaint, ECF 1, Section IV, at p.3-4, paragraphs 12-21). What is more, Defendant's facility and its affected receiving waters are located in <u>Northern California</u>, not "*Eastern California*".

B. **<u>Defendant Confuses Managing Members with Associational Membership</u>**

Defendant claims that Plaintiff cannot have associational members because of its legal formation as an LLC and because it does not charge a membership fee. No comment is required for the latter proposition, which is ludicrous on its face.

Defendant appears to be arguing that unlike associational members of a non-profit organization, the "members" of a limited liability company are only those persons or entities with an ownership interest in the company.

Defendant offers no rationale or authority for this notion and appears to conflate managing members (owners, officers, directors) and associational members.

Managing members/owners of a limited liability company are by their nature distinct from associational members. For example, a health club could be owned and operated by a limited liability company, and the names of its managing member(s) would appear on its Secretary of State documents. However, no one could reasonably argue that individuals not listed on the health club's Secretary of State documents could not be associational members, utilizing the club and joining in with the club's mission of improving health and fitness.

C. **<u>Any Type of Organization Can Bring a Citizen Suit Under the CWA</u>**

Defendant further claims that Plaintiff cannot be an environmental citizen's group and implies that it cannot bring CWA cases because it is not a charitable organization and is instead formed as a limited liability company. Simply put, there are no Ninth Circuit cases which stand for this proposition.

It is well settled that *any citizen* may bring an environmental citizen's suit. The capacity to sue of a partnership, limited liability company or other unincorporated association is determined by the law of the forum state, with certain limited exceptions. See FRCP 17(b)(3)(A)

Under California law, both partnerships and limited liability companies have the capacity to sue and be sued in the entity's name, and to defend any such action against it. Calif. CCP § 369.5 (partnerships and other unincorporated associations); Calif. Corps. Code §17701.05(b) (limited liability companies)

Even if Rule 17 did not apply, *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827 (5th Cir. 1997), citing *Sierra Association for Environment v. Federal Energy Regulatory Commission*, 744 F.2d 661 (9th Cir. 1984) confirm the Ninth Circuit holds that an organization's form under state law has no effect on Article III standing.

Further, multiple CWA citizen suits have been filed in the Northern and Eastern District by environmental membership group Eden Environmental Citizen's Group, LLC, which was formed as a California limited liability company in the same manner as Plaintiff. The Court specifically found that Eden Environmental Citizen's Group, LLC had Article III standing in *Eden Environmental Citizen's Group LLC v. Laptalo Enterprises, Inc.*, No. 18-cv-05544-YGR (N.D. Cal. June 10, 2019) and *Eden Environmental Citizen's Group, LLC v. American Custom Marble, Inc.*, No. 19-cv-03424-EMC (N.D. Cal. Feb. 13, 2020).

Federal Courts have specifically granted standing to associations and limited liability company's regarding CWA citizen suit enforcement. See *North Carolina Growers Ass'n v. Holly Ridge Assoc.*, 278 F. Supp. 2d 654 (D.N.C. 2003) Plaintiff not-for-profit corporation and plaintiff shell fishing association, claiming that defendant tract owners had violated

Case 2:24-cv-02835-WBS-JCSK Document 42 Filed 01/31/25 Page 10 of 18

various sections of the CWA had associational standing where they had adequately alleged injury in fact, where their expressed concerns were entirely reasonable and fairly traceable to defendants' activities, and where relief they sought would redress injuries alleged); See also *New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC*, 734 F. Supp. 2d 1326 (N.D. Ga. 2010)

### D. Complaints Are Not Required to Include the Identity of the Associational Member With Article III Standing

Defendant next argues that Plaintiff's complaint fails to adequately allege standing because it neither includes the actual names of Plaintiff's associational members with standing on its face, nor attaches their affidavits to the complaint.

This argument and the *Summers* case cited by Defendant has been addressed by the *La Raza* Court as follows:

> We are not convinced that *Summers*, an environmental case brought under the National Environmental Policy Act, stands for the proposition that an injured member of an organization must always be specifically identified in order to establish Article III standing for the organization.
>
> …..
>
> Where it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured. *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015)

Plaintiff submits that the *Summers* case is distinguishable from this matter. The *Summers* Court held failure to identify by name an associational member of Earth Island Institute who was suffering an ongoing "injury in fact" was evidence of a lack of standing because the conduct of the Defendant which formed the basis for Earth Island's originally stated injury in fact **had been settled** and the members were "no longer under threat of injury." *Summers v. Earth Island Institute*, 555 U.S. 488, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009).

Ex. 13 - 039

Furthermore, in the Fifth and Eleventh Circuits, associational plaintiffs are not required to be named at all:

> These [three requirements of associational standing] are the sole requirements. Accordingly, . . . an association may bring suit on behalf of its members or constituents despite the fact that individual members have not actually brought suit themselves. *Nor must the association name the members on whose behalf suit is brought.* As we have stated, "neither unusual circumstances, inability of individual members to assert rights nor an explicit statement of representation are requisites." *Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir. 1999) (quoting *Church of Scientology v. Cazares,* 638 F.2d 1272, 1279 (1981).

E. **<u>Defendant's MTD Contains False, Erroneous and Unsupported Contentions</u>**

Among the false, erroneous and unsupported factual contentions are the following:

1. *Plaintiff has no associational members*. [Defendant's MTD p.8, lines 4-5, 15-23; p.13, line 10] Defendant has no basis to make this claim and provides no support. In fact, Defendant's MTD itself refers to the membership portion of Plaintiff's website in stating that the website "*invites anyone to join with no membership fee*." Plaintiff does in fact have associational members. (See Declarations of Adam D. Brumm, Eric Lucas and Jason Aston filed herewith)

2. *Plaintiff has no associational members in "Eastern California"*. Apparently, the author of Defendant's MTD is unaware that the Central Valley and greater Sacramento area are located in the area commonly referred to as "<u>Northern California</u>", rather than "*Eastern California*". As indicated in the complaint, Plaintiff has numerous associational members in Northern California, including those who work, reside and/or recreate on or near the Sacramento River and Defendant's facility.

3. *Plaintiff's sole member, Eric Lucas, is an Alabama resident*. Mr. Lucas is the managing member of Plaintiff's LLC. He is **<u>not</u>** Plaintiff's sole associational member. Furthermore, Mr. Lucas has never resided in or even visited Alabama. In fact, he has been a California resident his entire life. (See Declaration of Eric Lucas, at ¶¶2-4)

4. *Plaintiff is currently affiliated with another LLC (also with no apparent members) in New Mexico.* Defendant's MTD includes an out-of-date Statement of Information, which was superseded on February 14, 2023. (See Exhibit D to McClean Dec)

5. *Plaintiff is delinquent in its Annual Report, further obscuring its LLC structure*. Defendant has neither explained this allegation, nor provided any evidence to support that "Plaintiff's Annual Report is delinquent."

Defendant's contention that Plaintiff's status as a limited liability company with only one managing member should subject Plaintiff to more intense scrutiny, without any legal or rational basis, is not only without merit, but also constitutes a chilling due process violation.

## IV. PLAINTIFF's NOTICE LETTER IS LEGALLY SUFFICIENT

### A. Plaintiff is Clearly Identified as the Person Giving Notice

Defendant contends that Plaintiff's notice letter is defective because it fails to include "the full name of the person giving notice." This claim is objectively false. Plaintiff's full name, address and telephone number are included in the notice letter. (See Exhibit A to the Complaint, ECF 1, at p.20; also included as Exhibit B to the McClean Dec)

To the extent that Defendant is arguing that a person other than Plaintiff is required to be named in the notice letter, such does not comport with the requirements of 40 C.F.R. §135.3(a).

### B. Notice Letters are Not Required to Address All SWPPP Revisions

Defendant next complains that Plaintiff's notice letter is defective because "*it does not address the current SWPPP*" and "*speaks to an out-of-date SWPPP*". However, not only is this a factual issue not appropriate for disposition at this stage, but also it is a legally untenable argument.

Specifically, the Ninth Circuit held in *Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000) that the plaintiff's original notice letter, which did not discuss a subsequent SWPPP revision, adequately satisfied statutory requirements.

Ex. 13 - 041

Here, Plaintiff's July 5, 2024, notice letter was itself an "amended notice". Plaintiff had previously provided two notice letters to Defendant: one on September 15, 2021; and the second on October 26, 2022. (See Brumm Dec, at ¶¶5-7)

Plaintiff's September 15, 2021, and October 26, 2022, reference Defendant's SWPPP in effect as of that date of the notice and discuss the manner in which the SWPPP was deficient. (Brumm Dec, at ¶¶5-7)

Further, Defendant's contention that Plaintiff's First, Second, Fourth, Fifth and Sixth Causes of Action relate to the sufficiency of Defendant's SWPPP is both unsupported and objectively false. Only the First Cause of Action relates to the sufficiency of Defendant's SWPPP.

**C. Plaintiff's Notice Letter Provides Adequate Specificity**

Defendant further claims without any basis that Plaintiff's notice letter is "defective" because it "*does not identify precisely what Airgas did wrong*" and "*vaguely asserts Plaintiff's injuries without sufficient factual background or basis*."

A review of Plaintiff's Notice Letter attached as Exhibit B to the McClean Dec (and also attached as Exhibit A to Plaintiff's complaint) confirms that Plaintiff provided very specific and detailed information in a 21-page notice letter which discusses every aspect of Defendant's violations of the General Permit and CWA, identifying *exactly* what Defendant "*did wrong and when*." In fact, the categories of violations discussed in the notice letter(s) comport with the causes of action in Plaintiff's complaint, and the complaint itself refers back to the notice letter and incorporates it by reference.

## CONCLUSION

Plaintiff requests that this Court deny Defendant's MTD in its entirety.

Alternatively, Plaintiff requests that in the event this Court fails to timely rule on Plaintiff's Objection to Defendant's MTD, Plaintiff be allowed an opportunity to file a supplemental Opposition if necessary; and that if this Court finds in favor of Defendant on

Ex. 13 - 042

Case 2:24-cv-03254-TLN-AC Document 48-12 Filed 01/31/25 Page 14 of 18

*any* portion of Defendant's MTD that Plaintiff be allowed to amend its Complaint without leave of Court under FRCP 15(a)(1)(b).

Dated: January 31, 2025

Respectfully,

By: ___*/S Adam D. Brumm*_____________
Adam D. Brumm
Attorney for Plaintiff

# DECLARATION OF ADAM D. BRUMM

I, Adam D. Brumm, declare as follows:

1. I am the attorney of record for Plaintiff in this matter. If called as a witness, I could and would competently testify to the facts set forth herein.

2. I have personal knowledge that Plaintiff has multiple associational members who reside, work and/or recreate in the greater Sacramento area, near the Sacramento River.

3. I have personal knowledge that Plaintiff is not associated with any out-of-state entity.

4. I have personal knowledge that Plaintiff is an environmental citizen's group, as confirmed by its filings in this Court in this and other matters and by its filings with the California Secretary of State.

5. I have personal knowledge that to date Plaintiff has issued three notice letters to Defendant, on the following dates: September 15, 2021; October 26, 2022; and July 5, 2024.

6. I have personal knowledge that all three of the notice letters Plaintiff issued to Defendant contained Plaintiff's full legal name, address and telephone number.

7. I have personal knowledge that all three of the notice letters Plaintiff issued to Defendant provided sufficiently detailed information about deficiencies in Defendant's current SWPPP.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 31, 2025 By: __*/S/_Adam D. Brumm*____________
Adam D. Brumm

Ex. 13 - 044

**DECLARATION OF ERIC LUCAS**

I, Eric Lucas, declare as follows:

1. I am the current managing member of Central Valley Eden Environmental Defenders, LLC ("EDEN").

2. I have not now, nor have I ever, been a resident of the state of Alabama. In fact, I have never stepped foot in the state of Alabama.

3. I have been a resident of California continuously since birth.

4. I currently reside and work in northern California.

5. I have personal knowledge that since at least January 1, 2020, EDEN has consistently had multiple associational members who reside, work and/or recreate in the Sacramento, California area, near or on the Sacramento River, including myself.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 31, 2025 By: *__/S/ Eric Lucas__*

Eric Lucas

Ex. 13 - 045

Case 2:24-cv-02835-WBS-CSK Document 4-1 Filed 11/13/25 Page 179 of 183

**DECLARATION OF JASON ASTON**

I, Jason Aston, declare as follows:

1. I am a current associational member of Central Valley Eden Environmental Defenders, LLC ("EDEN"). I have been a member continuously since July 1, 2024.

2. I regularly fish and recreate in and around the Sacramento River, downstream from where Morrison Creek reaches the Sacramento River, among other areas. I believe this to be the area affected by polluted stormwater runoff from Defendant Airgas' facility.

3. I have fished in many areas of the Sacramento River for the last twenty years and plan to continue to do so, including the area unfortunately affected by polluted stormwater from Defendant Airgas' facility.

4. I have looked at photographs and drone footage of Defendant Airgas' facility. I have observed spills of industrial materials and chemicals near storm drains, as well as acres of their facility completely full of trash, debris, broken equipment, used and rusted metal and cannisters, wood and plastic—all exposed to stormwater that enters untreated into the Sacramento River.

5. I am aware of multiple other ongoing violations of California's Industrial General Permit and the Clean Water Act committed by Airgas, as mentioned in EDEN's notice letter and complaint.

6. I believe that polluted stormwater runoff from Airgas' facility reaches and enters the Sacramento River via Morrison Creek and contributes to diseased and malformed fish.

7. I also believe that polluted stormwater runoff from Airgas' facility has contributed to the degradation and contamination of the Sacramento River.

8. Knowledge of Airgas' General Permit and Clean Water Act violations and how these violations have been detrimental to the fish swimming in the Sacramento River downstream from where Airgas' polluted stormwater runoff enters Morrison Creek and the Sacramento River has caused and continues to cause me distress, sadness, and a greatly diminished desire to fish in the Sacramento River.

9. Since at least July 1, 2024, I have experienced both continuous and ongoing harm and emotional outrage due to Airgas' refusal to follow environmental regulations and its willingness to allow its polluted storm water run-off to contaminate the Sacramento River.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 31, 2025 By: *__/S/ Jason Aston*____________
Jason Aston

# EXHIBIT C

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC., et al,<br><br>Defendants. | Case No.: 2:25-cv-00078-WBS-CSK<br><br>**PLAINTIFF'S THIRD SUPPLEMENTAL DISCLOSURES** |

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff Central Valley Eden Environmental Defenders, LLC ("EDEN") submits the following Supplemental Disclosures in this matter:

**A. The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information.**

Plaintiff's Standing Witnesses**.** Plaintiff hereby discloses the following current member who meets all Article III standing requirements.

Name: [redacted]
Contact Information: [redacted]

Cell phone number: [redacted]
Email: [redacted]

Plaintiff reserves the right to supplement this list as more documents, data compilations and tangible things relevant to disputed facts in this matter become available to Plaintiff.

Dated: August 4, 2025

Respectfully,

By: *<u>/s/ Adam D. Brumm</u>*
Adam D. Brumm
Attorney for Plaintiff

# PROOF OF SERVICE

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 4, 2025, I served the following document described as

**PLAINTIFF'S THIRD SUPPLEMENTAL DISCLOSURES**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 4, 2025

By: *__/s/_Adam D. Brumm_*__________
Adam D. Brumm

# EXHIBIT D

The Law Office of
Jennifer F. Novak
Environmental Law

500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
T: (310) 693-0775
demetria@jfnovaklaw.com

July 10, 2025

Adam Brumm
Central Valley Eden Environmental Defenders, LLC
1520 E. Covell Blvd., Suite B5
Davis, CA 95616
adam@edendefenders.org

RE: **Response to Central Valley Eden Environmental Defenders' Response and Objection to Sweetener Products, Inc.'s Notice of Deposition Pursuant to Federal Rules of Civil Procedure, Rule 30(b)(6)**

Dear Mr. Brumm:

On June 30, 2025, Sweetener Products, Inc. ("Sweetener") issued a Notice of Deposition for Central Valley Eden Environmental Defenders' ("Eden") Person Most Knowledgeable. Under Federal Rule of Civil Procedure 30, a party may name a business entity as a deponent. In turn, the entity "must" designate one or more individuals to testify on its behalf. Fed. R. Civ. P. 30(b)(6). Anyone who "impedes, delays, or frustrates" the fair examination of that person is subject to sanctions. Fed. R. Civ. P. 30(d)(2); *Am. Career Coll. Inc. v. Medina*, 673 F.Supp.3d 1139, 1149 (C.D. Cal. 2023). This is especially so when that person prevents a party from obtaining necessary information. *Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64, 73-74 (W.D.Va. 2021). This letter is intended to serve as the basis for the upcoming meet and confer regarding Eden's refusal to provide a standing witness or evidence of Sweetener's alleged permit violations.

I. Sweetener Is Entitled to Information Regarding Eden's Standing Witness and Evidence of Alleged Permit Violations

Discovery allows parties in a lawsuit to access relevant information to better support their claims and defenses. This access to relevant facts promotes the search for truth and the fairness of the courts. *Epstein v. MCA, Inc.,* 54 F.3d 1422, 1423 (9th Cir. 1995). Discovery is not a "shell game, where the hidden ball is moved round and round." *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011). Instead, parties are expected to construe discovery requests reasonably, to use common sense, and for counsel to use professionalism and reasonable diligence in meeting their discovery obligations.

Under Federal Rule of Civil Procedure 26, parties may obtain discovery regarding *any* nonprivileged matter that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery is relevant where it appears reasonably calculated to lead to the discovery of

admissible evidence. *Id.* The term "relevant" also enjoys a broad construction. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98. 2380 (1978), *citing Hickman v. Taylor*, 329 U.S. 495, 501 (1947). If information is clearly relevant, the objecting party bears the "heavy" burden to clarify, explain, and support its objections. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

II. Eden Must Provide A Witness to Support Its Standing

Having initiated this lawsuit, Eden must comply with the rules of discovery related to standing. Standing is a threshold issue in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It may be challenged at any time. Fed. R. Civ. P. 12(h)(3). Either Eden has witnesses who can establish its standing, or it does not. If it does, it cannot shield its witnesses behind baseless objections.

Eden appears to believe, incorrectly, that it can avoid discovery on the issue of standing simply because it pleaded facts in its Complaint. This belief likely arose from Eden's past failures to plead sufficient facts to defeat Rule 12 motions to dismiss. *See, e.g., Cent. Valley Eden Env't Defs., LLC v. Airgas USA, LLC*, 2025 WL 1150920, at *3 (E.D. Cal. Apr. 18, 2025); *see also Cent. Valley Eden Env't Defs., LLC v. Champion Home Builders, Inc.*, 2024 WL 115386 (E.D. Cal. Jan. 10, 2024). However, now that Eden has passed the pleading stage and entered discovery, it bears the burden of producing evidence to support its claims. *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010) (party asserting jurisdiction must establish standing requirements at every stage of litigation); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-889 (1990) (plaintiff bears burden of proof to support each element of cause of action, including standing, with evidence); *see, e.g., Cent. Sierra Env't Res. Ctr. v. Stanislaus Nat'l Forest*, 30 F.4th 929, 937-38 (9th Cir. 2022) (finding that plaintiffs could establish standing through declarations); *see also, e.g. Inland Empire Waterkeeper v. Corona Clay Co.*, 17 4th 825, 832 (9th Cir. 2021) (same).

Similarly, Eden has claimed that it does not need to discuss standing in deposition but can meet this obligation through "affidavits." (Plaintiffs' Resp. to Defs. PMK Depo. Notice pg 2, ¶ ¶ 25-27). Eden is incorrect. It has cited cases where plaintiffs used affidavits as evidence. However, it has not offered any authority that holds that *only* plaintiffs can seek or obtain evidence of standing, nor that a plaintiff may refuse to participate in discovery on this issue.

Other citizen suit plaintiffs have faced similar requirements. For example, in *San Luis Obispo Coastkeeper, et al. v. County of San Luis Obispo*, 2025 WL 1720191 (C.D. Cal. May 20, 2025), the plaintiff sought a protective order to prevent the depositions of three standing witnesses, attempting to offer an alternative standing witness instead. Coastkeeper's arguments were similar to those Eden argues here: that the defendant can obtain the information in less burdensome ways, that the plaintiff will suffer prejudice, and that there are less expensive ways to obtain the information. The court denied the motion, finding that these were "standard" burdens of discovery. Moreover, the burdens were foreseeable, given that the plaintiff chose to commence the lawsuit. Standing witnesses voluntarily choose to serve in that capacity and, thus, subject themselves to the duties and commitments inherent in this jurisdictional role, "such as being examined by the opposing party about their claims of injury." *San Luis Obispo*

*Coastkeeper, supra,* 2025 WL 1720191, at *1-2; *see also, California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 124 F.Supp.3d 1007, 1018 (E.D. Cal. 2015) (finding plaintiff had standing after three members provided deposition testimony to establish injuries and connection to affected waterbody); *see also, Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 2012 WL 13046362, at *1 (N.D. Cal. Jan. 27, 2012) (finding standing after plaintiff's members testified at deposition regarding their injuries).

Eden did not identify a standing witness in its Complaint, nor did it list any witness in its Initial Disclosures. In response, Sweetener noted the omission and requested that Eden provide its standing witness information. Eden objected that it would disclose this information during discovery and demanded a meet and confer. During the meet and confer on May 16, 2025, Eden admitted that it could not find a standing witness willing to be deposed by Sweetener's counsel. Eden again requested discovery requiring Eden to disclose the identity of the witness. On May 19, 2025, Eden produced Supplemental Disclosures and again stated its difficulty in finding a standing witness to be deposed by Sweetener's counsel.

Sweetener has also served Eden with written discovery, including Requests for Production, Requests for Admissions, and Interrogatories. All of these discovery tools included requests for information about Eden's standing and alleged injuries, and the basis for its claims. Eden responded to Sweetener's discovery requests with generic and baseless objections.

As noted above, on June 30, 2025, Sweetener served Eden with a Notice of Deposition for Eden's Person Most Knowledgeable. Amongst other things, this Notice sought information on Eden's standing witness and the injuries they are alleged to have suffered. Eden responded to this Notice with the same generic and baseless objections it provided in its initial discovery responses. While Eden claims to have Article III associational standing, it has not provided any information to establish how that is true. As noted above, Eden has the burden of establishing its standing. (*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-889 (1990) (plaintiff bears burden of proof to support each element of cause of action, including standing, with evidence).

Eden has repeatedly declined to identify any standing witnesses to establish an injury caused by Sweetener's alleged permit violations, which is particularly frustrating, given that Eden requested Sweetener to propound discovery for the identification of a witness during the May 16, 2025, meet and confer. It has refused to produce any Rule 30 witness to testify about the facts to establish Eden's right to claim associational standing, the alleged harm to standing witnesses, or the identity of the witnesses themselves. This is an abuse of the discovery process.

## III. <u>Sweetener Is Entitled to Depose The Person Most Knowledgeable As to Eden's Allegations and The Basis For This Action.</u>

Sweetener's deposition notice also seeks information related to the evidence Eden claims to possess. Similar to its refusal to provide a standing witness, Eden has repeatedly refused to provide any information related to any evidence it possesses of Sweetener's alleged permit violations. Eden objected to Sweetener's request for information related to documents, photos, or

videos relating to conditions. However, Eden put these documents, photos, and videos at issue by producing pictures of the Sweetener's facility in its April 21, 2025, Initial Disclosures.

Even alleged work product is discoverable if an adverse party shows a "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). As the photos have been produced by Eden, Sweetener has no other way of authenticating them outside of information only known to Eden and its representatives. To the extent Eden or Sweetener may rely on these photos on trial, Sweetener is entitled to information as to their foundation.

Moreover, Eden has placed its allegations of permit violations at issue. It cannot attempt to shield the facts upon which it bases these allegations by claiming them as work product. *See, e.g., Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506 (S.D. N.Y. 2002). This is especially so where Eden is the *only* one with an understanding of its members' alleged harm and the alleged violations at Sweetener. *See F.T.C. v. Grolier, Inc.*, 462 U.S. 19 (1983); *see also Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 908 (4th Cir. 1978) (party may obtain work product if unable to otherwise secure information without undue hardship or through other means).

The work product doctrine cannot serve as a shield against the discovery of facts. *Bregman v. District of Columbia*, 182 F.R.D. 352 (D.D.C. 1998) (party may appropriately ask what factual information the opposing side will rely on); *Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682 (S.D. Fla 2010); *Sanchez v. Matta*, 229 F.R.D. 649 (D.N.M. 2004). Therefore, Eden cannot refuse to provide a Rule 30 witness, or other discoverable information by claiming *everything* is work product. Facts are not work product.

IV. Eden Cannot Shield Discoverable Information From Sweetener By Claiming "Corporate Privacy."

Eden has repeatedly argued that it may refuse to provide information about its membership and organization, claiming "privacy." If Eden wants to maintain this action, it cannot hide behind this claimed privilege. California courts have found that corporations and LLCs do not enjoy the same right of privacy as individuals. *See, e.g., E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009) (holding that privacy right is not absolute bar to discovery but is subject to balancing needs); *EFT Holdings, Inc. v. CTX Virtual Techs., Inc.*, 2016 WL 11519280, at *3 (C.D. Cal. Nov. 3, 2016) (citing numerous cases). Thus, courts balance a party's right to discovery with the corporate right of privacy. *Littlefield v. NutriBullet, L.C.*, 2018 WL 5264148, at *6 (C.D. Cal. Jan. 22, 2018); *Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12887396, at *3.

To determine whether a party may shield its information from discovery, courts ask whether the information is clearly relevant, whether a party has less intrusive means to obtain the same information, and whether the objecting party has shown how it will be harmed by providing the information. *DeSilva v. Allergan USA, Inc.*, 2020 WL 5947827, at *5 (C.D. Cal. Sept. 1, 2020); *SCC Acquisitions, Inc. v. Superior Court*, 243 Cal.App.4th 741, 756 (2015) (holding that corporate privacy rights are not constitutionally protected and must be balanced

with relevance to subject matter of dispute). For those reasons, LLCs may be ordered to disclose their financial statements or tax returns. *Uni-Spendlor Corp. v. Remington Designs, LLC*, 2017 WL 10581102, at *5 (C.D. Cal. September 5, 2017) (finding no authority to allow LLC to shield its financial statements). Courts have also ordered parties to provide the names, addresses, and phone numbers of LLC members, despite the LLCs' objections. *See, e.g., Wiegele v. Fedex Ground Package Sys.*, 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007); *see also, e.g., Artis v. Deere & Co.*, 276 F.R.D. 349, 352-53 (N.D. Cal. 2011). Doubts about relevance are generally resolved in favor of allowing the discovery. *SCC Acquisitions, Inc., supra,* 243 Cal.App.4th at 756.

Here, Eden has the burden to show that it has standing to bring this action. Therefore, Sweetener is entitled to determine if:

- Eden has members;
- Eden's members possess "sufficient indicia of membership" in the organization;
- Eden expresses the collective views and protects the collective interest of its members;
- Eden's members would otherwise have standing to sue in their own right;
- The interests at stake are germane to Eden's purpose;
- Whether the claim requires individual members to participate in the lawsuit;
- Whether the relief Eden seeks requires individual members to participate in the lawsuit;
- Whether Eden has standing for each form of relief sought;
- Whether Eden suffers from "continuing, present, adverse effects"

*See Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.* 528 U.S. 167, 181 (2000); *see also Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342, 343-345 (1977); *see also Lujan, supra,* 504 U.S. at 564; *see also Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (citing *Village of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)); *see also Cent. Valley Eden Env't Defs., LLC v. Airgas USA, LLC*, No. 2:24-CV-03547-DJC-AC, 2025 WL 1150920, at *3-5 (E.D. Cal. Apr. 18, 2025) (finding that Central Valley Eden did not meet standing requirements because it asserted only generalized grievances and not how each member was harmed).

All of this information is known to Eden. None of the information is known by Sweetener, nor could Sweetener discover it through other means. Documents publicly available through the California Secretary of State only disclose Eden's formation and state that the organization is formed to engage in lawful activity. No members are listed. No mission statement is listed. Eden's website does not purport to provide any membership information, nor how members are defined or determined. While Eden's website states it "defend[s] local waterways and protect[s] animal habitats" by bringing lawsuits, it does not list information showing how this action or other actions serve Eden's members. Indeed, Sweetener is unaware of any information to show that Eden has *any* members. In a balancing of discoverability v.

privacy, Sweetener prevails. Doubts about relevance are generally resolved in favor of allowing the discovery. *SCC Acquisitions, Inc., supra,* 243 Cal.App.4th at 756.

Consistent with this burden, Sweetener Products has requested that Eden offer for deposition a witness to discuss Eden's members and business structure. As it has with other requests, Eden refused to produce any witnesses or evidence related to its members or structure in their June 18, 2025, discovery responses. Eden further objected to providing this information in its July 3, 2025, response to the deposition notice because it "has identified members and represents them in good faith," but this is not an appropriate objection. However, this argument fails as Eden has not provided any evidence to identify members or demonstrate how they represent them in good faith.

Eden has given Sweetener no choice but to assume neither a standing witness nor evidence of the alleged permit violations exists. Should Eden decide it will not produce a standing witness or provide evidence of the alleged permit violations by the July 25, 2025, deposition date, Sweetener will move to either compel this information and/or seek exclusion of any standing witness evidence. If Eden is confident about the legitimacy of their objections, it should seek a protective order from the Court. *See New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 165-166 (D.Mass 2007). Furthermore, Eden has not said it is not available for the July 25, 2025, deposition; hence, Sweetener plans to move forward with the deposition on that date.

Warm Regards,

Demetria Mantalis
Law Office of Jennifer F. Novak

# EXHIBIT E

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC., et al,<br><br>Defendants. | Case No.: 2:25-cv-00078-WBS-CSK<br><br>**PLAINTIFF'S SUPPLEMENTAL DISCLOSURES** |

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff Central Valley Eden Environmental Defenders, LLC ("EDEN") submits the following Supplemental Disclosures in this matter:

**A. The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information.**

1. Sean Nathan, City Engineer and Deputy Director for City of Lodi (CA) Public Works Department; 221 West Pine Street, Lodi, California 95240; (209) 269-4909.

Mr. Nathan possesses discoverable information regarding the hydrological connection of the stormwater run-off from Defendant's facility to Waters of the United States, which appears to be disputed by Defendant.

Specifically, Mr. Nathan is expected to testify that **Drain Inlet # 11 (DI-11)**, located at the northeast section of Sweetener's facility [east of the Loading Area portion of the main Warehouse building] is linked to an underground piping system (to which Defendant claims that all or most of the facility's onsite drain inlets are connected) which is connected just north of Defendant's northeastern gate, in the middle of E. Thurman Street, to the City of Lodi's MS4 stormwater system; specifically at City of Lodi manhole **M2359**.

Mr. Nathan is expected to testify that stormwater entering the City of Lodi's MS4 underground stormwater piping system from this location (**M2359** at E. Thurman Street) travels north on Cluff Avenue to Turner Road, where it then continues north and northwest until it reaches **City of Lodi stormwater Outfall 1**, which discharges directly to the Mokelumne River.

Further, Mr. Nathan is expected to testify that any stormwater escaping the boundaries of Defendant's facility would enter one of two curb inlets on E. Thurman Street a short distance from the facility—either the curb inlet at the south side of E. Thurman Street at manhole **M2353** just west of Sweetener's facility; or the curb inlet at the south side of E. Thurman Street at manhole **M2453**, just east of Sweetener's facility.

Mr. Nathan is expected to testify that stormwater entering either City manhole **M2353** or **M2453** will reach City Outfall 1 and discharge directly to the Mokelumne River in the same manner as stormwater entering the City's MS4 system at manhole **M2359**.

Plaintiff reserves the right to supplement this designation with additional witnesses and experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, and pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

2. <u>Plaintiff's Standing Witnesses</u>**.** Plaintiff has identified at least five current members who meet all Article III standing requirements and will further supplement its disclosures to provide the name and contact information of at least one of these standing witnesses once its counsel has had an opportunity to confer with each of these witnesses and to ensure that the disclosed witness(es) are willing and able to undergo "the rigors of litigation" [See *San Francisco Baykeeper v. West Bay Sanitary District*, 791 F.Supp.2d 719 (Dist. Court, ND California 2011).]

Plaintiff anticipates that this process will take some time and be somewhat challenging due to the unusual nature of Defendant's counsel. Specifically, Plaintiff's standing witnesses are aware that Defendant's counsel's office has primarily represented environmental citizen's groups in bringing well-known CWA citizen's suits filed in US District Courts located in California. Further, Plaintiff believes that Defendant's counsel has an actual conflict of interest in this matter and possesses "inside information" and potentially confidential attorney-client information about some of its members

Plaintiff and some of its members are concerned about the potential for Defendant's counsel to misuse that information to gain a tactical advantage. Further, the identified standing members feel that there is a high likelihood they will undergo some degree of harassment by Defendant's counsel based on the foregoing.

3. <u>Plaintiff's Persons Most Knowledgeable</u>. The persons most knowledgeable (PMK) with respect to Defendant's General Permit and CWA violations, as well as any other matter which may be within the permissible scope of FRCP 26(b)(1) are members of Plaintiff's legal team.

All members of Plaintiff's legal team are protected from being deposed under the attorney-client and attorney-work product doctrines, as well as the *Shelton* doctrine, which is followed by the Ninth Circuit and the Eastern District of California. [See *Shelton v. Am. Motors Corp*., 805 F.2d 1323, 1327 (8th Cir. 1986); *Heitkoetter v. Domm*, No. 1:22-cv-0368 KES-BAM (E.D.Cal Nov 13, 2024); *Wagner v. Shasta County*, No. 2:20-cv-0403-JAM-DMC (E.D.Cal. Aug 22, 2022]

Other persons most knowledgeable with respect to Defendant's violations include former members of Plaintiff's technical team (contracted individuals listed below), none of which are currently contracted with Plaintiff. Furthermore, Plaintiff is unaware of the contact information for these individuals:

-Ashlei Rupe
-Taylor Rupe
-Joshua Barnes
-Blaire Duarte

**B. A description by category and location of all documents, data compilations, and tangible things in the possession custody or control of Plaintiffs that are relevant to disputed facts alleged with particularity in the pleadings.**

1. Documents on file with the City of Lodi's Public Works, Planning and Environmental Services Departments, including all documents available on its website at https://www.lodi.gov/450/Public-Works.

2. Documents on file with the County of San Joaquin Public Works Department, including all documents available on its website at https://www.sjgov.org/department/pwk/home

Plaintiff reserves the right to supplement this list as more documents, data compilations and tangible things relevant to disputed facts in this matter become available to Plaintiff.

Dated: May 19, 2025

Respectfully,

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm
Attorney for Plaintiff

**PROOF OF SERVICE**

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On May 19, 2025, I served the following document described as

**PLAINTIFF'S SUPPLEMENTAL DISCLOSURES**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 19, 2025

By: __*/s/ Adam D. Brumm*_________
Adam D. Brumm

# Exhibit 14

Adam D. Brumm, Esq. SB# 257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 2:25-CV-00078-WBS-CSK<br><br>Hon. William B. Shubb<br><br>**PLAINTIFF'S OBJECTION TO DEFENDANT'S INTERROGATORIES SET TWO, REQUESTS FOR ADMISSION SET THREE AND REQUESTS FOR PRODUCTION OF DOCUMENTS SET THREE AND INTENT TO SEEK RULE 37 SANCTIONS FOR VIOLATION OF A DISCOVERY ORDER** |

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiff Central Valley Eden Environmental Defenders ("EDEN") hereby OBJECTS to Defendant Sweetener Product's ("Defendant") Interrogatories Set Two, Requests for Admission Set Three and Requests for Production of Documents Set Three in their entirety on the basis that every request is propounded in violation of this Court's May 15, 2026, Protective Order.

Ex. 14 - 001

EDEN intends to seek Rule 37 sanctions against attorney Demetria Mantalis and the Law Office of Jennifer F. Novak for willfully violating a discovery order unless Defendant withdraws the discovery within two business days of service of this Objection.

Date: August 5, 2026

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm
Attorney for Plaintiff

**PROOF OF SERVICE**

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On August 5, 2026, I served the following document described as

**PLAINTIFF'S OBJECTION TO DEFENDANT'S INTERROGATORIES SET TWO, REQUESTS FOR ADMISSION SET THREE AND REQUESTS FOR PRODUCTION OF DOCUMENTS SET THREE AND INTENT TO SEEK RULE 37 SANCTIONS FOR VIOLATION OF A DISCOVERY ORDER**

By email to counsel for Defendant as follows:

Jennifer F. Novak — Email: novak@jfnovaklaw.com
Megan Meadows — Email: megan@jfnovaklaw.com
Demetria Mantalis — Email: demetria@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 5, 2026

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm

Ex. 14 - 003

**Exhibit 15**

ACCESSIBILITY OPTIONS | Business | Lien | Notary | Trademark | Service Of Process | Login

Home
Search
Forms

# Business Search

*As of 9/23/2026 we have processed all business filings received in our office through 9/17/2026.*

***To file an amendment on a Business Record, search for the business, and choose File Amendment from the slide out drawer.*** *You must be logged in to file amendments. Please click on the Log In button in the top right and log in. If you do not have an account, please create one. The credentials from the previous system did not transfer to this system.*

***If the business you are searching contains a special character, you must include the special character to obtain results.***

Business Search Info:

national wotus defenders *

Advanced

Results: 1

| Name | Business ID | Entity Type | Entity Sub-Type | Formed In | Status |
|---|---|---|---|---|---|
| National WOTUS Defenders, LLC | 6533302 | Domestic Limited Liability Company | Domestic LLC | New Mexico | Active |

## National WOTUS Defenders LLC

File Amendment | Request Certificate

| | |
|---|---|
| Business Name | National WOTUS Defenders, LLC |
| Status | Active |
| Annual Report Standing | Good |
| Registered Agent Standing | Good |
| Initial Filing Date | 07/08/2021 |
| Entity Type | Domestic Limited Liability Company |
| Entity Sub-Type | Domestic LLC |
| Formed In | New Mexico |
| Record # | 6533302 |
| Agent | Ted Smith 6300 Riverside Plaza Ln NW #100, 6300 Riverside Plaza Ln NW #100, Albuquerque, NM 87120 |
| Organizers and Incorporators | Diane Adams: Organizer |
| Alternate Business Names | |

View History

# Exhibit 16

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC., et al,<br><br>Defendants. | Case No.: 2:25-cv-00078-WBS-CSK<br><br>**PLAINTIFF'S SUPPLEMENTAL DISCLOSURES** |

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff Central Valley Eden Environmental Defenders, LLC ("EDEN") submits the following Supplemental Disclosures in this matter:

**A. The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information.**

1. Sean Nathan, City Engineer and Deputy Director for City of Lodi (CA) Public Works Department; 221 West Pine Street, Lodi, California 95240; (209) 269-4909.

Mr. Nathan possesses discoverable information regarding the hydrological connection of the stormwater run-off from Defendant's facility to Waters of the United States, which appears to be disputed by Defendant.

Specifically, Mr. Nathan is expected to testify that **Drain Inlet # 11 (DI-11)**, located at the northeast section of Sweetener's facility [east of the Loading Area portion of the main Warehouse building] is linked to an underground piping system (to which Defendant claims that all or most of the facility's onsite drain inlets are connected) which is connected just north of Defendant's northeastern gate, in the middle of E. Thurman Street, to the City of Lodi's MS4 stormwater system; specifically at City of Lodi manhole **M2359**.

Mr. Nathan is expected to testify that stormwater entering the City of Lodi's MS4 underground stormwater piping system from this location (**M2359** at E. Thurman Street) travels north on Cluff Avenue to Turner Road, where it then continues north and northwest until it reaches **City of Lodi stormwater Outfall 1**, which discharges directly to the Mokelumne River.

Further, Mr. Nathan is expected to testify that any stormwater escaping the boundaries of Defendant's facility would enter one of two curb inlets on E. Thurman Street a short distance from the facility—either the curb inlet at the south side of E. Thurman Street at manhole **M2353** just west of Sweetener's facility; or the curb inlet at the south side of E. Thurman Street at manhole **M2453**, just east of Sweetener's facility.

Mr. Nathan is expected to testify that stormwater entering either City manhole **M2353** or **M2453** will reach City Outfall 1 and discharge directly to the Mokelumne River in the same manner as stormwater entering the City's MS4 system at manhole **M2359**.

Plaintiff reserves the right to supplement this designation with additional witnesses and experts within the time limits imposed by the Court or any alterations of same by subsequent Court Order or agreement of the parties, and pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

2. Plaintiff's Standing Witnesses**.** Plaintiff has identified at least five current members who meet all Article III standing requirements and will further supplement its disclosures to provide the name and contact information of at least one of these standing witnesses once its counsel has had an opportunity to confer with each of these witnesses and to ensure that the disclosed witness(es) are willing and able to undergo "the rigors of litigation" [See *San Francisco Baykeeper v. West Bay Sanitary District*, 791 F.Supp.2d 719 (Dist. Court, ND California 2011).]

Plaintiff anticipates that this process will take some time and be somewhat challenging due to the unusual nature of Defendant's counsel. Specifically, Plaintiff's standing witnesses are aware that Defendant's counsel's office has primarily represented environmental citizen's groups in bringing well-known CWA citizen's suits filed in US District Courts located in California. Further, Plaintiff believes that Defendant's counsel has an actual conflict of interest in this matter and possesses "inside information" and potentially confidential attorney-client information about some of its members

Plaintiff and some of its members are concerned about the potential for Defendant's counsel to misuse that information to gain a tactical advantage. Further, the identified standing members feel that there is a high likelihood they will undergo some degree of harassment by Defendant's counsel based on the foregoing.

3. Plaintiff's Persons Most Knowledgeable. The persons most knowledgeable (PMK) with respect to Defendant's General Permit and CWA violations, as well as any other matter which may be within the permissible scope of FRCP 26(b)(1) are members of Plaintiff's legal team.

All members of Plaintiff's legal team are protected from being deposed under the attorney-client and attorney-work product doctrines, as well as the *Shelton* doctrine, which is followed by the Ninth Circuit and the Eastern District of California. [See *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Heitkoetter v. Domm*, No. 1:22-cv-0368 KES-BAM (E.D.Cal Nov 13, 2024); *Wagner v. Shasta County*, No. 2:20-cv-0403-JAM-DMC (E.D.Cal. Aug 22, 2022]

Other persons most knowledgeable with respect to Defendant's violations include former members of Plaintiff's technical team (contracted individuals listed below), none of which are currently contracted with Plaintiff. Furthermore, Plaintiff is unaware of the contact information for these individuals:

-Ashlei Rupe
-Taylor Rupe
-Joshua Barnes
-Blaire Duarte

**B. A description by category and location of all documents, data compilations, and tangible things in the possession custody or control of Plaintiffs that are relevant to disputed facts alleged with particularity in the pleadings.**

1. Documents on file with the City of Lodi's Public Works, Planning and Environmental Services Departments, including all documents available on its website at https://www.lodi.gov/450/Public-Works.

2. Documents on file with the County of San Joaquin Public Works Department, including all documents available on its website at https://www.sjgov.org/department/pwk/home

Plaintiff reserves the right to supplement this list as more documents, data compilations and tangible things relevant to disputed facts in this matter become available to Plaintiff.

Dated: May 19, 2025

Respectfully,

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm
Attorney for Plaintiff

# PROOF OF SERVICE

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On May 19, 2025, I served the following document described as

**PLAINTIFF'S SUPPLEMENTAL DISCLOSURES**

By email to counsel for Defendant as follows:

| | |
|---|---|
| Jennifer F. Novak | Email: novak@jfnovaklaw.com |
| Megan Meadows | Email: megan@jfnovaklaw.com |
| Demetria Mantalis | Email: demetria@jfnovaklaw.com |
| LAW OFFICE OF JENNIFER F. NOVAK | |
| 500 Silver Spur Road, Suite 206 | |
| Rancho Palos Verdes, California 90275 | |
| Telephone: (310) 693-0775 | |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 19, 2025

By: __*/s/ Adam D. Brumm*__________
Adam D. Brumm

# Exhibit 17

Adam D. Brumm, Esq. SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC., et al,<br><br>Defendants. | Case No.: 2:25-cv-00078-WBS-CSK<br><br>**PLAINTIFF'S FOURTH SUPPLEMENTAL DISCLOSURES AMENDING PRIOR DISCLOSURES** |

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff Central Valley Eden Environmental Defenders, LLC ("EDEN") submits the following Supplemental Disclosures in this matter:

**A. The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information.**

Plaintiff hereby AMENDS its Second Supplemental Disclosures served on Defendant on May 19, 2025, to WITHDRAW the four names listed in Section A.3 as persons most knowledgeable/potential witnesses for Plaintiff.

The four individuals named in Section A.3 of Plaintiff's Second Supplemental Disclosures are all former experts (licensed Qualified Industrial Stormwater Practitioners) retained by Plaintiff for litigation purposes only, pursuant to FRCP 26(b)(4)(D).

Defendant is not entitled to depose any of these individuals, nor may it discover facts known or opinions held by these four individuals.

Plaintiff does not intend to call at trial any of the individuals listed in Section A.3 of Plaintiff's Second Supplemental Disclosures, nor will any of these individuals be retained as Plaintiff's experts under FRCP 26(b)(4)(A).

As such, Plaintiff is not required to provide *any* information about these four individuals in supplemental disclosures.

**B. A description by category and location of all documents, data compilations, and tangible things in the possession custody or control of Plaintiff that are relevant to disputed facts alleged with particularity in the pleadings.**

Plaintiff has provided in its initial and supplemental disclosures a description by category and location of all documents that may be used by its retained experts as evidence in support of the claims in its Complaint in its Initial and Supplemental Disclosures.

With regard to the website links provided in Section B of Plaintiff's Initial Disclosures, Plaintiff hereby WITHDRAWS item Nos. 1, 5, duplicate no. 5, 6, 7, 10-26 and SUPPLEMENTS Nos. 2, 8, and 9 as follows:

2. ALL information on all web pages of Sweetener Products Inc's website, located at https://www.sweetenerproducts.com/

8. ALL information contained on Cal EPA's Regulated Site Portal with respect to Defendant Sweetener Products Company, including: Profile Page, Map, Regulatory Programs, Compliance Information and Chemicals reported by Defendant to CalEPA, located at https://siteportal.calepa.ca.gov/nsite/map/results/detail/72875/chemicals

9. ALL documents founds on the SMARTS database for Defendant Sweetener Products, under WDID # 5S39I012985, located at CA Storm water Multiple Applications and Report Tracking System - Ver 2015.11 Bld: 10.28.2015.8.40

Dated: September 29, 2025

Respectfully,

By: ___/s/ Adam D. Brumm___________
Adam D. Brumm
Attorney for Plaintiff

**PROOF OF SERVICE**

I, Adam D. Brumm, hereby declare:

My business address is 1520 E. Covell Blvd, Suite B5-611, Davis, CA 95616

On September 29, 2025, I served the following document described as

**PLAINTIFF'S FOURTH SUPPLEMENTAL DISCLOSURES AMENDING PRIOR DISCLOSURES**

By email to counsel for Defendant as follows:

| | |
|---|---|
| Jennifer F. Novak | Email: novak@jfnovaklaw.com |
| Megan Meadows | Email: megan@jfnovaklaw.com |
| Demetria Mantalis | Email: demetria@jfnovaklaw.com |
| LAW OFFICE OF JENNIFER F. NOVAK | |
| 500 Silver Spur Road, Suite 206 | |
| Rancho Palos Verdes, California 90275 | |
| Telephone: (310) 693-0775 | |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 29, 2025

By: *__/s/ Adam D. Brumm__________*
Adam D. Brumm

**Exhibit 18**

**DECLARATION OF ERIC LUCAS**

I, Eric Lucas, declare as follows:

1. I am the current managing member of Central Valley Eden Environmental Defenders, LLC ("EDEN").

2. I have not now, nor have I ever, been a resident of the state of Alabama. In fact, I have never stepped foot in the state of Alabama.

3. I have been a resident of California continuously since birth.

4. I currently reside and work in northern California.

5. I have personal knowledge that since at least January 1, 2020, EDEN has consistently had multiple associational members who reside, work and/or recreate in the Sacramento, California area, near or on the Sacramento River, including myself.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 31, 2025

By: __*/S/ Eric Lucas*__________
Eric Lucas



Ex. 18 - 001

**Exhibit 19**

Case 2:25-cv-02835-TLN-AC Document 21 Filed 11/17/25 Page 17 of 83

**DECLARATION OF JASON ASTON**

I, Jason Aston, declare as follows:

1. I am a current associational member of Central Valley Eden Environmental Defenders, LLC ("EDEN"). I have been a member continuously since July 1, 2024.

2. I regularly fish and recreate in and around the Sacramento River, downstream from where Morrison Creek reaches the Sacramento River, among other areas. I believe this to be the area affected by polluted stormwater runoff from Defendant Airgas' facility.

3. I have fished in many areas of the Sacramento River for the last twenty years and plan to continue to do so, including the area unfortunately affected by polluted stormwater from Defendant Airgas' facility.

4. I have looked at photographs and drone footage of Defendant Airgas' facility. I have observed spills of industrial materials and chemicals near storm drains, as well as acres of their facility completely full of trash, debris, broken equipment, used and rusted metal and cannisters, wood and plastic—all exposed to stormwater that enters untreated into the Sacramento River.

5. I am aware of multiple other ongoing violations of California's Industrial General Permit and the Clean Water Act committed by Airgas, as mentioned in EDEN's notice letter and complaint.

6. I believe that polluted stormwater runoff from Airgas' facility reaches and enters the Sacramento River via Morrison Creek and contributes to diseased and malformed fish.

7. I also believe that polluted stormwater runoff from Airgas' facility has contributed to the degradation and contamination of the Sacramento River.

8. Knowledge of Airgas' General Permit and Clean Water Act violations and how these violations have been detrimental to the fish swimming in the Sacramento River downstream from where Airgas' polluted stormwater runoff enters Morrison Creek and the Sacramento River has caused and continues to cause me distress, sadness, and a greatly diminished desire to fish in the Sacramento River.

9. Since at least July 1, 2024, I have experienced both continuous and ongoing harm and emotional outrage due to Airgas' refusal to follow environmental regulations and its willingness to allow its polluted storm water run-off to contaminate the Sacramento River.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 31, 2025 By: __*/S/ Jason Aston*____________

Jason Aston

# Exhibit 20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION),<br><br>Defendant. | * * * * * * * * * * * * | Civil Action No. 14-cv-14176-ADB |

**MEMORANDUM AND ORDER DENYING MOTION TO DISMISS**

BURROUGHS, D.J.

## I. INTRODUCTION

In this action, Students for Fair Admissions, Inc. ("SFFA") alleges that Harvard College ("Harvard") employs racially and ethnically discriminatory policies and procedures in administering its undergraduate admissions program, in violation of Title VI of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Presently pending before this Court is Harvard's motion to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). [ECF No. 187]. Harvard filed the instant motion on September 23, 2016, and SFFA opposed it on October 21, 2016 [ECF No. 204].[1] For the reasons stated below, the motion is DENIED.

[1] Both parties also filed declarations and exhibits in support of their positions. [ECF Nos. 188, 205].

## II. RELEVANT BACKGROUND[2]

SFFA filed its Complaint with this Court on November 17, 2014 [ECF No. 1], and Harvard filed its Answer on February 18, 2015 [ECF No. 17]. SFFA's Complaint sets forth two types of allegations. First, SFFA contends that the general manner in which Harvard considers race in its undergraduate admissions program violates the Equal Protection Clause. As opposed to using race as a mere "plus" factor in admissions decisions, SFFA claims that Harvard engages in prohibited "racial balancing." Second, SFFA alleges that Harvard's policies invidiously discriminate against Asian-American applicants in particular because, by admitting only a limited number of Asian-American applicants each year, Harvard, in effect, forces Asian-American applicants to compete against each other for those spots. Consequently, a large number of otherwise highly-qualified Asian-American applicants are allegedly denied admission to Harvard on the basis of their race or ethnicity.

SFFA is an Internal Revenue Code Section 501(c)(3) organization whose claimed mission is to defend human and civil rights secured by law, including equal protection rights, through litigation or other lawful means.[3] SFFA brings this action on behalf of its members. Its membership is composed of a coalition of applicants and prospective applicants to institutions of higher education, along with their parents and other individuals, including at least one Asian-American student member who applied for and was denied admission to Harvard's 2014 entering

[2] There are other motions pending before this Court, including Harvard's motion for judgment on the pleadings pursuant to Rules 12(c) and 12(h)(2) [ECF No. 185]. In this Memorandum and Order, the Court addresses only the motion to dismiss for lack of jurisdiction and tailors its discussion accordingly.

[3] The Court includes additional facts regarding SFFA's membership and organizational structure infra at 6–7.

class (the "Applicant"). Complaint ¶¶ 12–24.[4] According to SFFA, this Applicant intends to transfer to Harvard when the school stops using its race-based discrimination admissions policy.

The Complaint requests the following relief: declaratory judgments that Harvard's admissions policies and procedures violate Title VI of the Civil Rights Act of 1964 and that any use of race or ethnicity in the educational setting violates the Fourteenth Amendment and Title VI; permanent injunctions prohibiting Harvard from using race as a factor in future undergraduate admission decisions and requiring it to make its admissions decisions in a race-blind manner; attorneys' fees and costs; and any other relief this Court finds appropriate.

## III. LEGAL STANDARD

Because Harvard's Rule 12(b)(1) challenge to SFFA's constitutional standing implicates this Court's subject matter jurisdiction, see P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012), the Court is not restricted to the four corners of the Complaint and "may consider whatever evidence has been submitted, such as the depositions and exhibits," Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); see also Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007); Katz v. Pershing, LLC, 806 F. Supp. 2d 452, 456 (D. Mass. 2011), aff'd, 672 F.3d 64 (1st Cir. 2012) ("A court is permitted to look beyond the pleadings to determine jurisdiction on a 12(b)(1) motion, hence the formality of converting the motion to one for summary judgment need not be observed.").

[4] Following the filing of the Complaint, SFFA's membership continued to grow and it added additional members, including several that it identifies as "Standing Members," who have submitted signed declarations in connection with this motion. See Exhibits to [ECF No. 205]. The Standing Members include Asian-American applicants who were rejected from Harvard, Asian-American high school students who claim they will apply to Harvard, and parents of applicants and prospective applicants.

## IV. DISCUSSION

### A. Associational Standing

The Constitution gives the judiciary power to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The Supreme Court has interpreted this requirement to mean that courts may decide only "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). A plaintiff's standing to sue is "part of the common understanding of what it takes to make a justiciable case." Id. Therefore, "the absence of standing sounds the death knell for a case." Microsystems Software, Inc.v. Scandinavia Online AB, 226 F.3d 35, 39 (1st Cir. 2000). The standing determination is "claim-specific," meaning that an individual plaintiff "must have standing to bring each and every claim that [he or] she asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012).

Article III standing requires that three conditions be satisfied. "First and foremost, there must be alleged (and ultimately proved) an 'injury in fact.'" Steel Co., 523 U.S. at 103 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). This injury "must be concrete in both a qualitative and temporal sense," "distinct and palpable" as opposed to "abstract," and "actual or imminent" as opposed to "conjectural or hypothetical." Whitmore, 495 U.S. at 155 (internal quotations and citations omitted). Second, standing requires causation, defined as a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." Steel Co., 523 U.S. at 103. Finally, standing requires "redressability—a likelihood that the requested relief will redress the alleged injury." Id.

"[A]n association may have standing solely as the representative of its members even in the absence of injury to itself, in certain circumstances." Camel Hair & Cashmere Inst. of Am.,

Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 10 (1st Cir. 1986) (citing Warth v. Seldin, 422 U.S. 490, 511 (1975)). Specifically, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). The first two Hunt prongs are constitutional, and the third is prudential. United Food & Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555–57 (1996). Only one member need have individual standing in order for an organization to satisfy the first Hunt factor. See Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R., 906 F.2d 25, 34 (1st Cir. 1990) ("[T]he Supreme Court has never required that every member of an association have standing before it can sue on behalf of its members. 'The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.'" (quoting Warth, 422 U.S. at 511)).

The Hunt Court also held that an organization that was not "a traditional voluntary membership organization" because it did not have any formal members could still have associational standing if its constituents "possess[ed] all of the indicia of membership in an organization." Hunt, 432 U.S. at 344–45.[5] Indicia of membership, as identified by the Hunt Court, include that the purported members "alone elect the members of the Commission; they

[5] The Hunt Court discussed two other reasons justifying its holding that the organization at issue in that case had associational standing: that it "serves a specialized segment of the State's economic community which is the primary beneficiary of its activities, including the prosecution of this kind of litigation" and "the interests of the Commission itself may be adversely affected by the outcome of this litigation." Hunt, 432 U.S. at 344–45. Here, the parties focus only on the indicia-of-membership rationale.

alone may serve on the Commission; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." Id. Ultimately, the Hunt Court found that the Commission at issue in that case had associational standing even though it was not a typical membership organization, at least in part because "[i]n a very real sense . . . the Commission represents the State's [apple] growers and dealers and provides the means by which they express their collective views and protect their collective interests." Id. at 345. Harvard argues that the indicia-of-membership test articulated in Hunt should be applied to all organizations, while SFFA argues that it is not applicable to membership organizations, like the SFFA.

**B. Nature of the SFFA**

The SFFA, a nonstock corporation, was formed under the laws of Virginia on July 30, 2014. [ECF No. 188, Ex. A ("Blum Tr.") at 11:23–25]. According to SFFA's bylaws, as amended on June 19, 2015 (hereinafter, the "Bylaws"),[6] the organization's purpose is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law, through litigation and other lawful means." [ECF No. 188, Ex. B ("Bylaws"), art. II]. The Board of Directors, which manages the business and affairs of SFFA, is composed of four Board-Elected Directors and one Member-Elected Director. Bylaws, art. IV, §§ 4.01, 4.02. The Board-Elected Directors are elected by a majority vote of the directors then in office, and the Member-Elected Director is elected by a majority vote of the members. Id. § 4.04. Actions by the Board of Directors generally require a majority vote of the Directors present at any given meeting (where there is a quorum, defined as a majority of all Directors). Id. § 4.08.

SFFA has formal members, referred to as "General Members." According to the SFFA Bylaws, an individual qualifies as a General Member if he or she "seeks to support the purposes

[6] Prior to the June 19, 2015 amendment, SFFA members had no voting rights and were not required to make any financial contributions to join.

and mission of the Corporation, pays membership dues as prescribed by the Board of Directors, and meets any additional standards and procedures that may be prescribed from time to time." Bylaws, art. III, § 3.02. The Bylaws further specify that General Members are not "members" within the meaning of the Virginia Nonstock Corporation Act.[7] Bylaws, art. III, § 3.01. Initially, SFFA did not require a membership fee and a person became a member by providing their first and last name and e-mail address through the SFFA website, Blum Tr. at 130:16–133:22, but SFFA has since begun requiring an initial, one-time contribution of ten dollars, see [ECF No. 188, Ex. B at 2].

SFFA now has approximately 20,000 members, although for present purposes it only asserts associational standing based on the circumstances of thirteen of its members, most of whom have submitted signed declarations in support of SFFA's opposition to the motion to dismiss. See [ECF No. 204 at 6]; see also Exhibits to [ECF No. 205]. Seven of these 13 members are Asian-American students who applied to and were rejected from Harvard [ECF Nos. 205-26, 34, 35, 38, 39, 40, 41] and two are Asian-American high school students who intend to apply to Harvard in the future [ECF Nos. 205-36, 42]. Their declarations state that they have voluntarily joined SFFA, support its mission, have been in contact with SFFA, and had the opportunity to express their views on the direction of this litigation.

[7] The Virginia Nonstock Corporation Act defines a "member" as "one having a membership interest in a corporation in accordance with the provisions of its articles of incorporation or bylaws." Va. Code § 13.1-803. "Membership interest" is defined as the "interest of a member in a domestic or foreign corporation, including voting and all other rights associated with membership." Id.

### C. Applicability of the Indicia-of-Membership Test to SFFA

The thrust of Harvard's argument is that SFFA's General Members play no meaningful role in the organization and thus SFFA does not genuinely represent them such that it has associational standing to sue on their behalf. Harvard interprets the cases on associational standing following Hunt to require that an association's constituents exhibit "indicia of membership," in addition to the three Hunt prerequisites commonly cited in these cases, in order for the association to have standing to represent them.[8] See, e.g., [ECF Nos. 188 at 8; 220 at 7 n.5]. SFFA responds that the Court need not undertake an indicia-of-membership inquiry where an organization has actual members and satisfies the three Hunt prerequisites, but that it would nonetheless withstand such an inquiry.

Generally speaking, the indicia-of-membership test for associational standing purposes is applied when a case requires a functional analysis of whether an association has standing to sue on behalf of its constituents, often in situations when the organization does not have any actual members, such as the state agency involved in Hunt. See Hunt, 432 U.S. at 344 ("[W]hile the apple growers and dealers are not 'members' of the Commission in the traditional trade association sense, they possess all of the indicia of membership in an organization."); see also Funeral Consumers All., Inc. v. Serv. Corp. Int'l, 695 F.3d 330, 344 n.9 (5th Cir. 2012) ("If the association seeking standing does not have traditional members, as here, the association establishes its standing by proving that it has 'indicia of membership'. . . ." (citing Hunt, 432 U.S. at 344–45)); Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc., 675

[8] "'Individuals identified for standing purposes by an organization who are not legally 'members' [are] referred to as . . . 'constituents[.]'" Citizens Coal Council v. Matt Canestrale Contracting, Inc., 40 F. Supp. 3d 632, 639 (W.D. Pa. 2014) (quoting See Karl S. Coplan, Is Voting Necessary? Organization Standing and Non-Voting Members of Environmental Advocacy Organizations, 14 Southeastern Envtl. L.J. 47, 52 n. 26 (2005)).

F.3d 149, 159 (2d Cir. 2012) ("Hunt held that the Constitution requires that the constituents of a non-membership organization manifest the 'indicia of membership' for that organization to have associational standing to sue on their behalf."); Ball by Burba v. Kasich, No. 2:16-CV-00282, 2017 WL 1102688, at *13 (S.D. Ohio Mar. 23, 2017) ("With respect to the first [Hunt] prong, when an association lacks traditional members, the association may nonetheless have standing where its constituents 'possess all of the indicia of membership in an organization.'" (quoting Hunt, 432 U.S. at 344)); AARP v. U.S. Equal Emp't Opportunity Comm'n, No. CV 16-2113 (JDB), 2016 WL 7646358, at *5 (D.D.C. Dec. 29, 2016) ("[M]any of the cases that do discuss indicia of membership are those in which the organization at issue clearly does not have members."); Sylvia's Haven, Inc. v. Mass. Dev. Fin. Agency, 397 F. Supp. 2d 202, 207–08 (D. Mass. 2005) (conducting indicia-of-membership analysis in context of informal association, but concluding that it did not meet the other Hunt prerequisites). Thus, Hunt's indicia-of-membership test clearly applies in determining the associational standing of organizations that lack actual members.

It is less clear, however, whether Hunt's indicia-of-membership test can or should ever be undertaken in connection with associations that actually have identifiable members, such as SFFA, and, if so, under what circumstances. Several judges have noted that this issue is unresolved. See Citizens Coal Council v. Matt Canestrale Contracting, Inc., 40 F. Supp. 3d 632, 643 (W.D. Pa. 2014) ("It is questionable whether the 'indicia of membership' test applies at all where, as here, the organization is clearly a volunteer membership organization . . . ."); AARP, 2016 WL 7646358, at *5 ("There appears to be a gap in the associational standing case law about when or how the indicia of membership inquiry should be applied."). Without expressly addressing it, courts in this Circuit have routinely not applied the indicia-of-membership test, and

instead simply considered the three delineated Hunt prerequisites, when the associations were membership organizations. See, e.g., Merit Const. All. v. City of Quincy, 759 F.3d 122, 126–27 (1st Cir. 2014) (holding that organization had associational standing without conducting indicia-of-membership test); Camel Hair & Cashmere Inst. of Am., Inc., 799 F.2d at 10–12 (same); Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304, 325–28 (D. Mass. 2013) (same).[9] Furthermore, several judges have explicitly noted that Hunt's indicia-of-membership test applies *only* when an organization is a non-membership organization. See Brady Campaign to Prevent Gun Violence v. Salazar, 612 F. Supp. 2d 1, 29 (D.D.C. 2009) ("The inquiry into the 'indicia of membership'. . . is necessary only when an organization is not a 'traditional membership organization.'" (quoting Gettman v. DEA, 290 F.3d 430, 435 (D.C. Cir. 2002))); Cal. Sportfishing Prot. All. v. Diablo Grande, 209 F. Supp. 2d 1059, 1066 (E.D. Ca. 2002) ("[T]he 'indicia of membership' requirement in Hunt applies only to situations in which an organization is attempting to bring suit on behalf of individuals who are not members.").[10]

Although Harvard argues that Hunt and its progeny support the application of an indicia-of-membership test to all organizations asserting associational standing, regardless of whether they formally have members, the Court is not aware of any case that explicitly stands for this proposition. Under such a formulation, associational standing would turn on a subjective

---

[9] Harvard reconciles such cases with its legal position by claiming that courts can ignore the indicia-of-membership test when the issue of whether an association is a genuine membership organization is undisputed. This view, however, is not discussed or endorsed in the case law. Further, courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009).

[10] Harvard argues that both these cases are inapposite because they do not involve organizations in which members had as little control as in SFFA's case. [ECF No. 220 at 5]. Even if factually distinguishable, however, the legal reasoning is relevant.

evaluation of whether "members" are "genuine" members or not, with the organization's view of its own members being only one factor in the analysis.

In Hunt, the Supreme Court concluded that the Washington State Apple Advertising Commission was "not a traditional voluntary membership organization such as a trade association, for it ha[d] no members at all." Hunt, 432 U.S. at 342. The Commission was created by statute and was "composed of 13 Washington apple growers and dealers who [we]re nominated and elected within electoral districts by their fellow growers and dealers." Id. at 337. The Hunt Court nonetheless concluded that, although the Commission had no members "in the traditional trade association sense," its constituents "possess[ed] all the indicia of membership in an organization," which permitted associational standing. Id. at 344–45. There, the indicia of membership established that "the Commission represent[ed] the State's growers and dealers and provide[d] the means by which they express[ed] their collective views and protect[ed] their collective interests." Id. at 345.

The Court reads Hunt as standing for the following propositions: (1) a membership organization has standing to sue on behalf of its members if it satisfies the three Hunt prerequisites (in short, that at least one member has a personal injury-in-fact, germaneness, and no need for individual member participation); and (2) a non-membership organization might still have associational standing provided it has sufficient indicia of membership as more fully set forth in Hunt and its progeny. In introducing the indicia-of-membership test, Hunt expanded the category of organizations that could have associational standing, rather than limiting it.

Harvard cites Wash. Legal Found. v. Leavitt, 477 F. Supp. 2d 202, 208–09 (D.D.C. 2007) and Package Shop, Inc. v. Anheuser-Busch, Inc., No. 83-513, 1984 WL 6618, at *41 (D.N.J. Sept. 25, 1986) in support of the proposition that "courts have held that organizations referring to

their supporters as 'members' nevertheless lacked standing to represent those members in litigation." Harvard then cites the following cases to argue that courts have applied the indicia-of-membership test in determining whether organizations should be allowed "to sue on behalf of their members:" Friends of the Earth Inc. v. Chevron Chemical Co., 129 F.3d 826, 829 (5th Cir. 1997); Playboy Enters., Inc., 906 F. 2d at 25; and Concerned Citizens Around Murphy v. Murphy Oil USA, Inc., 686 F. Supp. 2d 663, 675–76 (E.D. La. 2010).

None of these cases require or even recommend the application of the indicia-of-membership test to all associational standing cases. For example, in Washington Legal Foundation v. Leavitt, an organization tried to assert associational standing on behalf of individuals who were not formally WLF members, which led the court to undertake a functional analysis of the organization's ability to sue on behalf of those individuals. 477 F. Supp. 2d at 208. Thus, the court applied the functional indicia-of-membership analysis in determining whether the organization could assert associational standing on behalf of non-members. Here, in contrast, SFFA seeks to represent individuals who are clearly members as defined by its Bylaws. The other cases similarly do not hold that the indicia-of-membership test applies to membership organizations like SFFA and the factual circumstances triggering the indicia-of-membership analysis in those cases are not present here.[11] See Package Shop, Inc., 1984 WL 6618, at *39–40 (using indicia-of-membership analysis to determine whether organization was truly a membership organization for purposes of the lawsuit where organization had been formed long before for another purpose and members had shown no support for organization's current purpose); Friends of the Earth, Inc., 129 F.3d at 829 ("[T]he 'indicia of membership' test is the

[11] Playboy Enterprises is inapposite because the First Circuit did not undertake the indicia-of-membership analysis as outlined in Hunt. Playboy Enters., Inc., 906 F.2d at 34–35 (rebutting party's argument that organization was just an "empty husk" and did not represent its members' interests, but without applying the Hunt indicia-of-membership test).

correct one to apply to determine whether a purported corporation, *despite the failure to meet state law requirements*, has 'members' whose interests it can represent in federal court." (emphasis added)); Concerned Citizens Around Murphy, 686 F. Supp. 2d at 675–77 (E.D. La. 2010) (holding that organization lacking some corporate formalities and formal membership structure had associational standing because it met Hunt's indicia-of-membership test).

Thus, the key cases Harvard relies on to support the proposition that Hunt's membership test should be applied to actual membership organizations all involved organizations that, unlike SFFA, asserted standing on behalf of non-members or had factual circumstances, not present here, that called for a functional analysis of its constituents. Further, the Court's conclusion—that the indicia-of-membership inquiry should not be applied to SFFA under the circumstances of this case—is consistent with the rationale underlying associational standing. In Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock, the Supreme Court reaffirmed the principles in Hunt and rejected the Secretary of Labor's argument that litigation based on associational standing would not guarantee adequacy of representation. 477 U.S. 274, 288–89 (1986). The Supreme Court noted that "the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." Id. at 290. The circumstances here do not call for a functional analysis of SFFA's membership. Where SFFA has clearly stated its mission in its Bylaws and website, where it has consistently, and recently, in highly public ways, pursued efforts to end alleged racial discrimination in college admissions through litigation, and where its members voluntarily associate themselves with the organization, it can be presumed for the purposes of standing that SFFA adequately represents the interests of its current members without needing to test this further based on the indicia-of-membership factors.

**D. Hunt's Prerequisites**

Therefore, it is sufficient, for associational standing in this case, if SFFA meets the three criteria outlined in Hunt: that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343. Because Harvard does not dispute that the three Hunt prerequisites are met here, apart from the argument that the indicia-of-membership test should be applied to determine whether the SFFA is a membership organization in the first place, the Court addresses them only briefly.

To satisfy the first Hunt requirement, "an organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." United Food and Com. Workers Union Local, 517 U.S. at 555. SFFA has provided the affidavits of a subset of its members, referred to as Standing Members, which demonstrate that at least some of these individuals, the rejected applicants, would have standing to sue on their own.[12] See Gratz v. Bollinger, 539 U.S. 244, 262–63 (2003) (holding that rejected applicant "able and ready" to transfer "has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions").

Second, the lawsuit is germane to SFFA's purpose because, as stated in its Bylaws, SFFA's mission is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law." Pursuing litigation to end alleged racial discrimination in higher education admission furthers that purpose.

---

[12] Because it was not raised by the parties and it is sufficient for associational standing that at least one member have standing to sue on his own, the Court does not address the issue of whether prospective college students, who have not yet applied, or the parents of applicants have standing to sue.

Finally, SFFA requests only declaratory and injunctive relief, and obtaining such relief, based on the claims in this case, would not require individual participation by its members. See Camel Hair & Cashmere Inst. of Am., Inc., 799 F.2d at 12 ("Actions for declaratory, injunctive and other forms of prospective relief have generally been held particularly suited to group representation."); see also Playboy Enters., 906 F.2d at 35 ("[J]ust because a claim may require proof specific to individual members of an association does not mean the members are required to participate as parties in the lawsuit."). Here, the injunctive and declaratory relief requested need not be tailored to or require any individualized proof from any particular member.

Although the Court disagrees with Harvard that Hunt and subsequent cases require that membership organizations be subjected to an indicia-of-membership test as a matter of course, it recognizes that there may be situations in the future in which the adequacy of an organization's representativeness is so seriously in doubt that the Court should consider Hunt's indicia-of-membership analysis or some other criteria to further evaluate the issue of associational standing. See Brock, 477 U.S. at 290 ("Should an association be deficient in this regard [*i.e.*, adequacy of representation], a judgment won against it might not preclude subsequent claims by the association's members without offending due process principles. And were we presented with evidence that such a problem existed either here or in cases of this type, we would have to consider how it might be alleviated."); see also Camel Hair & Cashmere Inst. of Am., Inc., 799 F.2d at 11. This is, however, not one of those situations. A substantial part of SFFA's mission is to end race-based admissions policies at American universities. Blum Tr. 47:16–25. SFFA clearly communicated its mission, which has stayed consistent since its founding, to prospective members through its website and in its outreach efforts. See, e.g., Blum Tr. 110:2–7. Further,

SFFA's endeavors—both here and in North Carolina—are highly public.[13] SFFA's members voluntarily join the organization, presumably knowing its purpose, by providing their name and contact information and paying a small fee.[14] See Friends of the Earth, 129 F.3d at 829. The Bylaws plainly lay out who qualifies as a member and what a member's role is and permit members to vote for one member of the Board of Directors, who participates in Board decisions, thereby granting members more direct access to SFFA's management. Further, to support the organization, members can voluntarily donate funds, in addition to the one-time, ten dollar contribution (required since June 2015) as a way of influencing the organization. Moreover, the voluntary nature of SFFA's membership constitutes a form of influence by the members that Harvard seems to underestimate. See Karl S. Coplan, Is Voting Necessary? Organization Standing and Non-Voting Members of Environmental Advocacy Organizations, 14 Southeastern Envtl. L.J. 47, 79 (2005) ("The ability of an organization's constituents to join or quit the group would appear to be a very effective means of ensuring the responsiveness of the organization's management—and also ensuring the 'concrete adverseness' required for organizational

[13] SFFA also initiated a case against the University of North Carolina and members of its board of governors, the University of North Carolina at Chapel Hill and members of its board of trustees and various school officials, alleging that the university's admissions process violates the Fourteenth Amendment of the U.S. Constitution and Title VI of the Federal Civil Rights Act of 1964. See Students for Fair Admissions, Inc. v. University of North Carolina, et al., No. 1:14-cv-00954 (M.D.N.C. Nov. 17, 2014), [ECF No. 1].

[14] The First Circuit has held that "[w]here . . . there are no allegations of manipulative abuse of the rule, the time-of-filing rule is inapposite to the federal question context." U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 5 (1st Cir. 2015), cert. denied, 136 S. Ct. 2517 (2016). Although Harvard suggests that the circumstances surrounding the amendment of the Bylaws might indicate manipulation, it stops short of actually alleging that it occurred in this case. The Court notes that the Bylaws were amended over a year *before* Harvard filed its motion to dismiss for lack of standing. Finally, where SFFA could move to dismiss the lawsuit and possibly re-file it to avoid this issue, dismissal on this ground would only waste judicial and party resources. Accordingly, the Court examines SFFA's current membership structure, rather than the structure that existed at the time the Complaint was filed, although it is not at all clear that the structures are so materially different as to significantly alter the analysis.

standing." (quoting Baker v. Carr, 369 U.S. 186, 204 (1962))). The Court also notes that courts have found associational standing even in situations where members had no voting majority. See, e.g., Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1111 (9th Cir. 2003).

Finally, SFFA has submitted declarations of certain members whom it specifically identifies for standing purposes. See Exhibits to [ECF No. 205]. Harvard attempts to minimize the relevance of these declarations by arguing that assessing the genuineness of SFFA's membership should be done with reference to the entire membership, rather than just a few select members. The Court has already highlighted certain general characteristics of SFFA that ensure its representation of its members as a whole. The individual declarations, which show that SFFA leadership communicates with members about this litigation and that the Standing Members have given input concerning the case, further bolster SFFA's claim that it is representing the interests of its members. See, e.g., [ECF No. 205-26]. Finally, the Standing Members each stated that the SFFA does in fact represent their interests. See, e.g., id.

The Court therefore finds that SFFA meets the prerequisites laid out in Hunt and has the associational standing necessary to pursue this litigation.

## V. CONCLUSION

Accordingly, Harvard's motion to dismiss for lack of subject matter jurisdiction [ECF No. 187] is DENIED.[15]

**SO ORDERED.**

Dated: June 2, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

[15] For substantially the same reasons presented in this Memorandum and Order and in light of the standard for a motion for reconsideration, the Court also denies Harvard's request to reconsider [ECF No. 154] its earlier discovery ruling bearing on SFFA's standing [ECF No. 151].

# Exhibit 21

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC,<br>Plaintiff,<br>v.<br>SWEETENER PRODUCTS, INC.,<br>Defendant. | Case No. 2:25-cv-00078-WBS-CSK<br><br>ORDER<br>(ECF Nos. 140, 141) |

Pending before the Court are (1) Defendant Sweetener Products, Inc.'s motion to compel further responses to written discovery from Plaintiff Central Valley Eden Environmental Defenders, LLC (ECF No. 140); and (2) Defendant's motion to compel further topics from Plaintiff's Rule 30(b)(6) witness (ECF No. 141).[1] On the Court's own motion, the Court submitted the motions upon the record and briefs on file and vacated the September 22, 2026 hearing. 9/9/2026 Order (ECF No. 149).

For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to compel further responses to written discovery, GRANTS Defendant's motion to compel further topics from Plaintiff's Rule 30(b)(6) witness, and

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

DENIES Plaintiff's request for attorney's fees and evidentiary sanctions.

## I. BACKGROUND

The Court refers to and incorporates the background provided in its May 15, 2026 and September 15, 2026 discovery orders, and limits this background section to providing updates occurring after these orders. *See* 5/15/2026 Order (ECF No. 102); 9/15/2026 Order (ECF No. 150).

On August 4, 2026, Defendant served additional sets of requests for admission ("RFA"), requests for production ("RFP"), and interrogatories to Plaintiff. Jt. Stmt. re Pl.'s Written Responses, Declaration of Demetria Mantalis, Exhs. 2, 3, 4 (ECF No. 146-1). On August 5, 2026, Plaintiff served blanket objections to Defendant's new RFAs, RFPs, and interrogatories on grounds that Defendant's supplemental discovery requests violated the Court's May 15, 2026 discovery order. *Id.*, Mantalis Decl., Exh. 5 (ECF No. 146-1). Plaintiff served similar objections and responses to each of Defendant's discovery requests on August 25, 2026. *Id.*, Mantalis Decl., Exhs. 6, 7, 8 (ECF No. 146-1). Although the parties were scheduled to meet and confer on September 2, 2026, Plaintiff canceled the meeting. *Id.* at 2; Jt. Stmt. re Pl.'s 30(b)(6) Dep. Topics at 2 (ECF No. 147); Jt. Stmt. re Pl.'s 30(b)(6) Dep. Topics, Declaration of Demetria Mantalis, Exh. 1 (ECF No. 147-1).

On September 1, 2026, Defendant filed its motion to compel further responses to written discovery and its motion to compel further topics from Plaintiff's Rule 30(b)(6) witness. (ECF Nos. 140, 141.) Plaintiff filed objections to both motions on September 2, 2026. (ECF Nos. 142, 143.) On September 3, 2026, Plaintiff also filed an ex parte application for a ruling on Plaintiff's objections; Defendant filed an opposition the following day. (ECF Nos. 144, 145.) The parties filed joint statements regarding each of Defendant's motions on September 8, 2026. Jt. Stmt. re Pl.'s Written Responses; Jt. Stmt. re Pl.'s 30(b)(6) Dep. Topics. Plaintiff filed objections to the exhibits in both joint statements. (ECF No. 148.) On September 9, 2026, the Court submitted Defendant's motions on the record and briefs on file and vacated the September 22, 2026 hearing.

9/9/2026 Order.

## II. LEGAL STANDARDS

"The district court is given broad discretion in supervising the pretrial phase of litigation." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citation modified). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Proportionality turns on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "[B]road discretion is vested in the trial court to permit or deny discovery. . . ." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

A party may serve requests to inspect, copy, test, or sample the following in the responding party's possession, custody, or control: "(A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form" or "(B) any designated tangible things." Fed. R. Civ. P. 34(a)(1)(A)-(B). A requesting party is entitled to inspect items within a responding party's possession, custody, or control, regardless of whether the requesting party possesses the same documents. Fed. R. Civ. P. 34(a). The responding party must respond in writing within thirty (30) days, unless otherwise agreed upon or ordered, after being served. Fed. R. Civ. P. 34(b)(2). A party must produce relevant, non-privileged documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). If a responding party objects, the objection "must state whether any responsive materials are being withheld on the basis of that objection[, and] an objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Further, the responding party must supplement a response if the

Case 2:25-cv-00278-WBS-SCK Document 48-21 Filed 11/06/26 Page 4 of 13

information sought is later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b). Fed. R. Civ. P. 33(a). Rule 33 requires that, unless otherwise agreed upon or ordered, the responding party must serve its answers and any objections to interrogatories within thirty (30) days after being served. Fed. R. Civ. P. 33(b)(2). Parties must respond to the fullest extent possible, and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(3)-(4). In general, a responding party is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, 2010 WL 3341939, at *3 (E.D. Cal. Aug. 24, 2010) (citing *L.H. v. Schwarzenegger*, 2017 WL 2781132, at *2 (E.D. Cal. Sep. 21, 2007)). Rule 33(b) requires verification by the person who is responding (the party) to the interrogatory, not just a signature from the attorney. Fed. R. Civ. P. 33(b). Further, the responding party must supplement a response if the information sought is later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

A party may serve requests for admission on any matters within the scope of Rule 26(b)(1) relating to "facts, the application of law to fact, or opinions about either"; and "the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). A matter is deemed admitted unless a written answer or objection is served within thirty (30) days, unless otherwise agreed upon or ordered, after the requests were served. Fed. R. Civ. P. 36(a)(3).

"A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1).

The Federal Rules also grant a party the power to depose "one or more officers, directors, or managing agents" of an organization "[or] other persons who consent to testify on its behalf," as designated by the organization. Fed. R. Civ. P. 30(b)(6). This Rule requires the organization to "set out the matters on which each person designated

will testify," and after a 2020 amendment, also requires the parties to confer about the matters for examination. *Id.*

Rule 30(b)(6) provides that the deposing party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "While 30(b)(6) topics cannot be vague, 'the reasonable particularity requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition.'" *Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*, 2019 WL 246628, at *2 (E.D. Cal. Jan. 17, 2019) (quoting *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007)). Nonetheless, "[b]ecause Rule 30(b)(6) places substantial responsibilities and burdens on corporate designees, for the rule to function effectively, a requesting party must 'designate with painstaking specificity, the particular subject areas that intended to be questioned.'" *Verduzco v. Con Agra Foods Packaged Foods, LLC*, 2024 WL 1796080, at *1 (E.D. Cal. Apr. 25, 2024) (quoting *Preservation Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965163, at *2 (C.D. Cal. Oct. 19, 2020)). "At the same time, a party responding to discovery has an obligation to construe discovery requests in a reasonable manner. . . . Therefore, a 30(b)(6) topic is not objectionable to the extent that it may be reasonably construed to seek relevant information capable of being addressed in a deposition." *Luna v. Universal City Studios LLC*, 2015 WL 13655668, at *6 (C.D. Cal. Feb. 10, 2015) (citation modified).

"The law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation. Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition." *Sheikh v. Spinnaker Ins. Co.*, 2025 WL 1768090, at *4 (E.D. Cal. June 26, 2025) (citation modified). "It is not expected that the designee have personal knowledge as to all relevant facts; however, the designee must become educated and gain the requested knowledge to the extent reasonably available." *Garcia v. LQ Mgmt., LLC*, 2022 WL

Case 2:25-cv-00278-WBS-SCK Document 18-21 Filed 11/6/26 Page 6 of 13

1115207, at *8 (C.D. Cal. Mar. 29, 2022). "If the entity no longer employs anyone knowledgeable about the designated matter, it must prepare a representative, using documents, former employees or other sources, to testify at the deposition." *Id.*; *see also Sunterra Corp. v. Perini Bldg. Co.*, 2009 WL 453054, at *2 (E.D. Cal. Feb. 23, 2009) ("Plaintiffs are not exonerated from their need to designate [Rule 30(b)(6) witnesses] simply because certain persons are no longer within Plaintiffs' control.").

A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1); E.D. Cal. L.R. 251.

The moving party bears the burden to "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013). Local Rule 251 governs motions to compel and requires the parties to confer and attempt to resolve their discovery differences. If there has been "a complete and total failure to respond to a discovery request or order," the moving party may bring its motion on fourteen (14) days' notice and the requirement for a Joint Statement re Discovery Disagreement is excused. E.D. Cal. L.R. 251(e).

If a court grants the motion to compel or if the disclosure or requested discovery is provided after the motion was filed, then the court must order the party "whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court must not award expenses if (1) "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action"; (2) "the opposing party's nondisclosure, response, or objection was substantially justified"; or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). The burden is on the losing party to prove that its position was substantially justified. *See R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

## III. DISCUSSION

Before addressing Defendant's motions to compel, the Court first addresses Plaintiff's objections filed before and after the parties' joint statements. (ECF Nos. 142, 143, 148.)

### A. Plaintiff's Objections

On September 2, 2026, Plaintiff filed objections to each of Defendant's motions to compel. (ECF Nos. 142, 143.) First, Plaintiff objects to Defendant's motions on grounds that they were filed in violation of Federal Rule of Civil Procedure 37(b) and the Court's May 15, 2026 Order, which limited the topics for the Rule 30(b)(6) deposition of Plaintiff. (ECF No. 142 at 1; ECF No. 143 at 1.) Second, Plaintiff objects that Defendant's counsel failed to meet and confer with Plaintiff when Defendant filed its motions one day before the parties' scheduled meet and confer. (ECF No. 142 at 2; ECF No. 143 at 2.)

Plaintiff's objections lack merit. First, as discussed in greater detail below, Defendant's motions do not violate the Court's May 15, 2026 Order. The Court also notes that the May 15, 2026 Order relates to Rule 30(b)(6) deposition topics, and it is unclear how a motion to compel written discovery could violate that Order. Second, this district's local rules require that a discovery motion "shall not be heard unless (1) the parties have conferred and attempted to resolve their differences, and (2) the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement." E.D. Cal. L.R. 251(b) (emphasis added); *see also* E.D. Cal. L. R. 251(c). "Counsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion in a good faith effort to resolve the differences that are the subject of the motion." E.D. Cal. L.R. 251(b) (emphasis added). Here, both parties confirmed that they had scheduled to meet and confer on September 2, 2026, which was before the September 22, 2026 hearing date on Defendant's motions. (*See* ECF Nos. 140 at 2; 141 at 3; 142 at 2; 143 at 2.) Thus, Defendant's motions are not procedurally improper on the basis that Defendant filed them before the parties were scheduled to meet and confer. The parties also do not dispute that it was Plaintiff who

canceled the parties' September 2, 2026 meet and confer. Accordingly, the Court overrules Plaintiff's meet-and-confer objections and finds it appropriate to proceed to the parties' arguments in their joint statements.

Plaintiff also filed an ex parte application requesting the Court rule on these objections before the parties filed their joint statements. (ECF No. 144.) Because the parties have already prepared and filed joint statements, Plaintiff's application is denied as moot.

Finally, Plaintiff filed an objection after the parties submitted their joint statements, arguing that the exhibits attached to the Declarations of Demetria Mantalis (ECF Nos. 146-1, 147-1) violate the Court's May 5, 2026 Order requiring the parties in future discovery disputes to attach "one (1) set of joint exhibits submitted with the motion." (ECF No. 148); *see also* 5/5/2026 Order (ECF No. 93). Although the Court notes that the exhibits are attached to the Mantalis Declarations rather than as separate attachments to the joint statements themselves, Plaintiff's objection does not indicate that Plaintiff was prevented from proposing its own exhibits to be submitted with the parties' joint statements. Therefore, the Court overrules Plaintiff's objection and will consider the exhibits.

**B. Defendant's Motion to Compel Further Written Discovery**

Defendant moves to compel Plaintiff's further responses to Defendant's third set of RFAs, second set of interrogatories, and third set of RFPs. Jt. Stmt. re Pl.'s Written Responses at 3-6. Defendant asserts that these written discovery requests seek information related to Plaintiff's "business purposes and mission," which is relevant to assess Plaintiff's Article III organizational standing to bring this action. *Id.* at 3, 7. Defendant maintains that none of its requests violate the Court's May 15, 2026 Order. *Id.* at 8-9. Defendant also challenges Plaintiff's attorney-client privilege objections. *Id.* at 10.

In opposition, Plaintiff contends that the requests violate the Court's May 15, 2026 Order by seeking information about Plaintiff's operations and members rather than its business purpose and mission. *Id.* at 14. Plaintiff argues it has already provided

sufficient information about its business purpose and mission to satisfy its burden on standing pursuant to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). *Id.* at 14-18. According to Plaintiff, Defendant's requests are irrelevant because the information sought does not support a legitimate basis to challenge Plaintiff's standing. *Id.* at 18-20.

To invoke organizational standing[2] under Article III, "an organization must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. at 343). In *Students for Fair Admissions*, the Supreme Court clarified the holding in *Hunt*, which in turn involved a suit brought by a state agency. *Students for Fair Admissions*, 600 U.S. at 200-01 (citing *Hunt*, 432 U.S. at 336-44). Because the state agency did not have traditional membership, the Court in *Hunt* examined whether the organization possessed "indicia of membership" to qualify for organizational standing. *Students for Fair Admissions*, 600 U.S. at 200-01 (citing *Hunt*, 432 U.S. at 336-44). However, in *Students for Fair Admissions*, the Court held that "[t]he indicia of membership analysis employed in *Hunt* has no applicability" where a plaintiff organization "is indisputably a voluntary membership organization with identifiable members." *Students for Fair Admissions*, 600 U.S. at 201. Thus, "[w]here . . . an organization has identified members and represents them in good faith," the Court did not "require further scrutiny into how the organization operates." *Id.*

Accordingly, the Court stated in its May 15, 2026 Order:

---

[2] For purposes of this Order, "organizational standing" is interchangeable with "associational standing" or "representational standing." *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (an organization's "standing solely as the representative of its members. . . . is known as representational or organizational standing") (citation modified).

> Defendant is therefore entitled to some discovery regarding Plaintiff's organizational standing under *Hunt*. However, Defendant also concedes that, under *Students for Fair Admissions*, "organizations that have identified their members and their representation of those members in good faith [may] avoid being challenged on how the organization operates." [Citation omitted.] Thus, the Court rules that Defendant[] may seek Rule 30(b)(6) testimony about Plaintiff's business purpose and mission, but sustains Plaintiff's relevance objection as to testimony about Plaintiff's organizational structure and membership.

5/15/2026 Order at 14.

The Court applies the foregoing standard in its May 15, 2026 Order to the discovery requests sought in Defendant's instant motion to compel further responses to written discovery. As a result, Defendant's motion to compel is denied in part as to requests that seek information about Plaintiff's "organizational structure and membership" or "how the organization operates"; and Defendant's motion to compel is granted in part as to written discovery regarding Plaintiff's "business purpose and mission."

Before proceeding, the Court notes that its May 15, 2026 Order relied on the assumption that Plaintiff has identified its members and represents them in good faith pursuant to *Students for Fair Admissions*. *See* 5/15/2026 Order at 14; *Students for Fair Admissions*, 600 U.S. at 201. That assumption is now being challenged in Defendant's pending motion to dismiss for lack of Article III standing. (*See* ECF No. 151 at 2-3, 9-12.) It appears Defendant did not raise this contention in the parties' discovery dispute joint statement regarding Defendant's motion to compel further written discovery. *See* Jt. Stmt. re Pl.'s Written Responses. However, in light of Defendant's arguments in the pending motion to dismiss, the Court's denial of certain requests as set forth below is without prejudice to renewal should the district judge later determine, on review of Defendant's motion to dismiss, that Plaintiff has not identified members whom Plaintiff represents in good faith, or if the district judge determines that Defendant is entitled to additional discovery related to standing.

/ / /

1. Discovery Requests Related to Plaintiff's Business Purpose and Mission

The Court GRANTS Defendant's motion to compel as to the following requests, which seek information about Plaintiff's business purpose and mission:

> Interrogatory No. 16: Describe how YOUR BUSINESS PURPOSE AND MISSION has been funded from January 1, 2021, to the present.
>
> RFA No. 29: Admit that YOU did not utilize surveys, questionnaires, polling, or similar information gathering models when determining YOUR BUSINESS PURPOSE AND MISSION.
>
> RFA No. 30: Admit that YOU do not utilize surveys, questionnaires, polling, or similar information to determine how to achieve YOUR BUSINESS PURPOSE AND MISSION.
>
> RFA No. 32: Admit that YOU have not adopted or published any strategic plan, policy agenda, or written priorities, describing how YOU intend to advance YOUR BUSINESS PURPOSE AND MISSION.
>
> RFA No. 35: Admit that YOU do not have established written procedures or publicly available policies governing how YOU achieve the goals of YOUR BUSINESS PURPOSE AND MISSION.
>
> RFP No. 73: ALL DOCUMENTS that show any surveys, questionnaires, polling, or similar information-gathering methods used by YOU from January 1, 2021, to the present, in determining how to carry out YOUR BUSINESS PURPOSE AND MISSION.
>
> RFP No. 75: All DOCUMENTS including, policy agendas, annual plans, work plans, mission statements, by-laws, or similar DOCUMENTS describing how YOU advance YOUR BUSINESS PURPOSE AND MISSION with NON-LITIGATION ACTIVITIES from January 1, 2021, to the present.
>
> RFP No. 76: All DOCUMENTS including, policy agendas, annual plans, work plans, mission statements, by-laws, or similar DOCUMENTS, describing YOUR BUSINESS PURPOSE AND MISSION from January 1, 2021, to the present.

Jt. Stmt. re Pl.'s Written Responses at 3, 4, 6. These requests are permissible because they seek information about Plaintiff's business purpose and mission. *See* 5/15/2026 Order at 14; *Students for Fair Admissions*, 600 U.S. at 201. Although Plaintiff objected to these requests on the basis of attorney-client privilege, Plaintiff has not established that

any of these requests categorically seek privileged communications. *See Greer v. County of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) ("Generally, a party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication.") (citation modified). Plaintiff has therefore not met its burden to establish privilege.

Accordingly, Plaintiff is ordered to produce responsive documents by October 21, 2026.

2. <u>Discovery Requests Related to Plaintiff's Operations</u>

The Court DENIES Defendant's motion to compel as to the following requests, which seek information as to activities and events, going to Plaintiff's operation:

> <u>RFA No. 28</u>: Admit that YOU have not conducted any NON-LITIGATION ACTIVITY gatherings, assemblies, town halls, or public forums in furtherance of YOUR BUSINESS PURPOSE AND MISSION from January 1, 2021, to present.

> <u>RFA No. 31</u>: Admit that YOU did not host, sponsor, or organize, any NON-LITIGATION ACTIVITY educational programs, workshops, conferences, or public EVENTS in furtherance of YOUR BUSINESS PURPOSE AND MISSION, from January 1, 2026, to the present.

> <u>RFA No. 33</u>: Admit that YOU have not maintained any NON-LITIGATION ACTIVITY program or initiative dedicated to carrying out YOUR BUSINESS PURPOSE AND MISSION from January 1, 2021, to the present.

> <u>RFA No. 34</u>: Admit that YOU did not publish or disseminate newsletters, reports, annual reports, policy updates, or other similar materials describing activities undertaken in furtherance of YOUR BUSINESS PURPOSE AND MISSION, from January 1, 2021, to the present.

> <u>RFA No. 36</u>: Admit that YOU have not engaged in any NON-LITIGATION ACTIVITY lobbying, legislative advocacy, public education, community outreach, or other public activities in furtherance of YOUR BUSINESS PURPOSE AND MISSION, from January 1, 2026, to the present.

> <u>Interrogatory No. 14</u>: Describe YOUR core NON-LITIGATION ACTIVITY business activities from January 1, 2021, to the present.

> <u>Interrogatory No. 15</u>: Describe all NON-LITIGATION ACTIVITY, projects, or EVENTS, undertaken by YOU to further YOUR BUSINESS PURPOSE AND MISSION within the past five years, including: (a) The nature, date,

and location of each EVENT; (b) The extent to which people participated in the each EVENT; and (c) The method by which people were notified of the EVENT.

Interrogatory No. 17: Describe what resources have supported YOUR NON-LITIGATION ACTIVITIES from January 1, 2021, to the present.

RFP No. 72: ALL DOCUMENTS that show any public meetings, assemblies, town halls, public forums, or similar EVENTS conducted by YOU from January 1, 2021, to the present, in furtherance of YOUR BUSINESS PURPOSE AND MISSION.

RFP No. 74: All DOCUMENTS establishing any NON-LITIGATION ACTIVITY educational programs, workshops, conferences, seminars, public EVENTS, or similar activities organized, sponsored, or hosted by YOU from January 1, 2021, to the present, in furtherance of YOUR BUSINESS PURPOSE AND MISSION.

RFP No. 77: All DOCUMENTS identifying any NON-LITIGATION ACTIVITY programs, initiatives, campaigns, or projects undertaken by YOU, from January 1, 2021, to the present in furtherance of your BUSINESS PURPOSE AND MISSION.

RFP No. 78: All newsletters, annual reports, activity reports, policy papers, educational materials, press releases, website content, or similar publications created or disseminated by YOU from January 1, 2021, to the present, concerning activities undertaken in furtherance of YOUR BUSINESS PURPOSE AND MISSION.

Jt. Stmt. re Pl.'s Written Responses at 3-4, 5-6.

These requests seek discovery relating to Plaintiff's operations through Plaintiff's activities and events. Defendant argues that the Court's May 15, 2026 Order permits Defendant to seek information about Plaintiff's business purpose and mission, which includes "whether and how Plaintiff pursues the purpose and mission it claims." *See* Jt. Stmt. re Pl.'s Written Responses at 7-9. Taken to its logical conclusion, however, Defendant's argument could permit discovery into almost any facet of Plaintiff's organization because of the ability to relate or connect most issues to an organization's business purpose and mission. The Court draws the line at activities and events, which are more fairly attributed to an organization's operations. As noted above, the Court's denial is without prejudice to renewal should the district judge determine that Plaintiff has

not identified members whom Plaintiff represents in good faith or that Defendant is entitled to additional discovery related to standing.

### C. Defendant's Motion to Compel Further Rule 30(b)(6) Deposition Topics

Defendant seeks to modify the May 15, 2026 Order and compel Plaintiff to produce a Rule 30(b)(6) witness to address the following deposition topics that the Court previously denied in the May 15, 2026 Order:

> Topic 2: Any sampling, monitoring, inspection, or other investigative activities by YOU relating to the allegations in the Complaint.
>
> Topic 5: The basis of the allegations in the COMPLAINT that SWEETENER DISCHARGES contaminated storm water.
>
> Topic 7: The basis of the allegations in the COMPLAINT that DISCHARGES of stormwater from the FACILITY reach a Water of the United States.

Jt. Stmt. re Pl.'s 30(b)(6) Dep. Topics at 3.

"A district court has the power to modify or lift a protective order that it has entered." *Tumbling v. Merced Irr. Dist.*, 2010 WL 1131172, at *1 (E.D. Cal. Mar. 24, 2010) (citing *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir.1995)). "[T]here must be good cause shown before a protective order can be vacated." *Tumbling*, 2010 WL 1131172, at *2.

Previously, the Court's May 15, 2026 Order denied Defendant's motion to compel and granted Plaintiff's motion for a protective order as to these topics because they constituted premature expert discovery. 5/15/2026 Order at 11-13. This conclusion was based on Plaintiff's representation that Plaintiff "[would] be disclosing its expert witness(es) and reports on or before the due date of August 14, 2026, after which Defendant may notice the deposition of EDEN's expert(s) to obtain testimony[.]" (ECF No. 89 at 8 (emphasis in original); *see also id.* at 13.) As further example, at the May 5, 2026 hearing on the Rule 30(b)(6) deposition of Plaintiff, Plaintiff's counsel stated that "the sampling, the monitoring, and the inspection in Number 2 is absolutely going to be

something that the Plaintiff's expert is going to testify to." 5/5/2026 Mot. Hr'g Tr. at 32:9-12 (ECF No. 100). Plaintiff likewise stated that Topic 5 and Topic 7 related to expert opinion. *Id.* at 32:16-17, 33:23-34:3. However, Defendant argues, because the deadline to designate an expert witness has now passed and Plaintiff has failed to designate an expert witness, Defendant is entitled to obtain deposition testimony on these topics from Plaintiff's Rule 30(b)(6) witness. Jt. Stmt. re Pl.'s 30(b)(6) Dep. Topics at 4-5. The Court agrees and, finding good cause to modify its May 15, 2026 Order, concludes that Defendant may depose Plaintiff as to Topics 2, 5, and 7.

Plaintiff's one-page opposition in the parties' discovery dispute joint statement provides cursory arguments. First, Plaintiff argues that Defendant's motion to compel is "procedurally improper" because "[a] Protective Order limiting discovery under Rule 26 cannot be 'compelled.'" *Id.* at 6. Plaintiff also refers to its prior objections to Defendant's motion at ECF No. 143. *Id.* It is unclear what Plaintiff is trying to argue. In any event, the Court construes Defendant's motion as a motion to modify the Court's May 15, 2026 Order, which is procedurally proper for Defendant to bring. *See id.* at 3-5 (Defendant discussing standard to modify protective orders).

Second, Plaintiff objects to the substance of Topics 5 and 7 as improper expert testimony. *Id.* However, as discussed above, Plaintiff has forfeited its ability to rely on an expert witness and can no longer object that the deposition topics prematurely seek expert testimony.

Third, Plaintiff argues it has already provided documentary discovery pertaining to Topic 2. *Id.* This argument fails because Defendant "has a right to verify and explore information produced during discovery through a 30(b)(6) deposition." *Valdez v. Leeds*, 2019 WL 316818, at *2 (E.D. Cal. Jan. 24, 2019).

**D. Attorney's Fees**

Plaintiff requests attorney's fees pursuant to Rule 37(a)(5)(B) and Rule 37(b)(2)(C), apparently assuming the Court would deny Defendant's motion to compel additional written discovery. Jt. Stmt. re Pl.'s Written Responses at 20. Plaintiff also

seeks "an evidentiary sanction that Defendant is precluded from seeking further discovery related to EDEN's associational standing." *Id.* Defendant does not appear to seek expenses for either of its motions to compel.

Under Rule 37, if a motion to compel is granted in part and denied in part, a court <u>may</u> apportion the "reasonable expenses" for the motion. Fed. R. Civ. P. 37(a)(5)(C). A court may also impose sanctions, including attorney's fees and evidentiary sanctions, for failure to comply with a court order. Fed. R. Civ. P. 37(b)(2).

Here, because the Court is granting-in-part and denying-in part Defendant's motion to compel additional written discovery, the Court declines to award expenses to either party on that motion. Further, Defendant has not violated any court order to justify monetary or evidentiary sanctions pursuant to Rule 37(b)(2). Therefore, the parties shall bear their own fees and costs related to Defendant's motions.

**IV. CONCLUSION**

In conclusion, IT IS HEREBY ORDERED that:

1. Plaintiff's ex parte application for a ruling on Plaintiff's objections to Defendant's motions to compel (ECF No. 144) is DENIED as moot.
2. Defendant's motion to compel further responses to written discovery (ECF No. 140) is GRANTED IN PART and DENIED IN PART as set forth above. Plaintiff must produce responsive documents ordered by October 21, 2026.
3. Defendant's motion to compel further topics from Plaintiff's Rule 30(b)(6) witness (ECF No. 141) and modify the Court's May 15, 2026 Order as to Topics 2, 5, and 7 is GRANTED.
4. Plaintiff's request for attorney's fees and evidentiary sanctions (ECF No. 146) is DENIED.

Dated: October 7, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, cent.0078.25

**Exhibit 22**

**Subject:** Central Valley Eden Environmental Defenders LLC v. Sweetener Products Matter
**Date:** Tuesday, October 27, 2026 at 12:27:55 PM Pacific Daylight Time
**From:** Demetria Mantalis
**To:** Natalie Marcin, jcgm, craigabrandt
**CC:** Jennifer Novak

Hi all,

I hope you are doing well. I am reaching out to see if anyone has clarity on the Central Valley Eden v. Sweetener Products matter. As you know, you have all previously been involved in the case in some capacity, and some of you still appear to represent Central Valley Eden in other matters. Mr. Brumm has been listed as inactive with the State Bar, and the emails for Central Valley Eden no longer appear to work. Every time we try to email "edendefenders.org" addresses, we receive error messages. This has made it impossible to contact anyone for Plaintiff, and it's unclear whether Plaintiff is still receiving filing notifications from the Court.

Can you please confirm whether any of you intend to represent Plaintiff in this matter, or whether you are aware of whether Plaintiff intends to continue pursuing this matter?

Thanks!

Regards,
Demetria Mantalis
Associate Attorney
**Law Office of Jennifer F. Novak**
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
(310) 693-0775 office
(412) 498 4415 cell
www.jfnovaklaw.com
Not sure what an environmental lawyer can do for you? To schedule a 15 min no cost consultation, click here:
https://scheduler.zoom.us/jennifer-novak-fdf668/15-minute-free-discovery-call
The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify your representative immediately and delete this message from your computer. Thank you.

**Subject:** Re: Central Valley Eden Environmental Defenders LLC v. Sweetener Products Matter
**Date:** Tuesday, October 27, 2026 at 2:50:47 PM Pacific Daylight Time
**From:** Julio Gutierrez
**To:** Demetria Mantalis
**CC:** Natalie Marcin, craigabrandt, Jennifer Novak

External (jcgm@tubrujulalegal.net)

Graymail Spam Phish More... FAQ Protection by INKY

Good afternoon Demetria,

I have withdrawn from this matter and therefore no longer represent Eden. I am uncertain whether the Plaintiff intends to continue pursuing this matter.

Best,

Julio C. Gutierrez-Morales, Esq.
**Tu Brújula Legal PC**
350 E. St, Suite 205
Santa Rosa, CA 95404
O: 707-559-0085
C: 707-791-5659

-=-=-=-=-=-=-=-=-=-=-=-=-=-

***CONFIDENTIALITY NOTICE:*** *This email may contain confidential and attorney work-product information intended only for the recipient. Unauthorized review, use, or disclosure is prohibited by law. If you received this email in error, please notify the sender and delete this message.*

On Tue, Oct 27, 2026 at 12:28 PM Demetria Mantalis <demetria@jfnovaklaw.com> wrote:

> Hi all,
>
> I hope you are doing well. I am reaching out to see if anyone has clarity on the Central Valley Eden v. Sweetener Products matter. As you know, you have all previously been involved in the case in some capacity, and some of you still appear to represent Central Valley Eden in other matters. Mr. Brumm has been listed as inactive with the State Bar, and the emails for Central Valley Eden no longer appear to work. Every time we try to email "edendefenders.org" addresses, we receive error messages. This has made it impossible to contact anyone for Plaintiff, and it's unclear whether Plaintiff is still receiving filing notifications from the Court.

Can you please confirm whether any of you intend to represent Plaintiff in this matter, or whether you are aware of whether Plaintiff intends to continue pursuing this matter?

Thanks!

Regards,
Demetria Mantalis

Associate Attorney
**Law Office of Jennifer F. Novak**
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
(310) 693-0775 office
(412) 498 4415 cell
www.jfnovaklaw.com

Not sure what an environmental lawyer can do for you? To schedule a 15 min no cost consultation, click here:
https://scheduler.zoom.us/jennifer-novak-fdf668/15-minute-free-discovery-call

The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify your representative immediately and delete this message from your computer. Thank you.

**Subject:** Re: Central Valley Eden Environmental Defenders LLC v. Sweetener Products Matter
**Date:** Tuesday, October 27, 2026 at 1:00:36 PM Pacific Daylight Time
**From:** Natalie Marcin
**To:** Demetria Mantalis
**CC:** Jennifer Novak

**Caution**: External (natalie@earthlawattorney.com)
First-Time Sender Details

Safe Spam Phish More... FAQ Protection by INKY

Hi Demetria,

I do not represent Eden in this matter, nor do I intend to.

Best,

On Tue, Oct 27, 2026 at 12:28 PM Demetria Mantalis <demetria@jfnovaklaw.com> wrote:

> Hi all,
>
> I hope you are doing well. I am reaching out to see if anyone has clarity on the Central Valley Eden v. Sweetener Products matter. As you know, you have all previously been involved in the case in some capacity, and some of you still appear to represent Central Valley Eden in other matters. Mr. Brumm has been listed as inactive with the State Bar, and the emails for Central Valley Eden no longer appear to work. Every time we try to email "edendefenders.org" addresses, we receive error messages. This has made it impossible to contact anyone for Plaintiff, and it's unclear whether Plaintiff is still receiving filing notifications from the Court.
>
> Can you please confirm whether any of you intend to represent Plaintiff in this matter, or whether you are aware of whether Plaintiff intends to continue pursuing this matter?
>
> Thanks!

Regards,
Demetria Mantalis

Associate Attorney
**Law Office of Jennifer F. Novak**
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
(310) 693-0775 office
(412) 498 4415 cell
www.jfnovaklaw.com

Not sure what an environmental lawyer can do for you? To schedule a 15 min no cost consultation, click here:
https://scheduler.zoom.us/jennifer-novak-fdf668/15-minute-free-discovery-call

The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify your representative immediately and delete this message from your computer. Thank you.

--
Natalie Marcin
EarthLaw Attorney PC
301.751.7554
natalie@earthlawattorney.com

# Exhibit 23

Case 2:25-cv-00078-WBS-CSK Document 48-1 Filed 11/16/26 Page 2 of 3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SWEETENER PRODUCTS, INC.,<br><br>Defendant. | No. 2:25-cv-00078 WBS CSK<br><br><u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u> |

----oo0oo----

Defendant has moved to dismiss plaintiff's Clean Water Act suit against it, arguing that plaintiff lacks associational standing. (Mot. (Docket No. 151-1).)

On October 7, 2026, plaintiff requested an order terminating its attorney of record. (Req. for Order Terminating Att'y of R. (Docket No. 162).) It also requested a 14-day stay of the entire action or, alternatively, a continuance of all impending due dates. (<u>Id.</u>) On October 14, the court denied those requests because plaintiff had not complied with Local Rule

182(d)'s noticed-motion requirements. (Docket No. 166.) Later that same day, plaintiff's counsel submitted notice that his California bar license is inactive. (Notice of Inactive State Bar License (Docket No. 167).)

Because plaintiff is not a natural person, it may appear only through counsel. Rowland v. Cal. Men's Colony, 506 U.S. 194, 202 (1993); L.R. 183(a). Its attorney of record cannot practice law before this court while his license is inactive. L.R. 180(b)-(c). More than a month has now passed since plaintiff requested a 14-day stay to retain new counsel and it has still made no successful effort to do so. (Req. for Order at 2.)[1]

No opposition to defendant's motion has been filed on behalf of plaintiff to defendant's motion, and no appearance was made on its behalf at the November 9, 2026 hearing. (Notice of Failure to File Opposition (Docket No. 168); Hr'g Minutes (Docket No. 170).) The court considers the lack of any opposition to the motion to constitute a failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure. Moreover, from the court's review of the moving papers, defendant's motion appears to have merit. It is not for the court to independently research the

---

[1] On October 10, defendant requested judicial notice of a document indicating that plaintiff had dissolved itself on October 7. (Req. for Judicial Notice Ex. A (Docket No. 163).) Nevertheless, under California law, a dissolved LLC "continues to exist for the purpose of winding up its affairs," and "[n]o action or proceeding to which a limited liability company is a party abates by the filing of a certificate of cancellation for the limited liability company or by reason of proceedings for its winding up and dissolution." Cal. Corp. Code § 17707.06(a)-(b). The law of the forum state determines an LLC's capacity to sue in federal court. Fed. R. Civ. P. 17(b)(3).

issues to find if any meritorious arguments might be made in opposition to the motion.

IT IS THEREFORE ORDERED that defendant's unopposed motion to dismiss (Docket No. 151) be, and the same hereby is, GRANTED. This action is DISMISSED. The Clerk of Court shall enter judgment accordingly and close the case.

Dated: November 12, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

# Exhibit 24

Adam D. Brumm, Esq. SB# 257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA 95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, a California limited liability company<br><br>EDEN,<br><br>vs.<br><br>SWEETENER PRODUCTS, INC.<br><br>Defendant. | Case No.: 2:25-cv-00078-WBS-CSK<br><br>**JOINT STATEMENT RE: DISCOVERY DISAGREEMENT ON RULE 30(b)(6) DEPONENT (Local Rule 251)**<br><br>Judge: Hon. Chi Soo Kim<br><br>Date: May 5, 2026<br>Time: 10:00 a.m.<br>Ctrm: 25 |

# PLAINTIFF'S POSITION

## I. Summary of Plaintiff's Position

This is an environmental CWA citizen suit. Defendant Sweetener Products, Inc. ("Defendant") has noticed a Rule 30(b)(6) deposition of Plaintiff Central Valley Eden Environmental Defenders ("EDEN") in bad faith; to gain an unfair advantage in this litigation by using confidential and attorney-client privileged information, to harass and annoy EDEN, to cause embarrassment and undue burden to EDEN, and to further delay a judicious resolution of this matter. Further, all nine of the topics proposed by Defendant for EDEN's Rule 30(b)(6) deposition lack the required specificity, exceed the scope of FRCP 26(b)(1), involve matters that are solely within the purview of experts, or involve discovery of information protected from disclosure.

## II. Meet and Confer Conferences

The parties discussed EDEN's objections to each of the nine topics during two separate lengthy conferences. EDEN also served Defendant with three separate written objections to the Rule 30(b)(6) deposition. EDEN's opposition and objections to the Rule 30(b)(6) deposition are identical to its grounds for a protective order.

## III. Facts Relevant to this Matter

### A. California's Industrial General Permit

The law is well-settled that any citizen may pursue a California industrial business under the CWA for violating standard conditions of California's Industrial General Permit ("General Permit").

On July 1, 2015, a new version of the General Permit was adopted that contained substantial revisions. Two of the most significant changes in the new Permit were (1) a requirement that all Permittees upload compliance documents[1] to a publicly accessible database maintained by the Water Board called "SMARTS"; and (2) rescission of the provision that annual average exceedances of pollutants in a Permittee's tested stormwater in excess of numeric action limits established by the EPA ("Exceedances") constituted a per se violation of the General Permit.

[1] Compliance documents required to be uploaded to SMARTS include Applications for Permit Coverage, SWPPPs, Site Maps and Annual Reports; Stormwater Sampling Analyses Reports, including entry of the raw sampling result data and uploading laboratory reports; Water Board violations and responses to Water Board requests for information or violations; and Exceedance Response Reports.

Prior to the 2015 General Permit, environmental citizen plaintiffs typically only pursued businesses for CWA violations where there were either eyewitness reports of violations or Exceedances. Now, the evidence necessary to prove Permit non-compliance is publicly available to be accessed and analyzed by environmental professionals. Eyewitness reports are not required to prove standard Permit condition violations. Further, Exceedances are no longer a General Permit violation by themselves. Exceedances are only violations of the General Permit if they are coupled with a violation of the Permit standard conditions to maintain proper best management practices or submit a compliant and accurate Exceedance Response Report.

EDEN's complaint alleges seven causes of action against Defendant for violating the following standard conditions of the General Permit: First Cause of Action: failure to develop and implement a proper Storm Water Pollution Prevention Plan ("SWPPP") and Site Map; Second Cause of Action: failure to develop and implement an adequate Monitoring and Reporting Program; Third Cause of Action: submission of false documents to the Water Board via SMARTS; Fourth Cause of Action: failure to implement proper best management practices ("BMPs"); Fifth Cause of Action: discharges of contaminated storm water in violation of Permit conditions. EDEN's Fifth Cause of Action is based on Defendant's reported Exceedances, coupled with BMP and Exceedance Response Report deficiencies; Sixth Cause of Action: failure to comply with required Exceedance Response Actions; and Seventh Cause of Action: failure to train onsite employees on General Permit requirements.

**B. Facts relating to the Parties**

**1. EDEN**

EDEN was formed and exists for the sole purpose of improving water quality in the Central Valley Region by pursuing industrial businesses that fail to comply with standard conditions of the General Permit. EDEN does not receive income from any source. Instead, EDEN operates through its associational members who volunteer their time to support EDEN's mission and who provide standing for EDEN. EDEN has no officers, directors, board members, employees or contractors. One or more of its associational members volunteers on a rotating basis to perform managing member duties such as signing representation agreements with EDEN's counsel and settlement agreements resolving EDEN's citizen suits. Other volunteer associational members recruit new members and spread the word about EDEN's mission. None of EDEN's members receive any compensation for these duties.

Most of EDEN's members do not consent to having their identity and other personal information disclosed in the context of EDEN's CWA citizen suits. Other than members who agree to be disclosed and deposed for standing purposes, none of EDEN's members participate in EDEN's lawsuits, and none are percipient witnesses to any of the facts underlying this matter.

EDEN contracts with a third-party company to handle expenses necessary to conduct its mission. This company fronts litigation expenses and contracts directly with environmental consultants, generally Qualified Industrial Stormwater Practitioners (QISPs), who not only investigate compliance of industrial businesses covered by the General Permit, but also draft EDEN's 60-day notice letters in conjunction with EDEN's legal team. These 60-day notices are jurisdictional in nature and are statutorily required to be extremely detailed with respect to facts supporting all alleged violations.

The QISPs work directly with EDEN's counsel. All communications between EDEN's counsel and the QISPs are attorney-client privileged communications. All information related to the QISPs' investigations and underlying facts of each case not disclosed on the face of the 60-day notice letter, in EDEN's initial or supplemental disclosures, or in EDEN's written discovery responses, is protected by the attorney work product doctrine and by Rules 26(b)(3) and 26(b)(4)(D), as the QISPs are experts specially retained on behalf of EDEN to provide technical information and expert opinions in anticipation of litigation. The specially retained QISPs who investigate Permittees' compliance with the General Permit prior to and during litigation do not also act as EDEN's Rule 26(a)(2) experts.

**2. <u>EDEN's Counsel</u>**

EDEN's lead counsel Adam Brumm and associate counsel Julio Gutierrez-Morales are both solo practitioners, share one legal assistant/paralegal and have no other support staff. Their contracts with EDEN are on a contingency basis, which is typical of plaintiff's counsel in CWA citizen suits.

**3. <u>Defendant</u>**

Defendant is a manufacturer of food products and beverage ingredients, including sweeteners. Defendant has been in business since 1923 and has maintained General Permit coverage since March 14, 1997. Sweetener operates three manufacturing facilities, including the subject facility located in Lodi, California; employs approximately 175 individuals and has an annual net income of more than $33 million. Defendant tendered this matter to its insurer AIG Specialty Insurance Company under its Pollution Legal Liability policy, which has an aggregate loss limit of $2 million. AIG accepted the

tender and is paying Defendant's litigation costs in full, up to the policy maximum. (See Declaration of Adam Brumm in support of EDEN's Motion for Protective Order ("Brumm Dec"), **Exhibit A**)

**4. <u>Defendant's Counsel</u>**

Defendant's counsel Jennifer Novak, Megan Meadows and Demetria Mantalis are members of the Law Office of Jennifer Novak, which employs four attorneys, one paralegal and additional support staff. The law firm's website prominently advertises that it defends businesses against CWA citizen suits. However, Ms. Novak and Ms. Meadows have also worked extensively representing <u>plaintiffs</u> in CWA citizen suits. In fact, Ms. Novak was the lead outside counsel for Orange County Coastkeeper from 2015 to 2023 and remains one of the attorneys of record for the plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper in *Inland Empire Waterkeeper v. Corona Clay*, No 8:18-cv-00333 DOC-DFM (C.D. Cal) ("*Corona Clay*"), as well as the related Ninth Circuit Court of Appeals cases, Nos. 24-6090 and 24-6199.

Attorneys who represent environmental groups in CWA citizen suits are a very small legal community in California and often collaborate and share confidential information on unrelated cases. In the context of active representation of Inland Empire Waterkeeper and Orange County Coastkeeper in the *Corona Clay* matter, Defendant's counsel Jennifer Novak became privy to confidential, attorney-client privileged information about EDEN's litigation strategies, internal operations and members.

EDEN maintains that Defendant's primary motivation for noticing the Rule 30(b)(6) deposition is to seek admissible testimony to confirm the inadmissible privileged information Ms. Novak unlawfully obtained. Defendant's counsel also intends to harass, annoy and embarrass EDEN and any individual Defendant's counsel deposes on behalf of EDEN.

**<u>Relevant Facts about Defendant's counsel related to the Corona Clay District Court case</u>**

*Inland Empire Waterkeeper v. Corona Clay*, USDC C.D. Cal No. 8:18-cv-00333 DOC-DFM

Attorneys Jennifer Novak and Megan Meadows first appeared on February 27, 2019, in the *Corona Clay* case as attorneys for plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper. The case is currently on its second appeal to the Ninth Circuit after two jury trials were held in October of 2019 and November of 2022 and is awaiting a decision after oral argument was held on August 11, 2025. Prior to the jury trials in *Corona Clay*, there had not been a trial on any CWA case

in the Ninth Circuit since the 1980s. (*Corona Clay*, ECF# 189, at p. 13, ln 4-23) The issues on appeal relate entirely to application of waters of the United States to Corona Clay's facility.

A review of 130 facts contained in the plaintiffs' Statement of Undisputed Materials Facts filed by attorney Novak on May 6, 2019, in the *Corona Clay* matter confirms that none of the factual elements except standing were supported by the plaintiffs. (*Corona Clay*, ECF 23-1) Further, most of the factual elements (including elements of proof for allegations of violations of General Permit and Basin Plan conditions, pollutants in Corona Clay's storm water, and matters related to jurisdictional waters of the United States connections) were confirmed by the plaintiffs' expert Dr. Horner, a Ph.D. in Civil and Environmental Engineering. (See *Corona Clay*, ECF 35-1) The remaining allegations were supported by counsel Novak through submission of records certified and submitted to SMARTS by Corona Clay and by Corona Clay's written discovery responses.

On December 16, 2019, during oral argument before District Court Judge David Carter on Waterkeeper/Coastkeeper's Motion to Alter the Judgment, Ms. Novak argued:

> ***This entire permitting scheme nationwide rests on the fact that it is the [Defendant] facility who has the power.*** *They know whether it's raining enough at their site. They know what their operations are. They know whether they're training people. And that is why the Clean Water Act and its implementing regulations, as the State of California has interpreted them and put them into these permits, says the burden is on the facility to accurately monitor, to accurately report, to submit its reports, and to certify under penalty of perjury -- with even potential criminal penalties associated with it.* (*Corona Clay*, ECF #189, at p. 11, ln 9-20)
>
> *<u>As this Court is well-aware, we are talking about strict liability cases</u>. Under the citizen suit scheme of 1365, citizen suits can't even be filed without a 60-day notice letter. And that 60-day grace period allows a facility to fix its problems if it can, or to reach a settlement with the citizen group, promising what steps that defendant will take. If it gets to a lawsuit, those cases settle very quickly. Why? A,* ***strict liability****, and, B,* ***the potential for attorney's fees and litigation costs that go up and up the longer a case goes on.*** (*Corona Clay,* ECF #189 at p. 14, ln 16 to p.15, ln 4)

## IV. ARGUMENT

### A. <u>Defendant knows EXACTLY why it is being sued</u>

Defendant's claim that its deposition notice "*seeks basic information, found in EDEN's own Complaint, to determine why it is being sued*" is both disingenuous and a misrepresentation to this Court. Prior to filing the complaint, EDEN sent a lengthy notice letter to Defendant describing in detail how Defendant had failed to comply with multiple standard conditions of its NPDES Permit.

(See ECF No. 1, Exhibit A, Case No. 2:25-cv-00078-WBS-CSK) In response to the notice letter, Defendant's attorneys sent an equally detailed letter which clearly indicates that Defendant and its counsel understand perfectly the basis of EDEN's allegations but simply disagree with EDEN's interpretation of the General Permit. (See Brumm Dec, **Exhibit B**).

Subsequently, EDEN issued and served Defendant with a second, even more detailed notice letter after its experts analyzed and reviewed additional documents provided by Defendant through discovery. (See ECF No. 1, Exhibit A, in the related Case No. 2:25-cv-02882-WBS-CSK)

In addition, EDEN has provided written discovery responses and multiple disclosures to Defendant, has repeatedly explained that it has no additional facts or evidence; and has indicated that EDEN continues to seek additional information through discovery efforts including third party subpoenas and depositions. EDEN's counsel has served Defendant's counsel with initial disclosures and six supplemental disclosures and will continue to update Defendant with any additional evidence it obtains through subsequent supplemental disclosures. (See Brumm Dec, **Exhibits D** and **E**)

**B. <u>Defendant misstates the law and the facts</u>**

Defendant maintains that it requires testimony from EDEN's designee to "*learn about EDEN's allegations and evidence*." For example, Defendant alleges herein:

> "*EDEN has put the public's health and safety at issue by claiming that Defendant illegally discharges pollutants into the Mokelumne River, thereby putting people's use and enjoyment of the River at risk. Defendant is entitled to learn why EDEN would make such as claim, and to have the opportunity to rebut it.*"

Defendant misstates the law, General Permit requirements and EDEN's factual allegations. EDEN's complaint contains specific facts supporting the basis for EDEN's Fifth Cause of Action that Defendant has discharged polluted storm water in violation of the General Permit. (See Complaint, ECF No. 1, Case No. 2:25-cv-00078-WBS-CSK, at pp. 24-26, ¶¶148-158.)

To prevail, EDEN will be required to prove its Fifth Cause of Action by demonstrating Exceedances coupled with either (a) BMP deficiencies; or (b) Exceedance Response Report deficiencies, and will do so by submitting with its Summary Judgment Motion documents certified and uploaded by Defendant to SMARTS (Monitoring and Exceedance Response Reports), along with an expert report analyzing the sufficiency of these documents. Whether or not Defendant's polluted

stormwater discharges have degraded the Mokelumne River is not an element of proof relating to any cause of action in EDEN's complaint.

**C. <u>Defendant is withholding evidence, not EDEN</u>**

EDEN is not withholding <u>any</u> evidence from Defendant relating to facts supporting the allegations in the complaint. <u>Defendant holds the entirety of the evidence and is withholding it from EDEN</u>, which has caused EDEN to prepare and file serial Motions to Compel. (See ECF Nos. 67, 81, 82, 83 and 84). Defendant has repeatedly failed to provide documents in its possession requested by EDEN in discovery with respect to the disputed factual issues and has failed to supplement its disclosures. EDEN has had to prepare and serve multiple Rule 45 document subpoenas and additional third-party discovery to obtain documents in Defendant's possession which Defendant has failed to produce. If EDEN were in possession of any evidence that it was withholding from Defendant, EDEN would only be harming itself because it would be prevented from using the evidence at the summary judgment stage or trial.

**D. <u>Defendant's stated basis for the Rule 30(b)(6) deposition of EDEN is a Ruse</u>**

As Defendant's counsel well knows, none of the allegations in EDEN's complaint can be proven or disproven through a Rule 30(b)(6) deposition of EDEN. There is no deponent directly associated with EDEN who has any first-hand knowledge of the facts underlying the allegations in the Complaint. The only deponents who could be designated to testify regarding these facts are Defendant and its employees, Defendant's environmental consultants, contractors and vendors; Defendant's experts, government employees, members of EDEN's legal team, or EDEN's former or current experts, whose work product and opinions are protected from disclosure.

All facts regarding Defendant's alleged violations of standard conditions of the General Permit are known to Defendant. All documents upon which EDEN will rely to prove its claims against Defendant have either been authored, certified and submitted to SMARTS by Defendant, or were authored by a representative of Defendant or by a regulatory or government agency and provided to Defendant.

None of EDEN's members possess any independent knowledge of facts related to the allegations in EDEN's complaint or are percipient witnesses thereto. Likewise, EDEN's legal team and its former or current experts are not percipient or fact witnesses.

Defendant is not currently entitled to expert testimony from EDEN's retained and non-retained Rule 26(a)(2) experts, nor is Defendant entitled to depose EDEN's designee for that information. EDEN has provided Defendant with two 60-day notice letters which detail all facts available to EDEN, as confirmed by its experts. In addition, EDEN has provided Defendant with initial disclosures and six supplemental disclosures, as well as supplemental discovery responses related to all non-privileged facts reasonably available to EDEN's counsel and experts retained for litigation purposes. In contrast, Defendant served only its initial disclosures on April 21, 2025, which it has not supplemented.

Defendant indicated the following in the parties' Joint Status Report (filed in this matter as ECF No. 8 on April 21, 2021): *Defendant anticipates it will challenge EDEN's associational standing and show that EDEN is not qualified to bring this action*. EDEN believes Defendant's true motivation for noticing EDEN's Rule 30(b)(6) deposition is to confirm EDEN's litigation strategies and other confidential information and to elicit improper character testimony about individuals currently or formerly associated with EDEN--to embarrass EDEN and gain an unfair advantage.

EDEN is not required to designate any of its members who have not agreed to participate in this case or to disclose personal information regarding members who wish to remain anonymous. Defendant must limit its depositions regarding standing to associational members who have agreed to be deposed.

**E. Defendant is not entitled to a Rule 30(b)(6) deposition to determine subject matter jurisdiction relating to waters of the United States**

Defendant indicated in the Joint Status Report "*Defendant also contends there is a jurisdictional challenge that EDEN has not properly brought this case before this Court because Defendant does not discharge to Waters of the United States*." As confirmed by Statements of Undisputed Facts and evidence filed with Summary Judgment motions in nearly every CWA citizen suit, including *Corona Clay*, facts related to facility discharges and their connection to waters of the United States are wholly within the purview of expert testimony. No individual associated with EDEN is qualified as an expert to opine on that subject.

EDEN will be disclosing its expert witness(es) and reports on or before the due date of August 14, 2026, after which Defendant may notice the deposition of EDEN's expert(s) to obtain testimony regarding Defendant's discharges of polluted storm water to waters of the United States.

**F. <u>Topics 1-9 fail to identify the testimony sought with adequate specificity</u>**

For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with *painstaking specificity,* the subject areas that are intended to be questioned, and that are relevant to the issues in dispute. *Kimera Labs Inc v. Exocel Bio* Inc, No. 21-cv-2137 MMA-DDL (S.D. Cal., Aug. 13, 2024) In addition, courts have found discovery requests beginning with open-ended phrases such as "Any and All" to be unduly burdensome on their face. *Verduzco v. Con Agra Foods Packaged Foods, LLC*, No. 1:18-cv-01681 TLN-CKD (E.D. Cal. April 24, 2024). *Preservation Techs. LLC v. MindGeek USA, Inc*., 2020 WL 10965163, at *5 (C.D. Cal. Oct. 19, 2020) ("A deposition topic lacking all metes and bounds is facially overbroad and unduly burdensome.")

Defendant's nine requested deposition topics are utterly lacking in specificity. For example, Topic No. 3 requests that EDEN designate a deponent to discuss "*the basis of the allegations in the Complaint that Sweetener has violated conditions of the Permit*." EDEN's 74-page complaint alleges <u>nothing else but</u> that Defendant violated standard conditions of California's Industrial General Permit, and it is replete with facts detailing each of the seven categories of General Permit violations alleged by EDEN, contained in seven correlating causes of action.

Other topics are overbroad, vague and ambiguous, including Topic 1 ("*Any documentation, photographic or videographic evidence*…"), Topic No. 2 ("*Any sampling, monitoring, inspection or other investigative activities*…"), Topic No. 6 ("*The impacts you allege*…"); Topic No. 8 ("*The organization structure of your organization, including membership"*) It is unclear as to the exact nature of the testimony Defendant is requesting on these topics.

Based on the vagueness and lack of specificity of all nine topics, Defendant cannot establish that the discovery it requests is relevant and proportional to the needs of the case, rather than a mere fishing expedition. *See Brook v. Carey,* 352 F. App'x 184, 185-86 (9th Cir. 2009)

**G. <u>Topics 1-7 and 9 violate the attorney-client privilege</u>**

Topics 1, 2, 3, 4, 5, 6, 7 and 9 as drafted impermissibly seek discovery of information protected by the attorney-client privilege, as the information requested was developed by EDEN's retained consultants and experts in conjunction with EDEN's counsel.

Attorney-client privilege protects confidential communications between attorneys and clients that are made for the purpose of giving legal advice. *See United States v. Sanmina Corp*., 968 F.3d 1107,

Case 2:25-cv-00078-WBS-CSK Document 49 Filed 01/21/26 Page 15 of 29

1116 (9th Cir. 2020). Attorney-client privilege extends to communications with third parties who have been engaged to assist an attorney in providing legal advice. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). Underlying facts contained in attorney-client communications are covered by the attorney-client privilege if the facts relate to legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981*). United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996).

All communications between EDEN's counsel and any third-party consultants retained by EDEN to develop the facts and technical opinions that form the basis for the allegations in EDEN's complaint are subject to attorney-client privilege. This is plainly the type of fact-finding which pertains to legal advice protected by attorney-client privilege. See *Labbe v. Dometic Corporation,* No. 2:20-cv-1975 DAD-DMC (E.D. Cal. Jan. 29, 2024)

**H. Topics 3-5 and 7 violate the opinion work product doctrine**

Topics 3, 4, 5 and 7 clearly seek the legal basis for the allegations in EDEN's complaint, and as drafted the Topics violate FRCP 26(b)(3)(B) and exceed the permissible scope of FRCP 26(b)(1). Topics that call for a witness to testify about legal analysis or facts relevant to legal concepts are subject to a protective order. *Torres v. Cardenas Markets, LLC*, No. 2:24-cv-01032 GMN-EJY (D. Nev. June 19, 2025)

Work product doctrine shields mental impressions, conclusions, opinions, and legal theories. *American Civil Liberties Union of N. California v. United States Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (citing Fed. R. Civ. P. 26(b)(3)). The work-product doctrine is not a privilege but instead is a qualified immunity protecting a party from disclosure of information prepared by a party or party representative in anticipation of litigation. *Admiral Ins. Co. v. United States District Court for the District of Arizona,* 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3).

The doctrine protects both materials prepared by agents for the attorney as well as those prepared by the attorney himself, and its primary purpose is to prevent exploitation of a party's efforts in preparing for litigation. *Entangled Media, LLC v. Dropbox Inc.,* No. 23-cv-03264-PCP (VKD), 2025 WL 1069896, at *2 (N.D. Cal. Apr. 8, 2025) Where the selection, organization, and characterization of facts reveal the theories, opinions, or mental impressions of a party or the party's representative, that material qualifies as opinion work product. *United States ex rel. Bagley v. TRW, Inc.,* 212 F.R.D. 554 (C.D. Cal. 2003)

Privileged communications do not become discoverable simply because they are related to issues raised in the litigation. *Skanska USA Civil West California District Inc. v. National Interstate Insurance Company*, No. 3:20-cv-00367 WQH-AHG (S.D. Cal. March 5, 2021) Opinion work product is discoverable only when mental impressions are at issue in the case and the need for the material is compelling. *US v. Sanmina Corp.,* 968 F. 3d 1107 (9th Cir. 2020) The mental impressions of EDEN's counsel are not material this lawsuit. Further, Defendant cannot meet its burden to show that its need for the requested discovery is compelling. *Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, No. 2:17-cv-01515 KJM-AC (E.D. Cal. Aug. 30, 2018)

**I. Topics 4 and 6 impermissibly seek information about EDEN's members**

Topics 4 and 6 as drafted request EDEN to designate a deponent to provide facts about EDEN's associational members who have sustained injuries arising out of Defendant's violations of the CWA and General Permit. Topics 4 and 6 are wholly outside the scope of FRCP 26(b)(1).

Topic 4 requests general information about injuries sustained by individual associational members. Topic 6 request specific information about injuries sustained by EDEN's associational members relating to impacts on the Mokelumne River arising out of the allegations in the complaint. The only facts about EDEN's members relevant to this matter are particular to the specific associational members who have standing and who have been injured by Defendant's violations of the CWA and General Permit. No one else can speak to the injuries which are personal to those members.

Defendant has already noticed the deposition of EDEN's identified associational standing member. Pursuant to FRCP 30(d)(1), Defendant is only entitled to one deposition of seven hours for each deponent.

EDEN is not at liberty to disclose the identities of its volunteer associational members who have not agreed to participate in this matter, or to be disclosed and deposed. Facts relating to EDEN's associational members who have not agreed to be identified in this matter are protected from disclosure. See, *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460, 462, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010); *NRDC, Inc. v. Ill. Power Res., LLC*, No. 13-cv-1181, 2015 U.S. Dist. LEXIS 201334, at *10-12 (C.D. Ill. May 12, 2015) (quashing subpoena that would require communications of other non-disclosed standing witness members).

Case 2:25-cv-00078-WBS-CSK Document 48-2 Filed 01/26/26 Page 13 of 29

**J. <u>Topic 8 impermissibly seeks information supporting "indicia of membership"</u>**

Topic 8 requests EDEN to designate a deponent to testify about EDEN's organization, including its structure and membership policies. While Topic 8 as drafted is vague as to the specifics regarding EDEN's organization about which Defendant is seeking testimony, the original meet and confer letter on this topic is instructional.

On July 10, 2025, Defendant's counsel emailed a detailed letter to EDEN's counsel in advance of the meet and confer conference scheduled to discuss EDEN's objections to the nine topics included in Defendant's Rule 30(b)(6) deposition notice. Defendant's counsel's letter states Defendant's position that it is "entitled" to depose a representative of EDEN to ascertain whether EDEN's members "<u>*possess sufficient indicia of membership in the organization*</u>." (See Brumm Dec, **Exhibit C**)

Defendant's counsel's July 10, 2025, letter also articulates Defendant's intent to question EDEN's designated deponent as to whether EDEN expresses the collective view and protects the collective interests of its members. These topics clearly fall within the "indicia of membership" analysis articulated in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

The Supreme Court recently clarified in *Students for Fair Admissions, Inc. v. President of Harvard College*, 600 U.S. 181, 199, 143 S.Ct. 2141, 216 L.Ed.2d 857 (2023) that *Hunt's* "indicia of membership" analysis has no applicability to an environmental membership organization, explaining that the *Hunt* court had specifically established the "indicia of membership" test because the organization at issue was **<u>admittedly not a citizen's group with members, but was instead a government organization without the possibility of membership.</u>**

*Harvard* further holds that in cases where, <u>as here</u>, an organization has identifiable members and represents them in good faith; further scrutiny into how the organization operates is not permitted, and the plaintiff's obligations under Article III are fully satisfied.

Recently, courts in the Ninth Circuit have extended the Supreme Court's ruling in Harvard to limit discovery on facts related to a CWA plaintiff's organization and its members. See *Waste Action Project v. Girard Resources*, No. 2:21-00443 RAJ (WD Wash. Feb. 12, 2024) {Order on Defendant's Motion to Compel, Feb 12, 2024}

Case 2:25-cv-00078-WBS-CSK Document 48-2 Filed 01/16/26 Page 14 of 29

Following the *Harvard* decision, as well as the Court of Appeal's decision in *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025), District Courts in the Ninth Circuit have begun to limit unmeritorious attacks by defendants on a plaintiff's associational standing. See *Coalition on Homelessness v. City and County of San Francisco*, No. 22-cv-05502 DMR (N.D. Cal. June 12, 2025), *The Humane Society of the United States v. Perdue*, No. 20-cv-01395 LB (N.D. Cal. Feb 22, 2024); *Foundation Against Intolerance and Racism, Inc. v. Walker*, No. 24-cv-01770 JHC (W.D. Wash. June 24, 2025).

Topic 8 as drafted is outside the scope of FRCP 26(b)(1) in that it seeks information not relevant to Defendant's defenses and not proportional to the needs of this case, considering the parties' resources and the importance of testimony on Topic 8 in resolving any issue in this case. Further, the burden on EDEN to produce a deponent to testify on Topic 8, as well as the likelihood of confidential and privileged information being disclosed about EDEN and its members, greatly outweighs any potential benefit to Defendant in obtaining this information.

**K. <u>Topics 2, 3, 5, 6, 7 and 9 request testimony which must be provided by experts</u>**

Topics 2, 3, 5, 6, 7 and 9 as drafted are outside the scope of FRCP 26(b)(1) in that they prematurely seek disclosure of the expert opinions of EDEN's retained and non-retained experts under FRCP 26(b)(4). Expert disclosures and reports are not due in this matter until **August 14, 2026.** Pursuant to FRCP 26(b)(4), Defendant must depose EDEN's experts <u>after they have been disclosed</u> to obtain facts related to Topics 2, 3, 5, 6 and 7.

Topics 2, 3, 5, 6, 7 and 9 as drafted are also outside the scope of FRCP 26(b)(1) in that they seek disclosure of technical information and opinions developed by EDEN's experts retained solely for litigation, in violation of FRCP 26(b)(4)(D). Topics 2, 3, 5, 6, 7 and 9 as drafted are also outside the scope of FRCP 30(b)(6) and FRCP 26(b)(1) in that no individual associated with EDEN has been designated as an expert in this matter. FRE 701; FRCP 26(a)(2); *State v. Brown*, 836 SW.2d 530, 549 (1992).

**L. <u>Topics 1-9 are unreasonably cumulative or duplicative</u>**

A review of EDEN's Second Supplemental Response to Defendant's First Set of Interrogatories (See Brumm Dec, **Exhibit E**) confirms that EDEN has already provided Defendant with a full and complete response to Topics 1-9.

Case 2:25-cv-00278-WBS-SCK Document 49 Filed 04/21/26 Page 15 of 29

Specifically with respect to Topic 1, Defendant claims that it requires additional information about the photographs attached to EDEN's complaint but does not indicate specifically what information it requires or why that information is vital to its defense, other than to obliquely refer to circles drawn on photographs attached to EDEN's complaint. EDEN's counsel has explained to Defendant's counsel verbally and in writing that its former experts retained an unknown individual who obtained the photographs. EDEN cannot designate that individual or its former experts as its Rule 30(b)(6) designee, nor provide any further information regarding the photographs.

**M. Topics 1-7 and 9 are outside the knowledge of EDEN**

Defendant is only entitled to depose EDEN's Rule 30(b)(6) designee on topics that are known or reasonably available to EDEN. "Corporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge**, provided that the information is reasonably available to the corporation.**" *Valdez v. Leeds*, No. 1:17-cv-00430 LJO-SAB (E.D. Cal. Jan 24, 2019); *Memory Integrity, LLC v. Intel Corporation*, 308 F.R.D. 656, 660 (D. Or. 2015).

As articulated above, neither EDEN nor its members are percipient witnesses to the allegations in EDEN's complaint, which are derived from expert review of documents submitted by Defendant to SMARTS. Neither EDEN nor its members are expert witnesses in this matter. EDEN lacks personal knowledge of any matter relevant to Topics 1-7 and 9. The only individuals who could be designated to testify about Topics 1-7 and 9 are members of EDEN's legal counsel, its experts or third parties outside the control of EDEN. Defendant references the declarations of "A. Brumm and E. Lucas" filed in the matter of *Central Valley Eden Environmental Defenders v. Airgas*, stating that these individuals have knowledge of the topics and could be prepared as Rule 30(b)(6) witnesses. However, "A. Brumm" is the lead attorney for this matter, and "E. Lucas" is EDEN's former managing member who is no longer associated with EDEN.

Courts in this district and elsewhere in the Ninth Circuit typically recognize *Shelton v. Am. Motors Corp*., 805 F.2d 1323 (8th Cir. 1986) as the leading case on attorney depositions and follow the three-factor test laid out in the case. *Stevens v. CoreLogic, Inc*., No. 14cv1158 BAS (JLB), 2015 WL 8492501, at *2 (S.D. Cal. Dec. 10, 2015); see *Insogna v. Hetero Labs Ltd*., No. 3:19-cv-1589-LAB-AHG, 2020 WL 85487 (S.D. Cal. Jan. 3, 2020)

Pursuant to *Shelton*, a court should permit counsel's deposition only in those limited circumstances where the party seeking the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

A protective order is appropriate where the noticed topics would effectively result in the deposition of opposing counsel and where other means of obtaining the discovery were available because such a deposition would likely invade attorney opinion work product and be an undue burden on the parties and the court. *E.E.O.C. v. McCormick & Schmick's Seafood Rests., Inc.,* No. WMN-08-CV-984, 2010 WL 2572809, *2 (D. Md. June 22, 2010) , cited by *US Equal Employment Opportunity Commission v. Sunshine Raisin Corporation*, No. 1:21-cv-01424-JLT-HBK, (E.D. Cal. Aug 29, 2023)

**CONCLUSION**

Based on the foregoing, EDEN requests that this Court enter a Protective Order under FRCP 26(b)(2)(C)(iii) providing that Defendant may not depose a designee of EDEN under FRCP 30(b)(6) on Topics 1-9 because the topics as drafted lack the required specificity demanded by FRCP 30(b)(6), exceed the permissible scope of FRCP 26(b)(1), and seek privileged and expert information.

EDEN further requests a Protective Order be entered under FRCP 26(c)(1) on the basis that the topics seek protected information about EDEN, its organization and its members, disclosure of which would likely cause annoyance, embarrassment or oppression to EDEN and its associational members who have not agreed to be deposed.

Defendant's Rule 30(b)(6) deposition notice violates Rule 26(a)(2), 26(b)(1), 26(b)(2)(C)(i) and (iii), 26(b)(3)(B), 26(b)(4)(A), 26(b)(4) (B), 26(b)(4)(C) and 26(b)(4)(D). Thus, this Court should deny Defendant's Motion to Compel in its entirety. Defendant's request for an award of sanctions is unwarranted and should also be denied.

Date: April 21, 2026

By: __/s/ Adam D. Brumm
Adam D. Brumm
Attorney for Plaintiff

**DEFENDANT SWEETENER PRODUCTS, INC.'S JOINT STATEMENT IN SUPPORT OF MOTION TO COMPEL RULE 30(B)(6) WITNESS AND IN OPPOSITION TO PLAINTIFF'S RELATED MOTION FOR PROTECTIVE ORDER**

Under Local Rule 251, Defendant Sweetener Products, Inc. ("Defendant") and Plaintiff Central Valley Eden Environmental Defenders, LLC ("Plaintiff") (together, "the Parties") submit this Joint Statement of disagreement over Plaintiff's obligation to produce a Rule 30(b)(6) witness for deposition.

In preparing this Joint Statement, Plaintiff indicated that it would be completed without Defendant having access to Plaintiff's intended submission. Defendant provided Plaintiff with a draft of its portion on April 15, 2026, but has not been able to review Plaintiff's draft for this document. Accordingly, Defendant's portion of the Joint Statement is based solely on prior briefing and arguments raised by Plaintiff. To the extent Plaintiff introduces new allegations or arguments, Defendant is unable to respond to them herein. Should such new issues require a response, Defendant respectfully requests the opportunity to submit supplemental briefing or to address them orally during the hearing.

## I. INTRODUCTION

Defendant issued a Notice of a Rule 30(b)(6) deposition to Plaintiff on June 26, 2025. Plaintiff objected, both to the entire concept of a Rule 30(b)(6) deposition, as well as to every potential deposition topic. Novak Dec., Exhs. A; F. Defendant seeks an order requiring Plaintiff to produce a Rule 30(b)(6) witness on the topics outlined below, and to award Defendant fees and costs for bringing this Motion to Compel and for responding to Plaintiff's related Motion for Protective Order. See Fed. R. Civ. P. 37(a)(5)(A).

### A. MEET AND CONFER PROCESS

The Parties met and conferred by telephone and videoconference regarding the Motion to Compel the deposition, in addition to exchanging research and written arguments. The Parties disagree as to whether Plaintiff held a meet and confer for its Motion for Protective Order. While a Motion for Protective Order was briefly mentioned, the Parties never addressed the governing standard or any justification for Plaintiff's belief that it was entitled to one. Defendant believes that the July and August discussions related only to the Motion to Compel and cannot serve as a proxy for a Motion for Protective Order that did not exist at the time.

Case 2:25-cv-00078-WBS-CSK Document 39 Filed 11/21/25 Page 18 of 29

## II. FACTUAL BACKGROUND

In January 2025, Plaintiff filed a Clean Water Act citizen suit against Defendant. Plaintiff claims to be "an environmental membership group" organized to protect, preserve, and enhance waters in California through enforcement actions. Dkt. #1 at pp. 2, ¶ 7; 3, ¶¶ 12-13. The Complaint alleges that Defendant violated the Clean Water Act, impacted Plaintiff's members use and enjoyment of the Mokelumne River, and caused information injuries to Plaintiff's members. It references "eyewitness reports and inspections conducted by representatives of Plaintiff." Dkt. #1 at pp. 18, para. 105; 20, para 120; 23, para 135; 35, para 150; 27, para. 162. It also includes photographs, upon which someone drew a variety of lines and circles. Dkt. 1-6 (Exhibit E to Complaint).

Defendant's Notice of Rule 30(b)(6) deposition to Plaintiff seeks testimony on the following nine topics:

- Any documentation, photographic, or videographic evidence in YOUR possession relating to conditions at the FACILITY alleged in the COMPLAINT.
- Any sampling, monitoring, inspection, or other investigative activities by YOU relating to the allegations in the COMPLAINT.
- The basis of the allegations in the COMPLAINT that SWEETENER has violated conditions of the PERMIT.
- The basis of the claim YOUR members have been injured as alleged in the COMPLAINT.
- The basis of the allegations in the COMPLAINT that SWEETENER DISCHARGES contaminated storm water.
- The impacts you ALLEGE in the COMPLAINT that SWEETENER has on the Mokelumne River.
- The basis of the allegations in the COMPLAINT that DISCHARGES of stormwater from the FACILITY reach a Water of the United States.
- The business purpose, mission, and organizational structure of YOUR organization including membership of YOUR organization.
- Violations of the Water Quality Control Plan for the California Regional Water Quality Control Board, Central Valley Region, and Receiving Water Limitations as alleged in the COMPLAINT.

Plaintiff objected and refused to designate a deponent for any topic.

## III. LEGAL ARGUMENTS

### A. DEFENDANT IS ENTITLED TO ITS RULE 30(B)(6) DEPOSITION.

Defendant is entitled to depose Plaintiff's Person Most Knowledgeable at a Rule 30(b)(6) deposition. Discovery allows litigants to obtain any relevant, non-privileged information to support their claims and defenses. Fed R. Civ. P. 26(b)(1). Organizations are required to produce "one or more officers, directors, or managing agents, or designate other persons who consent" to testify on their behalf upon receiving a deposition notice. Fed. R. Civ. P. 30(b)(6); *Cadent Ltd. v. 3M Unitek Corp.,* 232 F.R.D. 625, 628 n.2 (C.D. Cal. 2005) (entities must designate witness once served with Rule 30(b)(6) notice). Plaintiff, a California LLC, is no exception. Fed. R. Civ. P. 30(b)(6).

#### 1. General Objections Cannot Absolve Plaintiff From Its Obligation to Designate a Rule 30(b)(6) Deponent

Plaintiff lodged multiple "general" objections to providing *any* Rule 30(b)(6) witness. None of its objections allow Plaintiff to skirt basic discovery obligations.

a) General Objections Related to Plaintiff's Standing

Plaintiff argues that it cannot be deposed on its standing to file this litigation. On the contrary, standing is a threshold question in every federal case that establishes a party's right to sue. *California Sportfishing Protection Alliance v. All Star Auto Wrecking, Inc.,* 860 F.Supp.2d 1144, 1149 (E.D. Cal. 2012). In Clean Water Act citizen suits where an organization is the litigant, it must establish standing through connections to its members and members' injuries. This is a common and foundational question. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 169 (2000) (discussing organization's showing of standing); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

Plaintiff confuses the discovery process with ultimate questions of law. Citing to *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* ("*Harvard*"), Plaintiff claims that any testimony or discovery related to standing is improper. Novak Dec., Exh. F, pp. 2:28-5:14. The citation does not support Plaintiff's claim. Instead, that citation allows organizations that have identified their members and their representation of those members in good faith to avoid being challenged on how

the organization operates. *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College,* 600 U.S. 181, 201. In *Harvard,* the Court allowed a student organization to represent its members in a challenge to race-based admissions programs led by Harvard College and the University of North Carolina. *Id.* at 197-98. Contrary to Plaintiff's use of *Harvard* here, the Court only reached that decision *after discovery.* The Court relied on the detailed factual record – including information about the organization's structure, membership, and mission—and, most importantly, on sworn declarations from named members. *Id.* at 201. From this information, the Court concluded that the organization Students for Fair Admissions had standing. *Id.*

Plaintiff has no authority to claim during the meet and confer process that Ninth Circuit case law makes it "impermissible" for Defendant to "seek discovery on information about Plaintiff's organization or its other members." Novak Dec., Exh. F, p. 3. Plaintiff confuses sufficiency of allegations in a complaint with the Federal Rules of Civil Procedure that allow discovery related to standing. Plaintiff primarily relies upon cases that analyzed the sufficiency of a plaintiff's evidence to demonstrate standing. None hold that a plaintiff may avoid the discovery process; indeed, some undermine Plaintiff's arguments. See, e.g. *Coalition on Homelessness v. City of San Francisco*, 786 F. Supp. 3d 1264, 1280-81 (N.D. Cal. 2025) (summary judgment order found plaintiff's declarations and Rule 30(b)(6) testimony sufficient to establish standing); see also *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025) (stating that member identities can be shielded only when it is "clear and not speculative" that an adversely affected party exists).

b) General Objections Pertaining to Requests Expert Opinion

Plaintiff also cannot avoid a Rule 30(b)(6) deposition by simply claiming that it requires early expert testimony. Rule 30(b)(6) requires a party to designate a representative to testify on a corporation's behalf and to be sufficiently prepared to testify. See *Alvardao Herrera v. Acuity,* 344 F.R.D. 103, 106-107 (D. Nev. 2023) (stating that "[u]pon the noticing of a corporation's deposition, it must designate one or more persons to testify on its behalf."); *Guiannane v. Dobbins,* 479 F. Supp.3d 989, 995 (D. Mont. 2020) (Rule 30(b)(6) does not allow a party to avoid producing a witness). Defendant has requested a 30(b)(6) witness, not an expert, on topics drawn directly from Plaintiff's

Complaint. Plaintiff may designate any competent, prepared person of its choosing as Defendant did not request and does not expect an expert.

c) <u>General Objections Related to Plaintiff's Organizational Structure</u>

Plaintiff argues that it does not have to comply with Rule 30(b)(6) because no one has "personal knowledge" of its organizational structure or facts underlying the Complaint. This does not excuse Plaintiff from its Rule 30(b)(6) obligations. See *California Foundation for Independent Living Centers v. County of Sacramento,* 142 F.Supp.3d 1035, 1046 (E.D. Cal. 2015) (Rule 30(b)(6) deponents testify on matters based on *organization's* knowledge); *Calzaturficio S.C.A.R.P.A. v. Fabiano Shoes Co., Inc.,* 201 F.R.D 33, 37 (D. Mass 2001) (Rule 30(b)(6) requires designation of witness even if witness requires time-consuming preparation).

Along similar lines, Plaintiff objects that the only people with "requisite personal knowledge of the specific topics" are experts, non-parties, legal representatives of Plaintiff, or non-participating associational members of Plaintiff. Novak Dec., Exh. F., p. 6:25-27. As noted above, this does not offer Plaintiff a Rule 30(b)(6) loophole. Instead, the Rule requires entities to produce a "person" with sufficient knowledge and who consents to testify on their behalf. Fed. R. Civ. P. 30(b)(6). No exception exists to allow the entity to hide behind lawyers and experts. On the contrary, under such circumstances, a party must still identify and prepare a witness who can make "complete, knowledgeable, and binding answers." *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C. 1989).

Defendant's deposition notice seeks *basic* information, found in Plaintiff's own Complaint, to determine why it is being sued. Plaintiff can prepare a witness to testify to this basic information. See *California Foundation for Independent Living Centers, supra,* 142 F.Supp.3d at 1046 (finding that 30(b)(6) deponents can testify on matters outside of their personal knowledge); see also *United States v. Nolen,* 2024 WL 4307772, 2 (E.D. Cal. 2024) (stating that 30(b)(6) witnesses must be prepared to testify on information known or reasonably available to the organization).

Even if it is true that no percipient witnesses exist and the only people with knowledge to testify to the merits of Plaintiff's claims are lawyers and experts, the law does not automatically shield them from becoming witnesses. See *Younger Mfg. Co. v. Kaenom, Inc.,* 247 F.R.D. 586, 588-89 (C.D. Cal. 2007) (holding that lawyers who are also percipient or fact witnesses may be deposed on that basis); see

also *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (allowing deposition of counsel when (1) no other means exists to obtain information exists; (2) information is non-privileged; and (3) information is crucial to case); see also *DiLorenzo v. Costco Wholesale Corp.,* 243 F.R.D. 413, 415 (W.D. Wa. 2007) (ordering deposition of counsel when he was only party who could testify to specific non-privileged facts even if other parties were available to be deposed).

d) <u>General Objections Related to Claims of Privilege and Confidentiality</u>

As seen through the deposition topics listed above, Defendant does not seek testimony related to the contentions, legal conclusions, or mental impressions of Plaintiff's legal team. Defendant seeks facts used to justify the Complaint. Facts are wholly discoverable. *Hickman v. Taylor,* 329 U.S. 495, 507 (1947) (stating that parties may use discovery to compel the other to disgorge facts in his possession).

Similarly, Defendant does not seek to invade the attorney-client privilege through a Rule 30(b)(6) deposition. Facts underlying a case are not automatically protected by the attorney-client privilege. *Lopes v. Vieira,* 688 F. Supp. 2d 1050, 1059 (E.D. Cal. 2010); see also *U.S. v. Davita,* 301 F.R.D. 676, 683 (N.D. Ga. 2014) (holding that attorney-client privilege applies only to communications and does not protect disclosure of underlying facts by those who communicated with attorneys). Moreover, the attorney-client privilege cannot be overextended to protect information obtained by an attorney through a witness in anticipation of litigation. *Sampson v. School Dist. of Lancaster,* 262 F.R.D. 469, 474 (E.D. Pa. 2008).

Plaintiff also cannot use the attorney-work product doctrine to avoid a Rule 30(b)(6) deposition. Defendant asked for *testimony,* not documents. The attorney-work product doctrine only protects documents or materials prepared in anticipation of litigation by a party or that party's representative from discovery. *U.S. v. Richey,* 632 F. 3d 559, 567 (9th Cir. 2011); see also *Strauss v. Credit Lyonnais,* 242 F.R.D. 199, 230 (E.D.N.Y. 2007). A party cannot withhold facts under the guise of attorney-work product. *Oklahoma v. Tyson Foods, Inc.,* 262 F.R.D. 617, 629 (N.D. Okla. 2009).

**2. Plaintiff's Specific Objections Do Not Prevent a Rule 30(b)(6) Deposition.**

Plaintiff attempts to evade its obligation to designate a Rule 30(b)(6) deponent by lodging multiple objections to each specific topic noticed for deposition. None of the specific objections listed

by Plaintiff absolve it of this duty. As some of the specific objections mirror the general objections, Defendant addresses only those that are not duplicative to conserve the Court's time.

a) Objections Related to the Drafting the Deposition Topics

Plaintiff makes boilerplate objections to the deposition topics by claiming they are broad, ambiguous, vague, or unintelligible. As stated above, Plaintiff cannot avoid designating and producing a Rule 30(b)(6) witness by making general objections to the noticed topics. See *Guiannane, supra,* 479 F. Supp. 3d at p. 996. Instead, it must designate and produce a deponent; it can object to questions as necessary. *Id.*

b) Objections On the Grounds of Duplicative Requests

Plaintiff argues that it does not have to produce a deposition witness if it produced information through other discovery. As noted above, Plaintiff's Complaint alleges documentary evidence exists that supports its allegations. Defendant is entitled to obtain Plaintiff's *testimony* under oath about what information may or may not exist.

Further, Plaintiff cannot shield itself from producing a party witness by claiming that fact witnesses exist. Fact witnesses and entity witnesses serve two entirely different purposes. The percipient witness speaks to events as perceived through their own senses. *Britz Fertilizers, Inc. v. Bayer Corp.,* 2009 WL 1748775, 3 (E.D. Cal. 2009). The entity witness speaks to the knowledge and position of the entity and binds the entity to the statements made. *Adidas America, Inc., v. TRB Acquisitions LLC,* 324 F.R.D. 389, 394 (D. Or. 2017). Plaintiff cannot choose to avoid providing binding testimony.

c) Objections On the Grounds that Documents Previously Provided Speak for Themselves

Defendant seeks a 30(b)(6) witness regarding the existence of, and foundation for, documents, photographs, or videos of Defendant's Facility, as referenced in the Complaint. The context, credibility, and foundation for that evidence directly relates to Defendant's defense, which makes these issues discoverable. See *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC,* 287 F.R.D. 680, 687 (N.D. Ga. 2019) (stating that a party can discover evidence related to its defense). Further, it is unclear how Plaintiff believes documents that have been referenced but not produced or have been given no foundation speak for themselves. A document that says nothing cannot speak for itself.

d) Objections On the Grounds of the First Amendment and California's Consumer Privacy Act of 2018

Defendant does not understand how and why Plaintiff believes these laws apply in this situation, or how they relate to Plaintiff's obligation to provide basic discovery. These laws do not relate to nor prevent Defendant from exercising its right to discover any non-privileged and relevant information related to this litigation.

e) Objections On the Grounds that Discovery is Ongoing

Presumably, Plaintiff had certain facts at its disposal to justify bringing a lawsuit. The Complaint references those facts. Defendant seeks testimony regarding them.

f) Objections Related to Plaintiff's Members

As stated above, Plaintiff bears the burden to show how it has standing and how its members have been harmed by Defendant's alleged actions. Defendant is entitled to obtain information related to Plaintiff's members injuries.

g) Plaintiff's Refusal to Designate or Produce or a Deponent for Any Deposition Topic

Plaintiff ends each response to all deposition topics with the statement that "no deponent will be designated" or produced for deposition on the given topic. Defendant is entitled to depose an entity witness that is capable of binding Plaintiff, as an organization, to the factual basis for its allegations against Defendant. While Defendant also intends to depose standing and fact witnesses provided by Plaintiff, these parties are not able to bind Plaintiff to any statement. The only way for Defendant to receive binding testimony from Plaintiff is through a 30(b)(6) deponent. *Board of Trustees of Leland Stanford Junior University v. Tyco Intern. Ltd.*, 253 F.R.D. 524, 525-526 (C.D. Cal. 2008).

B. LEGAL ARGUMENT IN SUPPORT OF DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

The Court should deny Plaintiff's Motion for Protective Order ("Motion") on two grounds. First, despite what Plaintiff contends, there was in fact **no meet and confer** held related to Plaintiff bringing this Motion. Novak Dec., ¶ 2. Local Rule 251(b) is clear, with exceptions that do not apply here, counsel "shall" confer in advance of filing the motion or in advance of the hearing. Plaintiff's position that there

was a meet and confer is misleading and false. Second, none of the authorities cited by Plaintiff supports its position that it can refuse to designate a witness outright.

**1. Plaintiff's Motion is Procedurally Defective as No Meet and Confer Took Place**

Plaintiff's claim of a meet and confer on this issue is false; the only meet and confer occurred in reference to the motion to compel. Novak Dec., ¶ 2. Plaintiff is representing to this Court that the meet and confer conferences held in July and August relate to filing this Motion. As stated above, the meet and confers on producing a Rule 30(b)(6) witness for deposition do not serve as a proxy for a meet and confer for this Motion for Protective Order.

**2. Plaintiff Is Not Entitled to A Protective Order For Its Rule 30(b)(6) Deponent**

Plaintiff does not meet its burden to establish that good cause exists to grant its Motion. When determining whether good cause exists, courts consider the following factors: (1) the information is sought for a legitimate purpose; (2) disclosure will violate any privacy interest; (3) disclosure will cause a party embarrassment; (4) disclosure is important to public health and safety; (5) sharing of information among litigants will promote fairness and efficiency in the litigation; and (6) the case involves issues of public importance. *Rivera v. NIBCO, Inc.,* 204 F.R.D. 647, 649 (E.D. Cal. 2001). None support Plaintiff's decision to withhold a Rule 30(b)(6) deponent from the discovery process.

Here, Defendant seeks the deposition for a clear legitimate purpose: a Rule 30(b)(6) witness will enable Defendant to learn about Plaintiff's allegations and evidence, and information which may assist with a defense. Dkt. # 1 at p. 18, ¶ 100; pp. 18, ¶¶ 105; 20, ¶ 120; 23, ¶ 135; 25, ¶ 150; 27, ¶ 162; Dkt. 1-6 (Exhibit E to Complaint). The information sought does not violate a privacy interest—a Rule 30(b)(6) deponent speaks for the company, not as to personal matters. Plaintiff arguably also waived any such privacy by putting the facts in dispute through its Complaint.

Nor can Plaintiff credibly claim that if a witness talks about the organization's evidence against Defendant, that this will cause the organization or the witness "embarrassment." As noted above, Defendant seeks testimony about, for example, "The basis of the allegations in the COMPLAINT that SWEETENER DISCHARGES contaminated storm water."

Looking to the next factor, Plaintiff has put the public's health and safety at issue by claiming that Defendant illegally discharges pollutants into the Mokelumne River, thereby putting people's use

and enjoyment of the river at risk. Defendant is entitled to learn why Plaintiff would make such a claim, and to have the opportunity to rebut it.

The noticed topics were specifically crafted to promote efficiency in this litigation by using a Rule 30(b)(6) deposition to cut through pages and pages of allegations and address the core issues of the case. Plaintiff's refusal to participate, insisting instead that Defendants sift through public records and other documents to guess how they may have violated the Clean Water Act, creates inefficiency.

This case is a matter of public importance as Plaintiff has taken it upon itself to stand in the shoes of the public and file this Clean Water Act citizen suit against Defendant. Allegations in the Complaint are just that, allegations. Plaintiff has the burden and obligation to provide actual evidence of those facts. *Liberty Mut. Ins. V. Harco Nat. Ins. Co.,* 990 F. Supp. 2d 194, 199 (D. Conn. 2013) (stating that a plaintiff is required to present evidence that supports its allegations at the summary judgment stage).

a) Topics 1-9 Are Drafted with "Adequate Specificity"

Plaintiff seeks to avoid a Rule 30(b)(6) deposition by claiming that none of the topics noticed are adequately specific. To support its argument, Plaintiff has previously cited *Kimera Labs, Inc. v. Exocel Bio Inc.- a* case that does not support its position that it is absolved from producing a Rule 30(b)(6) deponent. *Kimera Labs, Inc. v. Exocel Bio Inc.,* 2024 WL 379834, at *1 (S.D. Cal. 2024) (holding that topics need to be drafted with "painstaking specificity" and requiring a Rule 30(b)(6) witness to be produced).

Plaintiff also cited a case where a discovery dispute arose over a Rule 30(b)(6) notice that covered 2.4 TB of code and millions of files. *Preservation Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965163, at *5 (C.D. Cal. Oct. 19, 2020). There, the court limited some noticed topics, but still required a Rule 30(b)(6) deponent to be produced. *Id,* at 7. Notably, neither of these cases allow a party to skirt its duty of producing a deponent.

b) Topics 1-7 and 9 Do Not Seek Documents In Violation of the Attorney Client Privilege

Plaintiff also seeks to avoid a Rule 30(b)(6) deposition by claiming all of the noticed topics violate attorney-client privilege. Plaintiff's arguments once again fail. In the *Sprint Communications*

*Co., L.P. v. Theglobe.com, Inc.* case, the Court addressed this point exactly. *Sprint Communications Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524 (D. Kan. 2006). In denying the Motion for Protective Order on the same grounds (that all information was protected from disclosure by attorney-client privilege as a result of the fact that Sprint attorneys were involved in prosecuting the patents at issue), the court explained that attorney-client privilege does not shield underlying facts. *Id.* at 529. A Rule 30(b)(6) witness must provide any responsive information, even if obtained from lawyers. *Id.*

c) <u>Topics 3-5 and 7 Do Not Seek Information In Violation of the Work Product Doctrine</u>

Plaintiff further seeks to avoid a Rule 30(b)(6) deposition by claiming that all noticed topics are protected by the work product doctrine. None one of the cases cited support the issuance of a protective order. See *Torres v. Cardenas Markets, LLC*, 2025 WL 1881247, at *1 (D. Nev. June 19, 2025) (Court does not say a witness does not have to be produced at all); *Am. Civil Liberties Union of N. California v. United States Dep't of Just.,* 880 F.3d 473, 485 (9th Cir. 2018) (mental impressions, legal, opinions, and legal theories are protected as documents, **not** as deposition topics); *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (Plaintiff improperly used the quote to support its proposition, when in fact the Court said "The work product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."). Plaintiff continues to conflate the distinction between documents and depositions.[2]

d) <u>Topics 2-7, and 9 Do Not Require Expert Testimony</u>

Plaintiff additionally seeks to avoid a Rule 30(b)(6) deposition by claiming that the noticed topics call for expert testimony. As stated above, Defendant is seeking testimony from Plaintiff on the specific allegations it made in its Complaint. Knowledge of the facts underlying the allegations Plaintiff has already made does not require an expert's opinion.

---

[2] Not only is the issue about producing a Rule 30(b)(6) deponent, but Defendant is not seeking documents or tangible things that haven't already been produced in this litigation or have been referenced in the Complaint itself. Dkt. # 1 at p. 18, ¶ 100; pp. 18, ¶¶ 105; 20, ¶ 120; 23, ¶ 135; 25, ¶ 150; 27, ¶ 162; Dkt. 1-6 (Exhibit E to Complaint).

Even if the topics did call for expert testimony, Plaintiff cannot use this argument to shield itself from its duty to designate and produce a person to be deposed. See *Alvarado Herrera v. Acuity,* 344 F.R.D. 103, 106 (D. Nev. 2023) (stating that "[u]pon the noticing of a corporation's deposition, it must designate one or more persons to testify on its behalf."). Plaintiff is required to designate, produce, and prepare a deponent and may make objections during that party's deposition, not assert that it has no duty to produce a witness. *Guiannane v. Dobbins,* 479 F. Supp. 3d 989, 996 (D. Mont. 2020) (stating that Rule 30(b)(6) does not provide a mechanism to avoid producing a witness and requires deposition go forward subject to objections).

e) Topics 1-9 Are Not Cumulative or Duplicative, and Drafted In Response to Plaintiff's Allegations and Discovery Responses

Plaintiff also seeks to avoid a Rule 30(b)(6) deposition by claiming that the noticed topics are duplicative of Plaintiff's allegations and written discovery responses. This argument is not valid. Even if Plaintiff's written responses are full and complete, it is not absolved from its duty to designate and produce a knowledge deponent. See *James Lee Construction, Inc. v. Government Employees Insurance Company*, 339 F.R.D. 562, 569 (D. Mont. 2021) (stating that the fact that information may be obtained through other discovery methods does not preclude obtaining it via a Rule 30(b)(6) deposition). Plaintiff brought this lawsuit; Plaintiff has the burden of participating in discovery and cannot employ protective orders to protect it from doing so. Plaintiff cited no legal support for this argument.

f) Topics 4, 6, and 8 Properly Seek Information About Plaintiff's Standing

Defendant incorporates its briefing on properly seeking information about Plaintiff's standing from its legal argument in support of granting the Motion to Compel section 1(a).

**3. Plaintiff Must Designate a Deponent for All Topics**

Plaintiff's argument that no one exists with personal knowledge of the noticed topics does not absolve it of its duty to designate a Rule 30(b)(6) deponent. In the *Sprint* case, the court discussed the implications of attempting to avoid designating a Rule 30(b)(6) witness through this type of argument. *Sprint Communications Co., L.P., supra,* 246 F.R.D. at 528-529. The court explained that the rule "makes clear that a party is not permitted to undermine the beneficial purposes of the Rule by responding that witness is available who personally has direct knowledge concerning the areas of

inquiry. *Id.* at 528. If no one exists, the responding party is required to educate and prepare, in good faith, a deponent who is knowledgeable enough to make binding statements on behalf of the organization. *Id.* Moreover, Plaintiff has submitted declarations in a different case that admit that people exist who are aware of this type of basic information. See *Central Valley Eden Environmental Defenders, LLC v. Airgas USA, LLC,* Case No. 2:24-cv-03547-DJC-AC (E.D. Cal. 2025), Dkt. # 18 at pp. 11 ¶¶ 2-4; 12 ¶¶ 1, 5 (Decs. of A. Brumm and E. Lucas).

## IV. CONCLUSION

This Joint Statement concerns only Plaintiff's duty to designate and produce a Rule 30(b)(6) witness. Plaintiff provides no argument, cases, or analysis establishing that it should be allowed to withhold facts or be granted a protective order for a deponent. Any other unrelated arguments advanced by Plaintiff are superfluous, improper, irrelevant, and objectionable. Plaintiff's failure to meet this obligation has left Defendant with no choice but to move to compel the deposition. Defendant respectfully requests this Court grant the Motion to Compel and deny the Motion for Protective Order, in addition to granting Defendant fees and costs for bringing and responding to these motions.

Date: April 21, 2026 LAW OFFICE OF JENNIFER F. NOVAK

*/s/ Jennifer Novak, as authorized on 4/21/26*
Jennifer Novak
Attorney for Sweetener Products, Inc.

# Exhibit 25

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SWEETENER PRODUCTS, INC.,<br><br>Defendant. | Case No. 2:25-cv-00078-WBS-CSK<br><br>ORDER<br><br>(ECF Nos. 35, 65) |

Pending before the Court is Defendant Sweetener Products, Inc.'s motion to compel Plaintiff Central Valley Eden Environmental Defenders, LLC to identify and produce a witness for deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) (ECF No. 35), and Plaintiff's motion for a protective order as to the same Rule 30(b)(6) deposition (ECF No. 65). A hearing was held on May 5, 2026. Adam Brumm appeared as counsel for Plaintiff; Jennifer Novak appeared as counsel for Defendant. (ECF No. 92.)

For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to compel, and GRANTS IN PART and DENIES IN PART Plaintiff's motion for a protective order.

/ / /

# I. BACKGROUND

## A. Factual Allegations

Plaintiff is an environmental group whose "organizational purpose is the protection, preservation and enhancement of the rivers, creeks, streams, lakes and oceans (and their tributaries) in California." Compl. ¶ 12 (ECF No. 1). Plaintiff pursues this goal by litigating enforcement actions under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and California's Industrial General Permit ("General Permit"). *Id.* ¶ 13. The General Permit, which is issued by the California Water Board, sets general requirements for how industrial facilities in California may discharge storm water pursuant to the Clean Water Act's regulatory framework for industrial storm water discharges—that is, the National Pollutant Discharge Elimination System. *Id.* ¶¶ 24-25, 31, 36. Plaintiff is composed of volunteer members who reside throughout Northern California. *Id.* ¶¶ 14-15.

Plaintiff alleges Defendant owns a facility that manufactures and distributes food products and beverage ingredients, including sweeteners. *Id.* ¶ 93; Joint Statement at 3 (ECF No. 89). Plaintiff alleges Defendant is required to obtain coverage under, and comply with, the General Permit. Compl. ¶ 99. Plaintiff alleges Defendant's facility ejects storm water that enters the Mokelumne River, a tributary of the Sacramento-San Joaquin River Delta Waterways. *Id.* ¶¶ 15, 100. Plaintiff makes this allegation "[b]ased on Plaintiff's investigation, including but not limited to a review of the Defendant's Notice of Intent to Comply with the Terms of the Industrial General Permit ("NOI"); SWPPP and Site Map, aerial photography and drone footage; federal, state and local regulatory agency mapping tools; and eyewitness reports." *Id.* ¶ 100. Plaintiff alleges the Mokelumne River is a "navigable Water of the United States." *Id.* Plaintiff alleges that some of its members reside, work, or recreate near the Mokelumne River and that these members' "use and enjoyment of these natural resources has been and continues to be adversely impaired by Defendant's failure to comply with the procedural and substantive requirements of the Industrial General Permit and the CWA." *Id.* ¶ 15.

Plaintiff brings a citizen suit under the Clean Water Act, alleging that Defendant violated multiple standard conditions of the General Permit. *Id.* ¶¶ 103-165. Plaintiff brings the following causes of action, each of which assert violations of the General Permit and the Act: (1) failure to prepare, implement, review, and update an adequate Storm Water Pollution Prevention Plan; (2) failure to develop and implement an adequate monitoring and reporting program for Defendant's facility; (3) submission of false annual reports to the Regional Water Board; (4) failure to implement Best Available Treatment and Best Conventional Treatment technologies and Best Management Practices at Defendant's facility for its discharges of pollutants; (5) discharge of contaminated storm water; (6) failure to comply with required Exceedance Response Actions; and (7) failure to properly train and establish a Pollution Prevention Team. *Id.* ¶¶ 171-74, 176-79, 181-83, 184-88, 190-98, 200-03, 205-07. Plaintiff seeks declaratory and injunctive relief, civil penalties accounted per violation per day, and attorney's fees and costs. *Id.* at Relief Requested.

Defendant answered the Complaint on January 30, 2025. (ECF No. 5.)

**B. Background Relating to Discovery Dispute**

On June 26, 2025, Defendant served a Notice of Deposition pursuant to Rule 30(b)(6) on Plaintiff. Def. Mot. at 2 (ECF No. 35); Pl. Mot. at 1 (ECF No. 65). Defendant's Notice identified the following nine deposition topics:

1. Any documentation, photographic, or videographic evidence in YOUR possession relating to conditions at the FACILITY alleged in the COMPLAINT.
2. Any sampling, monitoring, inspection, or other investigative activities by YOU relating to the allegations in the COMPLAINT.
3. The basis of the allegations in the COMPLAINT that SWEETENER has violated conditions of the PERMIT.
4. The basis of the claim YOUR members have been injured as alleged in the COMPLAINT.

Case 2:25-cv-00878-WBS-CSK Document 48-2 Filed 11/5/26 Page 4 of 13

5. The basis of the allegations in the COMPLAINT that SWEETENER DISCHARGES contaminated storm water.

6. The impacts you allege in the COMPLAINT that SWEETENER has on the Mokelumne River.

7. The basis of the allegation in the COMPLAINT that DISCHARGES of stormwater from the FACILITY reach a Water of the United States.

8. The business purpose, mission, and organizational structure of YOUR organization, including membership of YOUR organization.

9. Violations of the Water Quality Control Plan for the California Regional Water Quality Control Board, Central Valley Region, and Receiving Water Limitations as alleged in the COMPLAINT.

Declaration of Jennifer Novak (ECF No. 90), Exh. A (Notice of Deposition) (ECF No. 90-1). Plaintiff served multiple responses and objections on July 3, 2025, July 29, 2025, and August 4, 2025, respectively. Def. Mot. at 3; Novak Decl., Exh. B (Response and Objection) (ECF No. 90-2), Exh. E (Amended Response and Objection) (ECF No. 90-5), Exh. F (Second Amended Response and Objection) (ECF No. 90-6).

On July 11, 2025 and August 4, 2025, the parties met and conferred regarding Plaintiff's objections to the Rule 30(b)(6) deposition at large and to each of the deposition topics. Declaration of Adam D. Brumm ¶¶ 2-5 (ECF No. 89-1); Novak Decl. ¶ 2. The subject of a motion for a protective order was raised. Brumm Decl. ¶ 5, Exh. C (Def. Letter) at 6 ("If Eden is confident about the legitimacy of their objections, it should seek a protective order from the Court.").

Defendant filed a motion to compel for the first time on August 13, 2025. (ECF No. 13.) On August 18, 2025, Plaintiff filed a motion for a protective order. (ECF No. 15.) A hearing on both motions was set for September 16, 2025. 8/22/2025 Minute Order (ECF No. 17).

On September 9, 2025, the Court issued a minute order noting that the parties had filed multiple different documents comprising hundreds of pages related to these two

motions, including what appeared to be either duplicative filings or documents filed in error. 9/9/2025 Minute Order (ECF No. 28). In addition, the parties failed to follow the Court's order regarding page limits and deadlines. (*Id.*) The Court ordered the parties to file a single Joint Statement re: Discovery Disagreement addressing the discovery dispute as to the Rule 30(b)(6) deposition of Plaintiff. (*Id.*) The Court also vacated the September 16, 2025 hearing on Defendant's motion to compel and Plaintiff's motion for protective order. (*Id.*) On September 15, 2025, Plaintiff re-filed its motion for protective order, noticing a hearing date of October 21, 2025. (ECF No. 30.) Plaintiff filed an amended motion on September 19, 2025, with a re-noticed hearing date of October 28, 2025. (ECF No. 33.) Defendant then re-filed its motion to compel on September 22, 2025, also noticing a hearing date for October 28, 2025. Def. Mot. (ECF No. 35). The parties filed a Joint Statement re: Discovery Disagreement and accompanying declarations and exhibits on October 14, 2025. (ECF Nos. 39, 40, 42.) By minute order, the Court *sua sponte* reset the October 28, 2025 hearing on the parties' motions for November 4, 2025. 10/16/2025 Minute Order (ECF No. 47).

On October 23, 2025, the parties stipulated to stay the case pending settlement discussions. (ECF No. 51.) Settlement discussions failed and this litigation resumed. (ECF No. 63.) On March 24, 2026, Plaintiff re-filed its motion for a protective order. Pl. Mot. (ECF No. 65). Plaintiff noticed the motion to be heard on July 28, 2026. (ECF No. 70.) On April 1, 2026, Defendant filed an ex parte request to reschedule its September 22, 2025 motion to compel to be heard on April 28, 2026. (ECF No. 74.) The Court issued a minute order on April 9, 2026 resetting the hearing on both motions to May 5, 2026. 4/9/2026 Minute Order (ECF No. 79). The Court ordered the parties to file a new Joint Statement re: Discovery Disagreement such that the record before the Court would be clear as to Defendant's motion to compel and Plaintiff's amended motion for a protective order. (*Id.*) The parties filed the Joint Statement and accompanying declarations and exhibits on April 21, 2026. (ECF Nos. 89, 90.)

/ / /

The hearing on the parties' motions was held on May 5, 2026. (ECF No. 92.) At the hearing, the Court ordered (1) the parties to meet and confer in-person to discuss the parties' various pending disputes; (2) Plaintiff to file an updated list of legal authority cited in its portion of the Joint Statement; and (3) the parties to file a joint supplemental statement regarding Plaintiff's argument that Defendant's interrogatories were duplicative of the Rule 30(b)(6) deposition topics. *See* 5/5/2026 Minute Order (ECF No. 93). The Court further issued orders regarding future discovery motions. *See id*.

On May 7, 2026, Plaintiff filed its updated list of legal authorities. (ECF No. 96.) On May 8, 2026, the parties filed their joint supplemental statement regarding Plaintiff's objections based on Defendant's interrogatories. (ECF No. 97.) Briefing is now complete.

## II. LEGAL STANDARDS

### A. Discovery

"The district court is given broad discretion in supervising the pretrial phase of litigation." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citation and internal quotation marks omitted). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Proportionality turns on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "[B]road discretion is vested in the trial court to permit or deny discovery. . . ." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

### B. Rule 30(b)(6) Depositions

"A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1).

The Federal Rules also grant a party the power to depose "one or more officers, directors, or managing agents" of an organization "[or] other persons who consent to

testify on its behalf," as designated by the organization. Fed. R. Civ. P. 30(b)(6). This Rule requires the organization to "set out the matters on which each person designated will testify," and after a 2020 amendment, also requires the parties to confer about the matters for examination. *Id.*

Rule 30(b)(6) provides that the deposing party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "While 30(b)(6) topics cannot be vague, 'the reasonable particularity requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition.'" *Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*, 2019 WL 246628, at *2 (E.D. Cal. Jan. 17, 2019) (quoting *UniRAM Technology, Inc. v. Monolithic Sys. Tech., Inc.*, 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007)). Nonetheless, "[b]ecause Rule 30(b)(6) places substantial responsibilities and burdens on corporate designees, for the rule to function effectively, a requesting party must 'designate with painstaking specificity, the particular subject areas that intended to be questioned.'" *Verduzco v. Con Agra Foods Packaged Foods, LLC*, 2024 WL 1796080, at *1 (E.D. Cal. Apr. 25, 2024) (quoting *Preservation Techs. LLC v. MindGeek USA, Inc.*, 2020 WL 10965163, at *2 (C.D. Cal. Oct. 19, 2020)). "At the same time, a party responding to discovery has an obligation to construe discovery requests in a reasonable manner. . . . Therefore, a 30(b)(6) topic is not objectionable to the extent that it may be reasonably construed to seek relevant information capable of being addressed in a deposition." *Luna v. Universal City Studios LLC*, 2015 WL 13655668, at *6 (C.D. Cal. Feb. 10, 2015) (internal quotation marks and citations omitted).

"[T]he law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation. Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition." *Sheikh v. Spinnaker Ins. Co.*, 2025 WL 1768090, at *4 (E.D. Cal. June 26, 2025)

(quoting *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36-37 (D. Mass. 2001)). "It is not expected that the designee have personal knowledge as to all relevant facts; however, the designee must become educated and gain the requested knowledge to the extent reasonably available." *Garcia v. LQ Mgmt., LLC*, 2022 WL 1115207, at *8 (C.D. Cal. Mar. 29, 2022). "If the entity no longer employs anyone knowledgeable about the designated matter, it must prepare a representative, using documents, former employees or other sources, to testify at the deposition." *Id.*; *see also Sunterra Corp. v. Perini Bldg. Co.*, 2009 WL 453054, at *2 (E.D. Cal. Feb. 23, 2009) ("Plaintiffs are not exonerated from their need to designate [Rule 30(b)(6) witnesses] simply because certain persons are no longer within Plaintiffs' control.").

**C. Discovery Motions**

"The proper procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the opposing party, but to move for a protective order." *DarbeeVision, Inc. v. C&A Mktg., Inc.*, 2019 WL 2902697, at *9 (C.D. Cal. Jan. 28, 2019) (citation and internal quotation marks omitted). Motions for protective orders are governed by Rule 26(c). District courts have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002). Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1); E.D. Cal. L.R. 251. This Court's standing orders further require that conferring regarding discovery disputes must be done through communication that occurs in-person, by phone, or by video; written communication alone does not satisfy the requirement to confer where all parties raising the discovery matter are represented by counsel. The moving party bears the burden to "inform the

Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious.” *Adams v. Yates*, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013).

If a court grants the motion to compel or if the disclosure or requested discovery is provided after the motion was filed, then the court <u>must</u> order the party “whose conduct necessitated the motion . . . to pay the movant’s reasonable expenses incurred in making the motion, including attorney's fees.” Fed. R. Civ. P. 37(a)(5)(A); *see also* Fed. R. Civ. P. 26(c)(3) (applying Rule 37(a)(5) to expenses awarded when motion for protective order granted). The court must not award expenses if (1) “the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action”; (2) “the opposing party's nondisclosure, response, or objection was substantially justified”; or (3) “other circumstances make an award of expenses unjust.” Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). The burden is on the losing party to prove that its position was substantially justified. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012). If the motion to compel is granted in part and denied in part, the court <u>may</u> apportion the “reasonable expenses” for the motion. Fed. R. Civ. P. 37(a)(5)(C).

## III. DISCUSSION

Plaintiff presents several arguments against the 30(b)(6) deposition. First, Plaintiff argues that, to the extent the deposition seeks information for Defendant “to determine why it is being sued,” Defendant’s deposition notice is duplicative of information it already has, namely, Plaintiff’s pre-suit demand letters and Plaintiff’s written discovery responses and disclosures in the course of this litigation. Joint Statement at 5-6, 8 (ECF No. 89); Supp. Joint Statement (ECF No. 97). Second, Plaintiff argues that, to the extent the deposition seeks to investigate allegations that Defendant discharged pollutants into the Mokelumne River, it is irrelevant because “[w]hether or not Defendant’s polluted stormwater discharges have degraded the Mokelumne River is not an element of proof

relating to any cause of action in [Plaintiff's] complaint." Joint Statement at 6-7. Third, Plaintiff argues that Defendant is withholding evidence, not Plaintiff. *Id.* at 7. Fourth, Plaintiff argues that the deposition is improper because none of Plaintiff's members have independent personal knowledge of the allegations in Plaintiff's complaint, and therefore, Defendant is necessarily seeking attorney-client privileged testimony, protected attorney work product, or premature expert testimony. *Id.* Fifth, Plaintiff argues that, to the extent the deposition seeks information about whether Defendant's facility discharges connect to a Water of the United States, that prematurely seeks expert testimony. *Id.* at 8.

Plaintiff further objects to each of the topics on the following grounds. First, Plaintiff objects to all nine topics as vague and overbroad. *Id.* at 9. Second, Plaintiff objects to Topics 1-7 and 9 as seeking attorney-client privileged information. *Id.* at 9-10. Third, Plaintiff objects to Topics 3-5 and 7 as seeking protected opinion work product. *Id.* at 10-11. Fourth, Plaintiff objects to Topics 4, 6, and 8 as irrelevant or seeking improper information as to Plaintiff's associational standing. *Id.* at 11-12. Fifth, Plaintiff objects to Topics 2, 3, 5, 6, 7, and 9 on grounds they seek premature expert testimony. *Id.* at 13. Sixth, Plaintiff objects to all nine topics as unreasonably cumulative or duplicative. *Id.* at 13-14. Seventh, Plaintiff objects to Topics 1-7 and 9 as outside Plaintiff's knowledge. *Id.* at 14-15.

**A. Analysis**

Based on the Court's research, it appears that Rule 30(b)(6) depositions of plaintiff entities in Clean Water Act citizen suits are uncommon. *See, e.g., Conservation L. Found., Inc. v. Shell Oil Co.*, 2025 WL 842278 (D. Conn. Mar. 18, 2025) (permitting the Rule 30(b)(6) deposition of plaintiff entity to proceed, subject to the plaintiff's objections during the deposition); *Sierra Club v. BNSF Ry. Co.*, 2016 WL 4528452 (W.D. Wash. Aug. 30, 2016) (granting plaintiff entity a protective order as to a Rule 30(b)(6) deposition topic seeking information on "the factual bases for [plaintiff's] allegations" in certain paragraphs of its amended complaint).

Having considered the issues raised in the briefing, the record, and at the hearing,

the Court rules on each of Defendant's proposed Rule 30(b)(6) deposition topics as follows.

1. <u>Topics 3, 6, and 9</u>

At the hearing, Defendant agreed to withdraw Topics 3, 6, and 9. Accordingly, as to Topics 3, 6, and 9, Defendant's motion to compel is DENIED as moot, and Plaintiff's motion for a protective order is DENIED as moot.

2. <u>Topic 1</u>

Topic 1 seeks testimony on "[a]ny documentation, photographic, or videographic evidence in YOUR possession relating to conditions at the FACILITY alleged in the COMPLAINT." Novak Decl., Exh. A at 5. Plaintiff's objections to this topic are overruled in part and sustained in part. Defendant may examine the Rule 30(b)(6) witness as to the photographs referenced in Complaint ¶ 137 and Exhibit E, which are relevant to Plaintiff's claims. *See* Fed. R. Civ. P. 26(b)(1). Otherwise, this topic is overbroad and prematurely seeks expert discovery. For example, Defendant defines the term "YOU" and "YOUR" in its deposition notice to include Plaintiff and its "employees, members, agents, officers, directors, representatives, consultants, affiliates, and/or anyone acting or purporting to act on its behalf," which would include Plaintiff's experts. *See id.* at 4. The Court notes that expert disclosures have not yet been exchanged. Accordingly, as to Topic 1, Defendant's motion to compel is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion for a protective order is GRANTED IN PART and DENIED IN PART.

3. <u>Topic 2</u>

Topic 2 seeks testimony on "[a]ny sampling, monitoring, inspection, or other investigative activities by YOU relating to the allegations in the COMPLAINT." Novak Decl., Exh. A at 5. The Court sustains Plaintiff's objection that this topic seeks premature expert testimony. *See Sierra Club*, 2016 WL 4528452, at *3 (granting protective order as to 30(b)(6) deposition topic seeking factual basis for plaintiff's Clean Water Act claims as seeking expert opinion); *Ecological Rts. Found. v. Hot Line Constr., Inc.*, 2022 WL

3574450, at *7 (C.D. Cal. July 27, 2022) (collecting cases disallowing Rule 30(b)(6) testimony where information sought is more properly expert testimony); *but see Conservation Law*, 2025 WL 842278, at *1-2 (D. Conn. Mar. 18, 2025) (overruling objections that 30(b)(6) deposition topics seek premature expert testimony as insufficient to withhold non-privileged factual information). Accordingly, as to Topic 2, Defendant's motion to compel is DENIED, and Plaintiff's motion for a protective order is GRANTED.

4. Topic 4

Topic 4 seeks testimony on "[t]he basis of the claim YOUR members have been injured as alleged in the COMPLAINT." Novak Decl., Exh. A at 5. At the May 5, 2026 hearing, the parties appeared to agree that this topic may be addressed in depositions of Plaintiff's member(s) whom Plaintiff has identified or will identify for standing purposes of. Although Defendant expressed concern that Plaintiff may substitute new standing witnesses late in the litigation, that issue is speculative and not ripe. Accordingly, as to Topic 4, Defendant's motion to compel is DENIED without prejudice, and Plaintiff's motion for a protective order as to this topic is GRANTED. Defendant shall have the opportunity to renew its request for a Rule 30(b)(6) deposition as to this topic if it is not addressed in depositions of Plaintiff's standing witness(es).

5. Topic 5

Topic 5 seeks testimony on "[t]he basis of the allegations in the COMPLAINT that SWEETENER DISCHARGES contaminated storm water." Novak Decl., Exh. A at 5. The Court sustains Plaintiff's objection that this topic seeks premature expert testimony. *See Sierra Club*, 2016 WL 4528452, at *3; *Ecological Rts.*, 2022 WL 3574450, at *7 (precluding Rule 30(b)(6) testimony of Clean Water Act defendant about storm water runoff as better reserved for expert discovery); *but see Conservation Law*, 2025 WL 842278, at *1-2. Accordingly, as to Topic 5, Defendant's motion to compel is DENIED, and Plaintiff's motion for a protective order is GRANTED.

6. Topic 7

Topic 7 seeks testimony on "[t]he basis of the allegation in the COMPLAINT that

DISCHARGES of stormwater from the FACILITY reach a Water of the United States." Novak Decl., Exh. A at 5. The term "waters of the United States" is a legal term of art under the Clean Water Act. *See* 33 U.S.C.A. § 1362(7); *Sackett v. Env't Prot. Agency*, 598 U.S. 651 (2023) (discussing what the Act means by "the waters of the United States"). Thus, this topic may seek testimony on what constitutes a "Water of the United States," and improperly seeks a legal conclusion. Further, the Court sustains Plaintiff's objection that this topic improperly seeks expert testimony because stormwater discharges fall within the purview of expert witnesses in Clean Water Act cases. *See Ecological Rts.*, 2022 WL 3574450, at *7. Accordingly, as to Topic 7, Defendant's motion to compel is DENIED, and Plaintiff's motion for a protective order is GRANTED.

7. <u>Topic 8</u>

Topic 8 seeks testimony on "[t]he business purposes, mission, and organizational structure of YOUR organization, including membership of YOUR organization." Novak Decl., Exh. A at 6. Plaintiff objects that, to the extent this topic seeks information about Plaintiff's organization for standing purposes, it is irrelevant due to the Supreme Court's reasoning in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023). Joint Statement at 12-13. Plaintiff argues that *Students for Fair Admissions* holds that "where, as here, an organization has identifiable members and represents them in good faith; further scrutiny into how the organization operates is not permitted." *Id.* at 12 (emphasis omitted). Plaintiff's reading of *Harvard* is overstated. The Court in *Harvard* did not reject applying the three-part test for organizational standing articulated in *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977), namely, that an organization has standing to sue on behalf of its members if it demonstrates that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions*, 600 U.S. at 199 (quoting *Hunt*, 432 U.S. at 343). Rather, the Court held that Students for Fair Admission

was entitled to rely on the organizational standing doctrine precisely because it had filed declarations by certain of the organization's members stating their membership and support of the organization's mission. *Id.* at 201. Likewise, in the district court case cited by Plaintiff, *Waste Action Project v. Girard Resources & Recycling, LLC.*, the Western District of Washington found that Defendant had no basis to request additional written discovery about the plaintiff's organization in light of the plaintiff's submitted declaration identifying one of its members. 2024 WL 1193859, at *4 (W.D. Wash. Feb. 12, 2024). Thus, Plaintiff's cited authority do not support its argument that discovery to assess Plaintiff's organizational standing should be barred, although the Court notes that organizational standing is typically established through declarations.

Defendant is therefore entitled to some discovery regarding Plaintiff's organizational standing under *Hunt*. However, Defendant also concedes that, under *Students for Fair Admissions*, "organizations that have identified their members and their representation of those members in good faith [may] avoid being challenged on how the organization operates." Joint Statement at 18-19. Thus, the Court rules that Defendants may seek Rule 30(b)(6) testimony about Plaintiff's business purpose and mission, but sustains Plaintiff's relevance objection as to testimony about Plaintiff's organizational structure and membership. Accordingly, as to Topic 8, Defendant's motion to compel is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion for a protective order is GRANTED IN PART and DENIED IN PART.

**B. Attorney's Fees**

Defendant seeks attorney's fees and costs for bringing its motion to compel and for responding to Plaintiff's motion for a protective order. Joint Statement at 17, 28. Under Rule 37, if a motion to compel is granted in part and denied in part, the court may apportion the "reasonable expenses" for the motion. Fed. R. Civ. P. 37(a)(5)(C). Here, because the Court is granting-in-part and denying-in-part both motions, the Court declines to award any expenses. The parties shall bear their own fees and costs related to Defendant's motion to compel and Plaintiff's motion for a protective order.

## IV. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Defendant's motion to compel (ECF No. 35) is GRANTED IN PART and DENIED IN PART as set forth above;
2. Plaintiff's motion for a protective order (ECF No. 65) is GRANTED IN PART and DENIED IN PART as set forth above; and
3. Defendant's request for attorney's fees and costs (ECF No. 35) is DENIED.

Dated: May 15, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, cent.0078.25.mtc.30b6